SHAUN SETAREH, Bar No. 204514
shaun@setarehlaw.com
WILLIAM PAO, Bar No. 219846
william@setarehlaw.com
ALEXANDRA MCINTOSH, Bar No. 320904
alex@setarehlaw.com
SETAREH LAW GROUP
315 S. Beverly Dr., Suite 315
Beverly Hills, CA 90212
Telephone: 310.888-7771
Facsimile: 310.888-0109

Attorneys for Plaintiff
THEODORE A. EMETOH

KEITH A. JACOBY, Bar No. 150233
kjacoby@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East, 5th Floor
Los Angeles, CA 90067.3107
Telephone: 310.553-0308
Facsimile: 310.553-5583

SOPHIA BEHNIA, Bar No. 289318
sbehnia@littler.com
LITTLER MENDELSON, P.C.
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone: 415.433-1940
Facsimile: 415.399-8490

*Additional counsel on next page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THEODORE A. EMETOH, on behalf of himself, all others similarly situated,

Plaintiff,

v.

FEDEX FREIGHT, INC. an Arkansas corporation; and DOES 1 through 50, inclusive,

Defendant.

Case No. 4:17-CV-07272-YGR

**CLASS ACTION**

**FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE**

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE

CASE NO.: 4:17-CV-07272-YGR

LINDA NGUYEN BOLLINGER, Bar No. 289515
lbollinger@littler.com
LITTLER MENDELSON, P.C.
50 West San Fernando Street, 7th Floor
San Jose, CA 95113
Telephone: 408.998-4150
Facsimile: 408.288-5686

SANDRA C. ISOM, Bar No. 157374
scisom@fedex.com
FEDEX FREIGHT, INC.
1715 Aaron Brenner Drive, Ste. 600
Memphis, TN 38120
Telephone: 901.434-8526
Facsimile: 901.468-1726

Attorneys for Defendant
FEDEX FREIGHT, INC.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310.553.0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE

CASE NO.: 4:17-CV-07272-YGR

This Joint Stipulation of Settlement and Release ("Agreement") is made and entered into between Plaintiff Theodore A. Emetoh ("Plaintiff" or "Class Representative"), individually and on behalf of all others similarly situated, including current and former alleged aggrieved employees, ("Class Members") and Defendant FedEx Freight, Inc. ("Defendant" or "FedEx") (collectively, the "Parties").

1. **DEFINITIONS.**

The following terms, when used in this Agreement, have the following meanings:

1.1 "Action" means the above stated action *Theodore A. Emetoh v. FedEx Freight, Inc.*, Case No. 4:17-CV-07272-YGR, currently pending in United States District Court for the Northern District of California.

1.2 "Agreement" means this Joint Stipulation of Settlement and Release, which includes the PAGA Settlement, except where noted.

1.3 "Claim Amount" means an individual Class Member's potential allocation of the Net Settlement Amount, as defined in Section 1.22.

1.4 "Class" or "Class Member(s)" means all persons who have worked for Defendant as non-exempt, hourly-paid Road Drivers, City Drivers, or Driver Apprentices in California at any time during the Class Period. There are approximately 3,020 Class Members.

1.5 "Class Counsel" means Shaun Setareh, William Pao, and Alexandra McIntosh of the Setareh Law Group.

1.6 "Class Period" means from November 14, 2013 through the date of Preliminary Approval, except that for Road Drivers, the settlement class period for all but the cell phone reimbursement claim begins on January 1, 2016.

1.7 "Class Representative" is Plaintiff Theodore A. Emetoh.

1.8 "Class Representative's Released Claims" means any and all claims, obligations, demands, actions, rights, causes of action, and liabilities, against the Released Parties (as defined in Section 1.35), of whatever kind and nature, character, and description, whether in law or equity, whether sounding in tort, contract, federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law, whether known or unknown, and whether anticipated or unanticipated, including unknown claims covered by California Civil Code § 1542, as quoted in

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310.553.0308

1

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE

CASE NO.: 4:17-CV-07272-YGR

Section 1.34, by the Class Representative, arising from the beginning of time to the date of signing of this Agreement, for any type of relief that can be released as a matter of law, including, without limitation, claims for wages, damages, unpaid costs, penalties (including civil and waiting time penalties), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, and restitution or equitable relief. The Class Representative's Released Claims exclude his claims pending in *Theodore Emetoh, an individual v. FedEx Freight, Inc., an Arkansas corporation; and DOES 1 through 50*, inclusive, pending in the United States District Court for the Northern District of California, Case No. 3:18-cv-02898-CRB, claims for workers' compensation or unemployment insurance benefits, or any claims which cannot be released as a matter of law (the "Excluded Claims").

Commented [A1]: This was changed because text was changed and moved.

Deleted: 6

Deleted: .12.1

1.9 "Complaint" means the Second Amended Class Action Complaint filed with this Court by Plaintiff on August 16, 2018 attached hereto as Exhibit A, and incorporated herein by reference.

1.10 "Court" means the United States District Court for the Northern District of California.

1.11 "Data" are the Class Members' dates of employment and number of Workweeks as a Class Member during the Class Period, as determined by Defendant's business records.

1.12 "Data Dispute" is a Class Member's challenge to their dates of employment or number of Workweeks set forth in the Data Dispute Form in their Notice Packet.

1.13 "Data Dispute Deadline" shall mean forty-five (45) calendar days from the initial mailing of the Notice Packet. This is also the deadline for exclusions and objections to the Agreement.

1.14 "Data Dispute Form" shall mean the document substantially in the form attached hereto as Exhibit B.

1.15 "Defendant" shall mean FedEx Freight, Inc.

1.16 "Defendant's Counsel" means Keith A. Jacoby, Sophia Behnia, and Linda N. Bollinger of Littler Mendelson, P.C., and Sandra C. Isom of FedEx Freight, Inc.

1.17 "Enhancement Payment" means the amount approved by the Court to be paid to the Class Representative, not to exceed $7,500.00, in addition to his Claim Amount as a Qualified Claimant, in recognition of his efforts in coming forward as a Class Representative. The Enhancement Payment shall be considered non-wages for which an appropriate IRS Form 1099 will be issued to the Class Representative.

LITTLER MENDELSON, P.C. 2049 Century Park East 5th Floor Los Angeles, CA 90067 3107 310.553.0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE 4. CASE NO. 4:17-CV-07272-YGR

1.18 "Final Approval Date" means the latest of the following dates: (i) if no Class Member intervenes or files an objection to the Agreement on or prior to the Court entering an order granting final approval of the Agreement, then the day after the Final Judgment becomes final (meaning the expiration of the deadline to seek any type of appellate review); (ii) if there is an objection to the Agreement by a Class Member, or a Class Member intervenes, on or prior to the date the Court enters an order granting final approval of the Agreement, then on the date of final resolution of that objection or the exhaustion of any appellate rights of that objector or any intervener, resulting in final judicial approval of the Agreement, and entry of a non-reviewable judgment; or (iii) if an appeal, review or writ is sought from the judgment, the day after the judgment is affirmed or the appeal, review or writ is dismissed or denied, and the judgment is no longer subject to further judicial review.

1.19 "Final Approval and Fairness Hearing" means the hearing set by the Court to (a) review the Agreement and determine whether the Court should give final approval, (b) consider any timely objections made pursuant to Section 6.5.7 of this Agreement, and all responses by the Parties, (c) consider the request for attorneys' fees and expenses submitted by Class Counsel, (d) consider the Settlement Administrator's Settlement Administration Costs, and (e) consider the Class Representative's application for an Enhancement Payment.

1.20 "Final Judgment" shall mean the order granting final approval of the Agreement and final judgment entered by the Court. The Final Judgment shall constitute a final judgment of the PAGA Settlement for purpose of enforcing the rule announced in *Arias v. Superior Court of San Joaquin County (Dairy)*, 46 Cal.4th 969 (2009).

1.21 "Gross Settlement Amount" is the sum of Three Million Two Hundred and Fifty Thousand U.S. Dollars ($3,250,000.00), which represents the total amount payable to the Settlement Administrator to be held in trust in the Qualified Settlement Fund for this Agreement by Defendant, and includes without limitation the Settlement Administration Costs, attorneys' fees, litigation costs, the Class Representative Enhancement Payment, and the PAGA Payment. The Gross Settlement Amount is exclusive of the employer's share of payroll taxes.

1.22 "Net Settlement Amount" is the remaining portion of the Gross Settlement Amount available for distribution to Qualified Claimants after deduction of Court approved attorneys' fees and

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310.553 0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE

5.

CASE NO. 4:17-CV-07272-YGR

litigation costs, Settlement Administration Costs, the Enhancement Payment to the Class Representative, and the State of California's portion of the PAGA Payment.

1.23 "Notice of Settlement" means the document substantially in the form attached hereto as Exhibit C.

1.24 "Notice Packet" means the Notice of Settlement and Data Dispute Form.

1.25 "PAGA Payment" means One Hundred and Twelve Thousand Five Hundred U.S. Dollars ($112,500.00) of the Gross Settlement Amount to be allocated to claims under the Private Attorneys General Act of 2004, which includes Eighty Four Thousand Three Hundred Seventy Five U.S. Dollars ($84,375.00) being awarded to the State of California, subject to Court approval, and Twenty Eight Thousand One Hundred Twenty Five U.S. Dollars ($28,125.00) being awarded to Qualified Claimants, divided *pro-rata* based upon the Qualified Claimants' number of Workweeks during the PAGA Period of November 9, 2016 through the date of Preliminary Approval, by including that sum in the Net Settlement Amount, subject to Court approval. The Parties acknowledge and agree that for purposes of PAGA and the Final Judgment, all Class Members were allegedly aggrieved in the same manner pursuant to Cal. Lab. Code 2698 *et seq.* in that each Class Member allegedly suffered at least one violation for which PAGA provides an available remedy. In light of the binding nature of a PAGA judgment on non-party employees pursuant to *Arias v. Superior Court of San Joaquin County (Dairy)*, 46 Cal.4th 969 (2009), and *Cardenas v. McLane Foodservice, Inc.*, 2011 WL 379413 at *3 (C.D. Cal. Jan. 31, 2011), individuals otherwise meeting the definition of Class Members who exclude themselves from the Class pursuant to Section 6.5.3 and were employed during the PAGA Period shall receive a payment for the amount of each such individual's estimated share of the PAGA Payment that was included by the Settlement Administrator in calculating the Claim Amount.

1.26 "PAGA Settlement" means the agreement to resolve the PAGA representative action pursuant to Cal. Lab. 2698 *et seq.*, for which the PAGA Payment provides consideration.

1.27 "Parties" means the Plaintiff and Defendant.

1.28 "Payroll Settlement Check" means the wage portion of the Qualified Claimant's Claim Amount.

1.29 "Plaintiff" is Theodore A. Emetoh.

LITTLER MENDELSON, P.C. 2049 Century Park East 5th Floor Los Angeles, CA 90067 3107 310.553 0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE 6. CASE NO. 4:17-CV-07272-YGR

1.30 "Preliminary Approval Date" means the date the Court approves the Agreement, and the exhibits thereto, and enters an order providing for notice to the Class, an opportunity to opt out of the Class or to submit timely objections to the Agreement (excluding the PAGA Settlement), a procedure for submitting Data Dispute Forms, and setting a hearing on the fairness of the terms of settlement, including approval of attorneys' fees and costs.

1.31 "Preliminary Approval Order" means the document substantially in the form attached hereto as Exhibit D. The Parties will jointly request that any order granting preliminary approval not be entered before December 1, 2019.

1.32 "QSF" or "Qualified Settlement Fund" means the Qualified Settlement Fund set up by the Settlement Administrator for the benefit of the Qualified Claimants and from which the settlement payments shall be made. The QSF shall be an interest-bearing escrow account established by the Settlement Administrator to hold the Gross Settlement Amount from the time the Defendant deposits the funds pursuant to Section 6.11 herein until such funds are fully and finally distributed. The QSF is intended to be a Qualified Settlement Fund within the meaning of Internal Revenue Code section 468B and Treasury Regulation section 1.468B-1, and the Settlement Administrator shall be solely responsible for filing tax returns for the QSF and paying from the QSF any taxes owed with respect to same. In addition, the Settlement Administrator, and, as required, Defendant, will jointly and timely make the "relation-back election" (as defined in Treasury Regulation 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations, provided that Defendant shall not be required to deposit any monies into the QSF before the time set forth in Section 6.11 It will be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature to all necessary parties, and thereafter cause the appropriate filing to occur. In the event it is determined that the QSF is not a Qualified Settlement Fund within the meaning of Treasury Regulation section 1.468B-1, any tax liabilities associated with such determination shall be satisfied solely from the QSF without any recourse against Defendant for additional monies.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE

7.

CASE NO. 4:17-CV-07272-YGR

1.33 "Qualified Claimant" means any and all Class Members who do not submit a timely and correctly completed request for exclusion, as set forth in Section 6.5.3.

1.34 "Released Claims" means any and all claims contained in the Complaint and any additional wage and hour claims that could have been brought by the Plaintiff and the Class Members based on the facts alleged in said Complaint, for the Class Period as defined in Section 1.6 through the Preliminary Approval Date. "Released Claims" includes any and all claims for relief, whether suspected or unsuspected, which Qualified Claimants as well as all Class Members for purposes of PAGA relief, as explained in Section 1.25 have had, now have, or may discover in the future against the Released Parties or any of them for any or all claims alleged in the Complaint or which could have been alleged in the Complaint based on the allegations, facts, matters, transactions or occurrences alleged therein, and shall specifically include without limiting the generality thereof: claims for missed and/or unpaid meal periods and/or rest periods; failure to reimburse business expenses; failure to pay all wages owed (including without limitation, regular wages, the regular rate of pay, minimum wage, overtime pay, double time pay, premium pay or otherwise properly calculate overtime or the regular rate of pay, failure to pay employees for all hours worked, and/or off-the-clock claims); failure to properly pay all wages upon termination; any claim for failure to keep and/or maintain accurate records; unlawful deductions; failure to timely pay wages owed; claims for failure to provide accurate, itemized wage statements; waiting time penalties; and claims for PAGA penalties and/or unfair competition claims based on the foregoing. The Release of the foregoing claims extends to all theories of relief regardless of whether the claim is, was, or could have been alleged as separate claims, causes of action, lawsuits or based on other theories of relief, whether under California law, federal law, state law or common law (including, without limitation, as violations of the California Labor Code, the California Wage Orders, applicable regulations, California's Business and Professions Code section 17200 or under California's Private Attorneys General Act, and the Fair Labor Standards Act). "Released Claims" includes all types of relief available for the above-referenced claims, including, without limitation, any claims for damages, restitution, losses, penalties, fines, liens, attorneys' fees, costs, expenses, debts, interest, injunctive relief, declaratory relief, or liquidated damages. "Released

**Formatted:** Line spacing: At least 24.6 pt

**Deleted:** means any and all claims, rights, demands, liabilities, and causes of action, whether known or unknown, arising an any time during the Class Period, arising from, or related to the same set of operative facts as those set forth in the Complaint, including those covered by a limited California Civil Code §1542 waiver described in Section 6.12.1, and all related claims for violations of the Private Attorney General Act, California Labor Code §2698, *et seq.* The definition of Released Claims shall not be limited in any way by the possibility that Plaintiff or Class Members may discover new facts or legal theories or legal arguments not alleged in the Complaint but which might serve as an alternative basis for pursuing the same claims, causes of action, or legal theories of relief falling within the definition of Released Claims.

**Formatted:** Font color: Black

**Deleted:** Named

**Deleted:** of October 31, 2012

**Deleted:** settlement class members

LITTLER MENDELSON, P.C. 2049 Century Park East 5th Floor Los Angeles, CA 90067.3107 310.553.0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE 8. CASE NO. 4:17-CV-07272-YGR

Claims" also includes an express waiver of all benefits under section 1542 of the California Civil Code as to the Released Claims only, as well as under any other federal or state statutes or common law principles of similar effect. Section 1542 provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The Class Representative's and the Class Members' Section 1542 waiver releases all claims, known or unknown, within the definition of Released Claims, irrespective of the factual or legal basis for such claims. This 1542 waiver was a specifically negotiated term, and was specifically taken into consideration in arriving at the Gross Settlement Amount. Class Members, including Class Representatives, will be informed in the Notice of Settlement and will be deemed to understand that Section 1542 gives them the right not to release existing claims of which they are not now aware, unless they voluntarily choose to waive this right. Having been so informed, Class Members, including the Class Representative, will be deemed to have voluntarily waived the rights described in Section 1542, and elected to assume all risks for claims that now exist in their favor, known or unknown, that fall within the scope of the Released Claims. The Final Judgment shall expressly provide that it covers and bars each and every Qualified Claimant as well as all Class Members for purposes of PAGA relief, as explained in Section 1.25, from asserting any Released Claims in the future.

1.35 "Released Parties" means Defendant, its past or present parents, subsidiaries, and officers, directors, shareholders, managers, employees, agents, attorneys, legal representatives, successors, assigns, and predecessors in interest, affiliates, related entities, third-party staffing agencies, and any individual or entity which could be jointly liable with Defendant.

1.36 "Settlement Administration Costs" means reasonable fees and expenses incurred by the Settlement Administrator, not to exceed $35,000.00, as a result of the procedures and processes expressly required by this Agreement, and shall include all costs of administering the Agreement,

Deleted: Settled

Formatted: Font: Bold

Formatted: Legal3_L2, Justified, Indent: Left: 0.94", Right: 0.69"

Commented [A2]: Original language deleted and replaced by this language copied from paragraph 32 of the Marino settlement agreement.

Moved (insertion) [1]

Deleted: limited

Deleted: limited

Commented [A3]: We removed the word "limited" as it appeared before Section 1542.

Formatted: Not Highlight

Deleted: Settlement

Deleted: Class Member

Deleted: Settled

Commented [A4]: This language was not in the original agreement but was copied from paragraph 32 of the Marino settlement agreement.

Formatted: Font color: Black, Highlight

Deleted: ¶

Formatted: Line spacing: Exactly 24.6 pt

including, but not limited to, all tax document preparation and obligations related to the QSF, custodial fees, and accounting fees incurred by the Settlement Administrator; all costs and fees associated with preparing, issuing and mailing any and all notices of settlement and other settlement correspondence to Class Members and/or Qualified Claimants; all costs and fees associated with communicating with Class Members, Class Counsel, and Defendant's Counsel regarding settlement; all costs and fees associated with computing, processing, reviewing, and paying the Claim Amounts, and resolving disputed claims; all costs and fees associated with calculating tax withholdings and payroll taxes, working with Defendant so that related payments to federal and state tax authorities can be made, and printing tax forms relating to payments made under the settlement; all costs and fees associated with preparing any tax returns and any other filings required by any governmental taxing authority or agency; all costs and fees associated with preparing any other notices, reports, or filings to be prepared in the course of administering Claim Amounts; and any other costs and fees incurred and/or charged by the Settlement Administrator in connection with the execution of its duties under this Stipulation.

1.37 "Settlement Administrator" means and refers to the mutually agreed upon third-party claims administrator that will be responsible for establishing, maintaining, and administering the QSF, as well as the administration of the Agreement and related matters as described in this Agreement.

1.38 "Settlement Payment" means each Qualified Claimant's share of the Net Settlement Amount plus, where applicable, each Class Member's share of the PAGA Payment.

1.39 "Workweeks" means each week (Sunday through Saturday) during which Class Members were employed, but excluding weeks during which the Class Member was not performing driving duties. There are no partial or fractional Workweeks. Thus, if a Class Member performed any driving duties during any part of a Sunday through Saturday week, that week shall count as a Workweek. The number of Workweeks will be determined by Defendant's records.

2. **THE CONDITIONAL NATURE OF THIS STIPULATION.**

2.1 This Agreement and all associated exhibits or attachments are made for the sole purpose of settling the above-captioned lawsuit, which is entitled *Theodore A. Emetoh v. FedEx Freight Inc.*, Case No. 4:17-CV-07272-YGR. This Agreement is made in compromise of disputed claims. Because the Parties desire to settle this Action on a class-wide basis pursuant to Federal Rule

LITTLER MENDELSON, P.C. 2049 Century Park East 5th Floor Los Angeles, CA 90067 3107 310.553.0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE 10. CASE NO. 4:17-CV-07272-YGR

of Civil Procedure 23, and as a representative action pursuant to Cal. Lab. Code §2699(l), this Agreement must receive preliminary and final approval by the Court. Accordingly, the Parties enter into this Agreement on a conditional basis.

2.2 Subject to the obligation(s) of mutual full cooperation set forth herein, FedEx may void this this Agreement if the Court refuses to approve any economic term or term related to the scope of the release, or declines to enter the Preliminary Approval Order, the Final Approval Order, or Final Judgment in substantially the form submitted by the Parties, or if the Agreement does not become final because of appellate court action or due to some other voidable event described herein. The terminating Party shall give to the other Party (through its Counsel) written notice of its decision to terminate no later than ten (10) calendar days after receiving notice that one of the enumerated events has occurred. Termination shall have the following effects:

1) The Agreement shall be terminated and shall have no force or effect, and no Party shall be bound by any of its terms.

2) In the event the Agreement is terminated, Defendant shall have no obligation to make any payments to any Party, Class Member or attorney.

3) The Preliminary Approval Order, Final Approval Order and Final Judgment, including any order of class certification, shall be vacated.

4) In the event this Agreement is terminated or canceled pursuant to its terms, the Settlement Administrator shall refund all funds received by Defendant into the QSF, and the Settlement Administration Costs incurred as of the date of termination will be paid by Defendant, assuming the Defendant voided the Agreement at its option. Otherwise, the Parties shall equally share such Settlement Administration Costs.

5) The Parties will not be deemed to have waived any claims, objections, defenses, or arguments in this Action, including with respect to the issue of class certification. The Parties retain and reserve these rights, and agree not to argue or present any argument, and hereby waive any argument that, based on this Agreement, the other Party cannot pursue or challenge claims, allegations and defenses in the Action, upon any procedural or factual grounds.

LITTLER MENDELSON, P.C. 2049 Century Park East 5th Floor Los Angeles, CA 90067 3107 310.553.0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE 11. CASE NO. 4:17-CV-07272-YGR

6) The Agreement and all negotiations, statements and proceedings relating thereto shall be without prejudice to the rights of any of the Parties, all of whom shall be restored to their respective positions prior to the Agreement and mediation on May 21, 2019. The Parties agree to return to mediation in good faith to attempt to address the concerns of the Court, and upon reaching an agreement, submit a revised agreement to the Court.

7) The Agreement shall not be admissible or offered into evidence in the Action or any other action for any purpose whatsoever. Similarly, any conditional class certification (obtained for any purpose) shall be void *ab initio* and of no force or effect, and shall not be admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural.

3. **DESCRIPTION OF THE LITIGATION.**

3.1 Plaintiff, a former Road Driver of Defendant, brought this Action asserting the following violations: 1) Failure to Provide Meal Periods (Lab. Code §§ 204, 223, 226.7, 512 and 1198); 2) Failure to Provide Rest Periods (Lab. Code §§ 204, 223, 226.7 and 1198); 3) Failure to Pay Hourly Wages (Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1997.1 and 1198); 4) Failure to Indemnify (Lab. Code § 2802); 5) Failure to Provide Accurate Written Wage Statements (Lab. Code §§ 226(a)); 6) Failure to Timely Pay All Final Wages (Lab. Code §§ 201, 202 and 203); 7) Unfair Competition (Bus. & Prof. Code §§ 17200 *et seq.*); and 8) Civil Penalties (Lab. Code §§ 2698 *et seq.*).

3.2 Through discovery, Defendant provided Class Counsel with nearly 3,000 pages of documents, including copies of all applicable versions of personnel and payroll policies, contact information for the putative class, and records reflecting Class Members' hours worked and wages paid, amongst numerous other documents, as well as payroll and time clock data for the putative class. Defendant also served written discovery upon and deposed Plaintiff as well as several third-party subpoenas.

3.3 The Parties participated in two separate full-day mediations before Hon. Stephen Sundvold and Tripper Ortman, Esq. on January 15, 2019 and May 21, 2019, respectively. The Parties were able to come to an agreement and signed a Memorandum of Understanding on May 21, 2019.

LITTLER MENDELSON, P.C. 2049 Century Park East 5th Floor Los Angeles, CA 90067.3107 310.553.0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE 12. CASE NO. 4:17-CV-07272-YGR

3.4 This Agreement was reached after evaluating the Parties' theories of potential exposure for the underlying claims. The Parties also assessed appropriate discounts to the potential liability based on Defendant's contentions and defenses.

3.5 The Parties agree that the above-described investigation and evaluation, as well as discovery and the information exchanged during the settlement negotiations, are more than sufficient to assess the merits of the respective Parties' positions and to compromise the issues on a fair and equitable basis.

4. **BENEFITS OF THE SETTLEMENT TO THE PROPOSED CLASS.**

4.1 Based on their own independent investigations and evaluations, Class Counsel are of the opinion that the settlement with Defendant for the consideration and terms set forth below, in view of the Class Representative's and average Class Members' claims and the risk of loss, is fair, reasonable, and adequate in light of all known facts and circumstances, and is in the best interests of the Class. Class Counsel are also of the opinion that the total consideration and payment set forth in this Agreement is adequate in light of the uncertainties surrounding the risk of further litigation and the defenses that Defendant has asserted and could assert.

4.2 Class Counsel has weighed the monetary benefit under the Agreement to the Class against the expenses and length of continued proceedings that would be necessary to prosecute the Action against Defendant through trial and possible appeals. Class Counsel have also taken into account the uncertain outcome and risk of any litigation, especially in complex actions such as class actions, as well as the difficulties and delay inherent in such litigation. Therefore, Class Counsel has determined that the Agreement is in the best interests of the Class.

5. **POSITION OF DEFENDANT.**

5.1 Defendant denies any liability or wrongdoing of any kind associated with the claims alleged in the Action, and further denies that, for any purpose other than settling this matter, this Action is appropriate for class treatment. Defendant maintains, among other things, it has complied with Federal and California law in all aspects. Nothing in this Agreement shall be construed or deemed as an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant.

5.2 There has been no final determination by any court as to the merits of the claims asserted by Plaintiff against Defendant, nor has there been any final determination as to whether a

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE

13.

CASE NO. 4:17-CV-07272-YGR

class should be certified, other than for settlement purposes only. Defendant will stipulate to the certification of the class claims for settlement purposes only. Class certification of the PAGA Settlement is not necessary to bind alleged aggrieved employees pursuant to *Arias v. Superior Court of San Joaquin County (Dairy)*, 46 Cal. 4th 969 (2009). Defendant disputes that certification is proper for the purposes of litigating the class claims proposed in or flowing from the Complaint; and the Court has not evaluated manageability.

6. **OPERATIVE TERMS OF SETTLEMENT.**

The Parties to this Action agree as follows:

6.1 Cooperation. The Parties will cooperate in obtaining, through written stipulation or unopposed motion if a motion is required, an order from the Court approving the Agreement. The Parties agree to use their best efforts to expedite the preparation and submission of the Agreement and related documents. The Parties further agree to fully cooperate in the drafting and/or filing of any further required documents or filings, shall take all steps that may be requested by the Court or that are otherwise necessary for the approval and implementation of this Agreement, and shall otherwise use their respective best efforts to obtain Court approval of this Agreement.

6.2 Preliminary Approval. The Parties will seek to obtain the Court's preliminary approval of the settlement pursuant to Fed. R. Civ. Proc. 23(e) and Cal. Lab. Code § 2699(l). The Parties will jointly request that any preliminary approval order be dated no earlier than December 1, 2019 and request an immediate vacation or stay of pending dates until the entry of Final Judgment by the Court.

6.2.1 Class Counsel will prepare and file the motion for preliminary approval and related documents consistent with the terms of this Agreement and Defendant agrees not to oppose it. The Parties and their Counsel agree that this settlement is strictly confidential unless and until the Preliminary Approval Motion is filed granted. Plaintiff will not oppose FedEx filing a motion to seal the preliminary approval pleadings. If the Court declines to enforce this provision, it will not be grounds to void the Agreement.

6.2.2 Plaintiff, Defendant, and their respective Counsel will not make any public disclosure of the Agreement until after the Agreement is preliminarily approved by the Court. Plaintiff and Class Counsel agree not to disclose or publicize the Agreement, including the fact of the

LITTLER MENDELSON, P.C. 2049 Century Park East 5th Floor Los Angeles, CA 90067 3107 310.553.0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE 14. CASE NO. 4:17-CV-07272-YGR

Agreement, its terms or contents, and the negotiations underlying the Agreement, in any manner or form, directly or indirectly, to any person or entity, except potential class members and as shall be contractually required to effectuate the terms of the Agreement as set forth herein. Class Counsel will take all steps necessary to ensure that Plaintiff is aware of, and will encourage him to adhere to, the restriction against any public disclosure of the Agreement until after the Agreement is preliminarily approved by the Court.

   6.2.3   The Parties agree not to initiate any contact with the media concerning this case at any time. Plaintiff and Counsel will not at any time publish details of this case or the settlement except on Plaintiff's Counsel's website or other publications it controls. If either Party or their Counsel is contacted by the media, neither Party is required to make a statement, but may make the following statement:

   (a) If Motion to Seal is granted: "The Parties have reached an agreement to settle the pending claims in the *Theodore Emetoh v. FedEx Freight, Inc.* lawsuit. The terms of the settlement are confidential and have not yet received final approval by the Court."

   (b) If Defendant's Motion to Seal is not granted: "The Parties have reached an agreement to settle the pending claims in the *Theodore Emetoh v. FedEx Freight, Inc.* lawsuit. The terms of the settlement have not yet received final approval by the Court."

   (c) After preliminary approval is granted: "The Parties have reached an agreement to settle the pending claims in the *Theodore Emetoh v. FedEx Freight, Inc.* lawsuit."

   (d) At any time, Plaintiff may say: "We believe the settlement is fair and in the best interests of the class."

   (e) If Defendant's Motion to Seal is not granted and after preliminary approval is granted, Defendant may say: "FedEx Freight denies liability in this matter. Contrary to Plaintiff's claims, FedEx Freight complies with the wage and hour laws in all jurisdictions where we do business, including California. We have agreed to settle this matter simply to avoid the burdensome cost of continued litigation."

   (f) The Parties expressly agree that neither Party shall provide any comment beyond the above statements to any third party entity, on any digital platform, or in any

other forum, except for Plaintiff's Counsel's website or other publications controlled by Plaintiff's Counsel.

6.2.4 The Parties agree that the preliminary approval order will include a provision enjoining Class Members from filing any DLSE claims, or from initiating other proceedings, regarding claims released by the settlement before opting out of the settlement. If the Court declines to enforce this provision, it will not be grounds to void the Agreement;

6.2.5 The Parties will submit this Agreement to the Court for preliminary approval of its terms and for approval of the steps to be taken to obtain its final approval. The Parties will request that the Court's preliminary approval of this Agreement be embodied in the Preliminary Approval Order, a proposed form of which is attached as Exhibit D.

6.3 Notice to Class Members. The Settlement Administrator shall disseminate the Notice Packet in the manner described below, with the Settlement Administration Costs being paid from the Gross Settlement Amount.

6.3.1 No later than thirty (30) calendar days after the entry of the Preliminary Approval Order, for each Class Member, Defendant shall provide the Settlement Administrator with the name, last known mailing address, last known telephone number, Social Security Number, the dates the Class Member was employed as a Class Member of Defendant in California during the Class Period, the number of Workweeks attributable to the Class Member, and whether the Class Member's employment with Defendant ended, in a form requested by the Settlement Administrator. This class data, as well as any other class data provided to the Settlement Administrator, shall be confidential. Except as provided for in this Agreement, the Settlement Administrator shall not provide the class data to Class Counsel or Plaintiff or any third party, or use the class data or any information contained therein for any purpose other than to administer this Agreement. Class Counsel agrees they will not use the Class Member data for any purpose other than as required for this Agreement. The Settlement Administrator shall use commercially reasonable efforts to secure the Class Member data at all times so as to avoid inadvertent or unauthorized disclosure or use of such data other than as permitted by this Agreement, and shall destroy the data and all copies in a complete and secure manner at the end of any retention periods after which the data is no longer required for purpose of the Agreement. Class

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE

16.

CASE NO. 4:17-CV-07272-YGR

Members' addresses, telephone numbers, or social security numbers shall not be filed with the Court, except as may be ordered by the Court.

6.3.2 No later than ten (10) calendar days after receipt of such address information, the Settlement Administrator will perform a national change of address ("NCOA") search, update the addresses per the results of the NCOA search, and then mail the Notice of Settlement and Data Dispute Form, substantially in the forms attached as Exhibits B and C, respectively, to each Class Member by first-class mail, postage prepaid.

6.3.3 If a Class Member is deceased, the successor or estate may receive the payment. Within ten (10) calendar days of notification that the Class Member is deceased, the Settlement Administrator shall mail a Beneficiary Declaration and Release to the successor or individual acting on behalf of the estate.

6.3.4 In the event that a Notice Packet is returned as undeliverable, the Settlement Administrator will make reasonable efforts to obtain a valid mailing address by using the social security number of the class member and standard skip tracing devices to conduct a search for a correct mailing address and by contacting Class Counsel and Defendant through Defendant's Counsel. Following each search that results in a corrected address, the Settlement Administrator shall promptly resend the original Notice Packet to the Class Member by first-class mail, postage prepaid. Such efforts must be completed no less than fourteen (14) calendar days before the date of the Final Approval and Fairness Hearing. No further action is required if the search results in no corrected address.

6.3.5 The Parties shall cooperate in good faith with the Settlement Administrator's reasonable efforts to obtain valid mailing addresses for Class Members.

6.3.6 All costs of mailing of the Notice Packet, whether foreseen or not, shall be paid from the Gross Settlement Amount, including the cost of searching for Class Members' addresses as provided in Section 6.3.4. All other reasonable costs of the Settlement Administrator shall also be paid from the Gross Settlement Amount.

6.3.7 No later than fourteen (14) calendar days prior to the date of the Final Approval and Fairness Hearing, the Settlement Administrator shall file a declaration under penalty of perjury advising the Court that the requirements of Sections 6.3.1 through 6.3.4 of this Agreement have been fulfilled.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310.553.0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE
17.
CASE NO. 4:17-CV-07272-YGR

6.3.8 Compliance with these procedures shall constitute due and sufficient notice to Class Members of this Agreement and shall satisfy the requirement of due process. Nothing else shall be required of, or done by, the Parties or their Counsel to provide notice of the proposed Agreement.

6.4 Responses to Notice. The Notice Packet shall provide Class Members with information as to how they may challenge the Data in the Data Dispute Form. Class Members need not exclude themselves from the Agreement to submit a Data Dispute Form. If a Class Member timely submits both a Data Dispute Form and a request for exclusion, the Data Dispute Form shall control, and the request for exclusion shall be null and void.

6.5 Class Members will have until the Data Dispute Deadline within which to complete and postmark their Data Dispute Form for return to the Settlement Administrator. Except as provided by Section 6.5.1 and 6.5.2, no Data Dispute Forms will be honored if postmarked after the Data Dispute Deadline.

6.5.1 For Class Members who are re-mailed the Notice Packet due to it being undeliverable, the deadline by which to submit a Data Dispute Form, file an objection, or submit a request for exclusion will be the later of (i) fourteen (14) calendar days from the date the Notice Packet was re-mailed, or (ii) the Data Dispute Deadline.

6.5.2 If a Data Dispute Form is timely submitted, but is deficient or incomplete, the Settlement Administrator will return the Data Dispute Form (or, if deemed necessary, a new Data Dispute Form) to the Class Member within five (5) business days of receipt of the Data Dispute Form with a deficiency notice explaining the deficiencies and stating that the Class Member will have fifteen (15) calendar days from the date of the deficiency notice to correct the deficiencies and resubmit the Data Dispute Form. Neither the Parties nor their Counsel shall discourage any Class Member from submitting a Data Dispute Form. The Settlement Administrator will timely notify Class Members whose dispute letters are untimely or denied for other reasons.

6.5.3 Class Members, with the exception of the Class Representative, may opt-out of the Agreement. Class Members who wish to exercise this option must submit a request for exclusion to the Settlement Administrator as provided in this section. The request for exclusion must (a) be in writing; (b) state the name, address and telephone number of the Class Member; (c) state either the Class Member's approximate years of employment with Defendant or the employee identification

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE

18.

CASE NO. 4:17-CV-07272-YGR

number assigned to the Class Member by Defendant; (d) request exclusion from the Class saying words to the effect of "I wish to opt out of the Class in: *Emetoh v. FedEx Freight, Inc.*"; (e) be sent via U.S. Mail postmarked no later than the Data Dispute Deadline; and (f) be signed and dated with return address or contact information. No request for exclusion may be made on behalf of a group of members of the Class. The date of the postmark on the return-mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted. By submitting such a Request for Exclusion, a Class Member shall be deemed to have exercised his or her option to opt out of the class action lawsuit, except that opting out does not alter the binding nature of the PAGA Settlement, Release, Final Approval, and Final Judgment related to the PAGA Settlement.

6.5.4 Any member of the Class who requests exclusion from the Agreement will not be entitled to any share of the settlement (except for a PAGA Payment), will not be bound by the Agreement or Final Judgment (except as to the PAGA Settlement and related Final Judgment), and will not have any right to object, appeal or comment thereon. Members of the Class who fail to submit a valid and timely request for exclusion shall be bound by all terms of the Agreement and the Final Judgment entered in this Action, regardless of whether they otherwise have requested exclusion from the Agreement.

6.5.5 The Settlement Administrator is to send a deficiency notice to the Class Members for any irregularities in the requests for exclusion that are timely submitted; the deficiency notice will provide the Class Members no less than fifteen (15) calendar days from the mailing of the deficiency notice to cure the deficiency, even if after the claims period ends.

6.5.6 Within ten (10) calendar days of the Data Dispute Deadline, the Settlement Administrator shall notify Class Counsel and Defendant's Counsel of the identity of Class Members who have submitted requests for exclusion and whether the request for exclusion was timely or untimely filed. No later than fourteen (14) calendar days before the Final Approval and Fairness Hearing, the Settlement Administrator shall file a declaration under penalty of perjury providing the Court with a complete list of all members of the Class who have timely requested exclusion from the Agreement.

6.5.7 Any person who does not request exclusion but who wishes to object or otherwise be heard concerning this Agreement must provide the Settlement Administrator with written

LITTLER MENDELSON, P.C. 2049 Century Park East 5th Floor Los Angeles, CA 90067 3107 310.553 0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE 19. CASE NO. 4:17-CV-07272-YGR

notice of his or her intent to object to this Agreement, although no Class Member has the right to object to the PAGA Settlement. To be considered timely, the notice must be sent to the Settlement Administrator via U.S. Mail and postmarked no later than the Data Dispute Deadline. The notice must set forth any and all objections to this Agreement and include any supporting papers and arguments. Any person who fails to submit such a timely written notice shall be barred from making any statement objecting to this Agreement, and shall forever waive his or her objection, except by special permission of the Court, but may still attend the hearing to obtain such special permission. The Settlement Administrator shall promptly forward all objections to the Parties and have them filed with the Court within ten (10) calendar days of the Data Dispute Deadline with any later received objections filed with the Court promptly upon receipt and in any case no later than five (5) business days before the Final Approval and Fairness Hearing. Either of the Parties may file a responsive document to any notice of intent to object with the Court no later than five (5) business days before the Final Approval and Fairness Hearing. Any person who objects to the Agreement shall be bound by the order of the Court.

6.5.8 If any individual whose name does not appear on the updated class list provided to the Settlement Administrator believes that he or she is a member of the Class, he or she shall have the opportunity to dispute his or her exclusion from the Class. Individuals who believe they are Class members must notify the Settlement Administrator in writing no later than the Data Dispute Deadline. The Parties will meet and confer regarding any such individuals in an attempt to reach an agreement as to whether any such individual should be regarded as a Class member. If the Parties so agree, the Settlement Administrator will mail a Notice Packet to the individual, and treat the individual as a Class member for all other purposes. Such an individual will have all of the same rights as any other Class member under this agreement.

6.5.9 If five percent (5%) or more of the total number of Class Members submit timely and valid requests for exclusion, then Defendant shall have the option to void the Agreement. Defendant must exercise this option within fourteen (14) calendar days of receiving a report from the Settlement Administrator showing the total number of timely and valid requests for exclusion exceeding 5% of Class Members. If Defendant chooses to exercise this option, the effect will be precisely the same as if final approval did not occur, as discussed in Section 2.2. As a condition to

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310.553.0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE

20.

CASE NO. 4:17-CV-07272-YGR

exercise of this option, Defendant must pay the Settlement Administration Costs incurred as of the date of this exercise, notwithstanding other allocations of Settlement Administration Costs set forth in this Agreement.

6.5.10 Neither the Parties nor their respective Counsel will solicit or otherwise encourage any Class Member, directly or indirectly, to request exclusion from the Agreement or object to the Agreement.

6.6 Data Dispute Procedures. Any Qualified Claimant who disputes the Data listed on the Data Dispute Form shall complete the Data Dispute Form and provide it together with any supporting information or documentation to the Settlement Administrator by the Data Dispute Deadline. A Data Dispute Form will be deemed submitted (a) when postmarked, if it is mailed by first-class, registered, or certified mail, postage prepaid, addressed in accordance with the instructions on the form, or (b) if otherwise submitted, when it is actually received at the address designated on the form. If a Qualified Claimant does not timely dispute the Data contained in the Data Dispute Form, the Data contained in the Data Dispute Form mailed to the Qualified Claimant shall govern the calculation of his or her entitlement under the Agreement

6.6.1 Defendant shall review and respond to each submitted Data Dispute Form within ten (10) calendar days of receipt, and shall transmit a copy of its response to the Settlement Administrator. Defendant's response shall state whether Defendant agrees with or disputes the information provided in the Data Dispute Form.

(a) If Defendant agrees with all of the information provided in the Data Dispute Form, the information and documentation provided by the Qualified Claimant and attached to the Data Dispute Form shall govern the calculation of the entitlement under the Agreement of the person whose employment information is listed in the Data Dispute Form.

(b) If Defendant disagrees with any of the information provided in a Data Dispute Form, it shall follow the procedure set forth in Section 6.6.2 of this Agreement.

6.6.2 In the event that Defendant disagrees with the information provided in a Data Dispute Form, Defendant's Counsel will promptly advise Class Counsel in writing of the dispute and provide Class Counsel with copies of all information relevant to the dispute. Copies of all Data Dispute Forms and correspondence with the person(s) submitting the Data Dispute Form(s) shall be made

LITTLER MENDELSON, P.C. 2049 Century Park East 5th Floor Los Angeles, CA 90067 3107 310.553.0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE 21. CASE NO. 4:17-CV-07272-YGR

available to Class Counsel upon request. Defendant's Counsel and Class Counsel shall attempt in good faith to resolve any such dispute within ten (10) calendar days of Class Counsel's receipt of Defendant's Counsel's notice of a dispute as to the Data Dispute Form. Class Counsel shall have full discretion on behalf of the Qualified Claimants to resolve such disputes with Defendant's Counsel, except that any and all payments relating to the disputed entitlement must be from the Net Settlement Amount.

6.6.3 In the event the Parties are unable to resolve any dispute under this section, the Court shall review all information, materials and documents provided by the Qualified Claimant, Class Counsel, and/or Defendant's Counsel, and make a decision regarding the dispute. This decision shall be final and unappealable.

6.7 Application for Attorneys' Fees and Expenses. Class Counsel shall apply to the Court for an award of fees from the Gross Settlement Amount in an amount not to exceed One Million Eighty-Two Thousand Two-Hundred Fifty Dollars ($1,082,250.00) (thirty three and one-third percent of the Gross Settlement Amount) and actual costs incurred up to Twenty Thousand Dollars ($20,000.00). Defendant agrees not to oppose Class Counsel's application for fees and expenses provided the application is made consistent with this section. To the extent the Court awards less than this amount, the remainder shall be distributed to the Qualified Claimants. Failure of the Court to award the requested attorneys' fees and costs is not a grounds to void this Agreement, however, Plaintiff reserves the right to appeal any such decision.

6.8 Application for Enhancement Payment. Class Counsel, on behalf of Plaintiff, shall apply to the Court for an Enhancement Payment from the Gross Settlement Amount, per the Court's direction, or no later than the same day Plaintiff files his anticipated Motion for Final Approval of Class Action Settlement. To the extent the Court awards less than the requested amount, the remainder shall be distributed to the Qualified Claimants. Failure of the Court to award the requested Enhancement Payment is not a grounds to void this Agreement.

6.8.1 Any request for an Enhancement Payment may be supported by a declaration from the Class Representative seeking payment and outlining the burdens and obligations assumed in connection with his role as a Class Representative. Defendant agrees not to oppose Class

LITTLER MENDELSON, P.C. 2049 Century Park East 5th Floor Los Angeles, CA 90067 3107 310.553.0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE 22. CASE NO. 4:17-CV-07272-YGR

Representative's application for the Enhancement Payment provided the application is made consistent with this Agreement.

6.8.2 Plaintiff shall be solely and legally responsible to pay any and all applicable taxes on his Class Representative Enhancement Payment and hold harmless Defendant from any claim or liability for taxes, penalties, or interest arising as a result of the Class Representative Enhancement Payment.

6.9 Final Approval and Fairness Hearing. On the date set forth in the Notice Packet, the Court shall hold the Final Approval and Fairness Hearing where objections, if any, may be heard. If the Court approves this Agreement at the Final Approval and Fairness Hearing, the Parties request that the Court enter the Final Judgment.

6.10 Tax Allocation of the Net Settlement Amount. To fairly allocate settlement funds based on the Qualified Claimant's dates of employment as a Class Member (excluding workweeks where the Qualified Claimant was not performing driving duties) and any entitlement to waiting time penalties, the distribution amounts will be calculated as follows: The total Workweeks for all Class Members in the class period plus additional Workweeks allocated for separated employees shall be divided into the Net Settlement Amount to calculate the agreed upon payment per Workweek (the "Workweek Rate"). Each Qualified Claimant who separated from Defendant during the class period at least once will receive an allotment of six additional Workweeks. Each Qualified Claimant will be paid the Workweek Rate for each Workweek.

6.10.1 There will be no reversion of any of the Gross Settlement Amount or Net Settlement Amount to Defendant. For any Class Member that requests exclusion from the Class, his or her Claim Amount will be added to the Net Settlement Amount and distributed to Qualified Claimants on a proportional basis. All Qualified Claimants will receive their Claim Amount, such that 100% of the Net Settlement Amount will be paid.

6.10.2 The Parties recognize that the Claim Amounts to be paid to Class Members reflect settlement of a dispute over claimed wages, business expenses, interest, premiums and penalties. The parties agree that such payments are not, and are not intended to be made as a payment with respect to, a penalty or a punishment of any type or kind for purposes of Internal Revenue Service Code §162(f), except that the PAGA Payment is a civil penalty.

LITTLER MENDELSON, P.C. 2049 Century Park East 5th Floor Los Angeles, CA 90067 3107 310.553.0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE 23. CASE NO. 4:17-CV-07272-YGR

6.10.3 With the exception of the PAGA Payment, no governmental entity is directly or indirectly a recipient of any portion of the payments made pursuant to this Agreement, and no governmental entity has any interest or involvement of any type or kind in the litigation hereby settled. The payments made herein are not made or received with the intention of avoiding or reducing any liability to a governmental entity of any type or kind.

6.10.4 The Settlement Administrator will prepare and issue Forms 1099 and W-2's as part of this Agreement and calculate and deduct required withholdings from each Payroll Settlement Check, and file tax forms with the appropriate government agencies as required by law. Pursuant to its duties and undertakings, the Settlement Administrator shall work with Defendant to ensure that all monies and information needed to remit and report the applicable portions of the payroll tax payment to the appropriate taxing authorities are provided on a timely basis. Defendant agrees to reasonably cooperate with the Settlement Administrator to the extent necessary to determine the amount of the payroll tax payment required under this section. Defendant and Defendant's Counsel will not be responsible for any errors or omissions in the Settlement Administrator's calculations of the withholdings.

6.10.5 Qualified Claimants shall be solely responsible for the reporting and payment of their share of any federal, state and/or municipal income or other taxes on payments made pursuant to this Agreement. No Party has made any representation to any of the other Parties as to the taxability of any payments pursuant to this Agreement, including the payments to Class Members, the payments to Class Counsel, the payments to the Class Representative, the payroll tax liability of Defendant, or the allocation of settlement proceeds to wage and non-wage income as provided in Section 6.10.4, or otherwise as to tax implications of any provision of this Agreement.

6.10.6 Defendant will pay the employer's share of payroll taxes only attributable to the portion of the Net Settlement Amount deemed to be wages. Defendant shall not be responsible for payroll tax payments on any other portion of the Gross Settlement Amount or Net Settlement Amount.

6.10.7 Defendant and Defendant's Counsel will not be liable for any errors or omissions in the Settlement Administrator's calculation of each Qualified Claimant's Claim Amount. Defendant and Defendant's Counsel will not be liable with respect to any claims relating to management of the QSF or distribution of the funds from the QSF, the payment of taxes (other than

the employer's share of payroll taxes), the withholding of taxes, or any obligations or losses incurred by any person or any entity in connection therewith.

6.10.8 The Settlement Administrator shall allocate all Claim Amounts to Qualified Claimants as follows:

(a) Twenty percent (20%) of the Claim Amounts shall be allocated for payment of disputed wages to Qualified Claimants. For this portion of the Claim Amounts, Qualified Claimants shall receive an IRS Form W-2 from the Settlement Administrator.

(b) Eighty percent (80%) of the Claim Amounts shall be allocated for disputed business expense reimbursement, Labor Code § 226, penalties, including the PAGA Payment, and interest. This portion of the Claim Amounts consists of other income, not wages, for which the Qualified Claimants shall receive an IRS Form 1099 from the Settlement Administrator as and if required by law.

6.10.9 The Class Members receiving all or any portion of any payment hereunder are present or former employees of Defendant.

6.11 Distribution of Settlement Proceeds. Within fourteen (14) calendar days after the Final Judgment is entered, Defendant shall electronically wire the entire Gross Settlement Amount and employer's share of payroll taxes to the Settlement Administrator, who shall deposit it and hold it in trust in the QSF. The final and complete delivery by Defendant to the Settlement Administrator of the Gross Settlement Amount and employer's share of payroll taxes shall constitute full and complete discharge of the entire obligation of Defendant under this Agreement, except that Defendant is also responsible for any retroactive tax increase assessed on the amounts allocated to wages, upon an accounting provided by the Settlement Administrator. No Released Party shall have any further obligation or liability to Class Counsel, Class Representative, or Qualified Claimants.

6.11.1 Within seven (7) calendar days after the Final Approval Date, the Settlement Administrator shall promptly deduct and pay (and, if available, electronically wire) from the Gross Settlement Amount (1) all Court-awarded attorney's fees and costs; (2) the Enhancement Payment; (3) Settlement Administration Costs; and (4) the State of California's portion of the PAGA Payment. Following deduction of the amounts of such payments, the Settlement Administrator shall calculate and make payments to the Qualified Claimants in accordance with this Agreement.

LITTLER MENDELSON, P.C. 2049 Century Park East 5th Floor Los Angeles, CA 90067 3107 310.553.0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE

25.

CASE NO. 4:17-CV-07272-YGR

(a) The Settlement Administrator shall wire the Court-approved attorneys' fees and costs to Class Counsel. Class Counsel shall provide the Settlement Administrator with the pertinent taxpayer identification number and wire instructions.

(b) The Settlement Administrator shall send a check by mail for the Court-approved Enhancement Payment to the Class Representative, in care of Class Counsel.

6.11.2 Within fifteen (15) calendar days of the Final Approval Date, the Settlement Administrator shall issue Claim Amounts to Qualified Claimants in the form of a check, which shall become null and void if not deposited within one hundred eighty (180) calendar days of issuance. After one hundred eighty (180) calendar days of issuance, funds from undeposited checks, plus any interest that has accrued on that sum after being deposited into the QSF, shall be deposited with the State of California pursuant to California's Unclaimed Property Law, Code of Civil Proc. (C.C.P.) §1500 *et seq.*, and specifically as unclaimed intangible property and/or wages within the meaning of C.C.P. §1513 (4) & (7) and subject to distribution pursuant to Court order pursuant to C.C.P. §1519.5.

6.11.3 The failure by a Class Member to claim or deposit any check issued by the Settlement Administrator shall have no effect on that Class Member's release of all Released Claims as set forth herein.

6.11.4 No person shall have any claim against the Settlement Administrator, Defendant or any of the Released Parties, the Class Representative, the Class Members, or Class Counsel based on distribution or payments made substantially in accordance with this Agreement, or further orders of this Court. The Settlement Administrator, however, shall be licensed and bonded in an amount sufficient to cover any claims against it.

6.12 Release of Claims. The Parties agree that it is their intent that the terms set forth in this Agreement will release any further attempt, by lawsuit, administrative claim or action, arbitration, demand, or other action of any kind by each and all of the Qualified Claimants as well as all Class Members for purposes of PAGA relief, as explained in Section 1.25. , including participation to any extent in any class or collective action, to obtain a recovery based on each and all of the allegations in the operative complaint in this matter, for harms arising during the Class Period.

6.12.1 Upon full and final payment by Defendant of the Gross Settlement Amount consistent with Section 6.11, the Class Representative and each Qualified Claimant as well as all Class

**Commented [A5]:** Clarifies that release will not apply to class members who properly opt out, except to the extent the PAGA release is binding.

**Deleted:** Class Members

**Formatted:** Outline numbered + Level: 3 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 1" + Tab after: 1.5" + Indent at: 0", Tab stops: 1.75", List tab + Not at 1.5"

Members for purposes of PAGA relief, as explained in Section 1.25, shall be deemed to have fully, finally, and forever released the Released Parties from all Released Claims, as defined in Sections 1.8, 1.34 and 1.35. The Agreement includes a release of all Released Claims by Qualified Claimants, as well as all Class Members for purposes of PAGA relief, as explained in Section 1.25. As of the entry and filing of the Final Judgment, Plaintiff, the Qualified Claimants, as well as all Class Members for purposes of PAGA relief, as explained in Section 1.25, shall be permanently enjoined and forever barred from prosecuting any and all Released Claims against the Released Parties.

6.12.2 In addition, upon full and final payment by Defendant of the Gross Settlement Amount, and conditioned upon the Court approving a Class Representative Enhancement Payment in any amount, the Class Representative shall be deemed to have fully, finally, and forever released the Released Parties from the Class Representative's Released Claims, and the Class Representative shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by the law, the provisions, rights, and benefits he may otherwise have had pursuant to Section 1542, as quoted in the preceding paragraph.

6.13 Miscellaneous Provisions

6.13.1 The respective signatories to this Agreement represent that they are fully authorized to enter into this Agreement and bind the respective Parties to its terms and conditions.

6.13.2 The Parties represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or right released and discharged in this Agreement.

6.13.3 Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States certified mail, return receipt requested, addressed as follows:

To the Plaintiff and the Class:

Shaun Setareh
William Pao
Alexandra McIntosh
Setareh Law Group

**Commented [A6]:** Clarifies that release will not apply to class members who properly opt out, except to the extent the PAGA release is binding.

**Deleted:** each Class Member, who did not timely and properly opt out of the Agreement

**Moved up [1]:** The Class Representative's and the Class Members' limited Section 1542 waiver releases all claims, known or unknown, within the definition of Released Claims, irrespective of the factual or legal basis for such claims. This limited 1542 waiver was a specifically negotiated term, and was specifically taken into consideration in arriving at the Gross Settlement Amount. Class Members, including Class Representatives, will be informed in the Notice of Settlement and will be deemed to understand that Section 1542 gives them the right not to release existing claims of which they are not now aware, unless they voluntarily choose to waive this right. Having been so informed, Class Members, including the Class Representative, will be deemed to have voluntarily waived the rights described in Section 1542, and elected to assume all risks for claims that now exist in their favor, known or unknown, that fall within the scope of the Released Claims.

**Deleted:** Such release includes a limited California Civil Code Section 1542 ("Section 1542") waiver. Section 1542 states:
¶
**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.¶**

**Commented [A7]:** Original language deleted and replaced by this language copied from paragraph 50 of the Marino agreement.

LITTLER MENDELSON, P.C. 2049 Century Park East 5th Floor Los Angeles, CA 90067 3107 310.553 0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE 27. CASE NO. 4:17-CV-07272-YGR

315 S. Beverly Dr., Ste. 315
Beverly Hills, CA 90212

To Defendant:

Keith A. Jacoby
Littler Mendelson, P.C.
2049 Century Park East, 5th Floor
Los Angeles, CA 90067.3107

Sophia Behnia
Littler Mendelson, P.C.
333 Bush Street, 34th Floor
San Francisco, CA 94104

Linda N. Bollinger
Littler Mendelson, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303

Sandra C. Isom
FedEx Freight, Inc.
1715 Aaron Brenner Drive, Ste. 600
Memphis, TN 38120

6.13.4 The Parties hereto agree that the terms and conditions of this Agreement are the result of lengthy, intensive, arm's-length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or its Counsel participated in the drafting of this Agreement.

6.13.5 The Class Representative, by signing this Agreement, is bound by the terms herein and further agrees not to request to be excluded from the Agreement and not to object to any terms of this Agreement. Any such request for exclusion or objection shall therefore be void and of no force or effect. Defendant, Class Counsel, and the Class Representative waive their rights to file an appeal, writ, or any challenge whatsoever to the terms of this Agreement.

6.13.6 The Parties agree that nothing contained in this Agreement shall be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant, and Defendant denies any liability therefore. Each Party has entered into this Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses. This Agreement is a settlement document and shall not be admissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce its terms or in which

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE

28.

CASE NO. 4:17-CV-07272-YGR

Defendant is relying upon this Agreement in support of an affirmative defense. To the extent this Agreement is deemed void or the Final Approval Date does not occur or for whatever reason does not result in the final resolution of the Action, Defendant does not waive, and, instead, expressly reserves its rights to challenge all claims and allegations in the Action upon all procedural, factual and legal grounds, as well as asserting any and all other potential defenses or privileges.

6.13.7 With the exception of the Excluded Claims, Plaintiff and Class Counsel represent that they do not currently intend to pursue any claims against Defendant, including, but not limited to, any and all claims relating to or arising from Plaintiff's employment with Defendant, and that Class Counsel is not currently aware of any facts or legal theories upon which any claims or causes of action could be brought against Defendant by Plaintiff, excepting those facts or legal theories alleged in the Complaint and the Excluded Claims. The Parties further acknowledge, understand, and agree that this representation is essential to the Agreement and that this Agreement would not have been entered into were it not for this representation.

6.13.8 Neither Class Counsel nor any other attorneys acting for, or purporting to act for, the Class, Class Members, or the Class Representative, may recover or seek to recover any amounts for fees, costs, or disbursements from the Released Parties or the settlement except as expressly provided herein.

6.13.9 This Agreement, including exhibits, constitutes the full, complete and entire understanding, agreement and arrangement between the Class Representative and Qualified Claimants on the one hand and Defendant on the other hand with respect to the settlement of the Action and Released Claims against Defendant. Except those set forth expressly in the Agreement, there are no other agreements, covenants, promises, representations or arrangements between the Parties with respect to the settlement of the Action and the Released Claims against Defendant.

6.13.10 This Agreement may not be changed, altered, or modified, except in writing signed by the Parties hereto and approved by the Court. This Agreement may not be discharged except by performance in accordance with its terms or by a writing used by the Parties hereto. No rights under this Agreement may be waived except in writing.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE

29.

CASE NO. 4:17-CV-07272-YGR

6.13.11 This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, Settlement Administrators, successors, and assigns.

6.13.12 This Agreement and the exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to have been wholly performed, in the State of California, and the rights and obligations of the Parties to the Agreement shall be construed and enforced in accordance with, and governed by, the substantive laws of the State of California without giving effect to that State's choice of law principles.

6.13.13 This Agreement shall become effective upon its execution by the Parties. The Class Representative, Class Counsel, Defendant and Defendant's Counsel may execute this Agreement in counterparts and by way of facsimile signature or scanned signature attached to an email, and execution of counterparts shall have the same force and effect as if each signatory had signed the same instrument.

6.13.14 In the event that one or more of the Parties to this Agreement institutes any legal action, arbitration, or other proceeding to enforce the provisions of this Agreement or to declare rights and/or obligations under this Agreement, the successful Party or Parties shall be entitled to recover from the unsuccessful Party or Parties reasonable attorneys' fees and costs, including expert witness fees incurred in connection with any enforcement actions. Notwithstanding the entry of Final Judgment, the Court shall retain jurisdiction of this matter for purposes of interpreting and enforcing the terms of this Agreement and the Judgment.

6.13.15 Paragraph titles or captions contained in the Agreement are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement, or any provision thereof.

6.13.16 Class Counsel will provide an opportunity for Defendant's Counsel to review the Motions for Preliminary and Final Approval prior to filing with the Court, including furnishing any drafts at least seven (7) calendar days before filing.

6.13.17 With respect to all of the documents produced by Defendant in this litigation, Plaintiff's attorneys acknowledge that they continue to be bound by the Parties' Stipulated

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310.553.0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE 30. CASE NO. 4:17-CV-07272-YGR

Protective Order and that these documents must be kept confidential and otherwise handled in accordance with the terms of the Protective Order.

6.13.18 IRS Circular 230 Disclaimer. Each Party to this Agreement (for purposes of this section, the "acknowledging party" and each Party to this Agreement other than the acknowledging party, an "other party") acknowledges and agrees that:

(a) No provision of this Agreement, and no written communication or disclosure between or among the Parties or their attorneys and other advisers, is or was intended to be, nor shall any such communication or disclosure constitute or be construed or be relied upon as, tax advice within the meaning of United States Treasury Department circular 230 (31 CFR part 10, as amended);

(b) The acknowledging party (a) has relied exclusively upon his, her or its own, independent legal and tax counsel for advice (including tax advice) in connection with this Agreement; (b) has not entered into this Agreement based upon the recommendation of any other Party or any attorney or advisor to any other Party; (c) is not entitled to rely upon any communication or disclosure by any attorney or adviser to any other Party to avoid any tax penalty that may be imposed on the acknowledging party; and

(c) no attorney or adviser to any other Party has imposed any limitation that protects the confidentiality of any such attorney's or adviser's tax strategies (regardless of whether such limitation is legally binding) upon disclosure by the acknowledging party of the tax treatment or tax structure of any transaction, including any transaction contemplated by this Agreement.

IN WITNESS WHEREOF, this Agreement is executed by the Parties and their duly authorized attorneys, as of the day and year herein set forth.

Dated: _____________ By: _______________________________
Theodore A. Emetoh
Plaintiff

Dated: _____________ By: _______________________________

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE 31. CASE NO. 4:17-CV-07272-YGR

FedEx Freight, Inc.
Defendant

APPROVED AS TO FORM AND CONTENT:

SETAREH LAW GROUP

Dated: _____________ By: ________________________________
Shaun Setareh
Attorneys for Plaintiff

LITTLER MENDELSON, P.C.

Dated: _____________ By: ________________________________
Keith A. Jacoby
Attorneys for Defendant
FedEx Freight, Inc.

4834-3565-3539.5 057116.1023

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE 32. CASE NO. 4:17-CV-07272-YGR