Shaun Setareh (SBN 204514)
 shaun@setarehlaw.com
William M. Pao (SBN 219846)
 william@setarehlaw.com
Alexandra R. McIntosh (SBN 320904)
 alex@setarehlaw.com
SETAREH LAW GROUP
315 South Beverly Drive, Suite 315
Beverly Hills, California 90212
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff
THEODORE A. EMETOH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THEODORE A. EMETOH, on behalf of himself, all others similarly situated,<br><br>*Plaintiff*,<br><br>vs.<br><br>FEDEX FREIGHT, INC., an Arkansas corporation; and DOES 1 through 50, inclusive,<br><br>*Defendants*. | Case No. 4:17-cv-07272-YGR<br><br>Assigned For All Purposes To The Honorable Yvonne Gonzalez Rogers, Courtroom 8<br><br>**PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF SHAUN SETAREH; [PROPOSED] ORDER**<br><br>[Filed Concurrently with the Declaration of Shaun Setareh and [Proposed] Order]<br><br>Date:      February 4, 2020<br>Time:      2:00 p.m.<br>Place:     Courtroom 1<br><br>Action Filed:                    November 14, 2017<br>Date of Removal:              December 21, 2017<br>First Amended Complaint:    March 14, 2018<br>Second Amended Complaint:  August 16, 2018 |

i.

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 4, 2020 at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 1 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California 94612, Plaintiff THEODORE A. EMETOH will and does hereby move this Court to: (1) conditionally certify a settlement class; (2) preliminarily approve the parties' proposed class action settlement (the "Settlement"); (3) appoint Plaintiff as the Class Representative, his counsel as the Class Counsel, and Simpluris, Inc., as the Settlement Administrator; (4) approve the forms of Class Notice and proposed timeline for administration; and (5) schedule a hearing on the final approval of the Settlement for June 26, 2020, or as soon thereafter as the Court is available.

This motion is made on grounds that the Settlement is fair, adequate and reasonable and within the range of possible final approval.

This Motion is based upon this Notice of Motion and Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class; the accompanying Declaration of Shaun Setareh, all accompanying exhibits, as well as all other pleadings and papers on file with this Court and such further evidence and arguments as may be presented at the hearing.

DATED:  January 24, 2020                 SETAREH LAW GROUP


                                         _/s/ Shaun Setareh_____
                                         SHAUN SETAREH
                                         Attorneys for Plaintiff
                                         THEODORE A. EMETOH

# **TABLE OF CONTENTS**

I.     INTRODUCTION...........................................................................................................1

II.    BACKGROUND.............................................................................................................3

III.   SETTLEMENT................................................................................................................4

     A.  THE SETTLEMENT CLASS..................................................................................4

     B.  GROSS SETTLEMENT AMOUNT AND DISTRIBUTIONS...................................4

     C.  SCOPE OF THE CLASS MEMBER RELEASES....................................................5

     D.  NOTICE PROCEDURES........................................................................................6

     E.  PAYMENT OF SETTLEMENT AMOUNTS...........................................................8

IV.    THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL........8

     A.  NORTHERN DISTRICT PROCEDURAL REQUIREMENTS FOR CLASS ACTION................................................................................................................10

         1. Any Differences Between the Settlement Class and the Class Proposed in the Second Amended Complaint.......................................................................10

         2. Estimate of the Number and /or Percentage of Class Members Expected to Submit a Claim..................................................................................................11

         3. Settlement Administrator Selection Process......................................................11

         4. Class Counsel's Lodestar and Multiplier Sought...............................................11

             a.   A Reasonable Result Was Achieved on Behalf of the Class.................12

             b.   The Experience, Reputation, and Ability of Class Counsel..................15

             c.   The Effort Required by the Litigation Justifies the Fee........................15

             d.   The Complexity of the Legal and Factual Issues..................................16

             e.   Class Counsel Assumed Substantial Risk..............................................16

         5. Notice Pursuant to the Class Action Fairness Act of 2005..............................16

     B.  The Settlement Was the Product of Informed, Non-Collusive Negotiations.................16

     C.  The Settlement Has No "Obvious Deficiencies"............................................................17

     D.  The Settlement Falls Within the Range of Possible Approval.......................................17

         1.Liability Is Contested, and the Settlement Provides Class Members with

Substantial Monetary Relief................................................................19

2. The Class Release Is Appropriate Given Plaintiff's Claims...............................21

3. Class Counsel's Fees Requested Are Consistent with Prevailing Market

Rates................................................................................21

E. Certification of a Class for Settlement Purposes Only Is Appropriate..........................21

1. The Numerosity Requirement Is Met................................................21

2. Commonality and Typicality Requirements.........................................22

3. Adequacy of Representation.......................................................22

4. Class Certification Is Proper Under Rule 23(b)(3)................................22

F. The Notice Packet Is Fair and Adequate.........................................................23

G. Simpluris Should Be Appointed the Settlement Administrator......................................24

H. Residual.....................................................................................24

I. Proposed Schedule.............................................................................24

V. CONCLUSION.................................................................................25

# TABLE OF AUTHORITIES

*Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004)......................................23

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)........................................................8

*Diaz v. Trust Territory of Pac. Islands,* 876 F. 2d 1401, 1408 (9th Cir. 1989).........................................9

*Dilts v. Penske Logistics, LLC*  2014 WL 205039 (S.D. Cal. 2014)............................................13

*Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1, 39 & fn. 33 (2014)...................................................13

*Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 647 (1995)..................................................15

*Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000)........................................................21

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).............................................................9

*Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-33 (2001)......................................................................16

*Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at *5 (N.D. Cal. 1997)...............................12

 *Luo v. Zynga Inc.*, No. 13-ccv-00186...................................................................................................9

*Lyons v. Bank of Am., NA,* No. C 11-1232...........................................................................................9

*Mendoza v. Tucson Sch. Dist. No. 1.*, 623 F.2d 1338, 1352 (9th Cir. 1980)..............................................23

*Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 585 (2000)..........................................................13

*North County Contractor's Assn., Inc. v. Touchstone Ins. Svcs.*, 27 Cal. App.4th 1085, 1089-90

(1994)...............................................................................................................................................10

*Serrano v. Priest* (1977) 20 Cal. 3d 25, 49...........................................................................................12

*Stovall-Gusman v. W.W. Granger, Inc.*, 2015 U.S. Dist........................................................................19

*Tombline v. Wells Fargo, NA,* No. 13-cv-04567...................................................................................9

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)..................................................8

*Vizcaino v. Microsoft Corp.* (9th Cir. 2002), 290 F.3d 1043, 1048.......................................................12

*Wershba v. Apple Computer*, 91 Cal. App. 4th 224, 245 (2001)..........................................................16

1

## <u>STATUTES</u>

2    Bus. & Prof. Code §§ 17200 *et seq.*...............................................................................3

3    Code Civ. Proc. §1500et seq...........................................................................................8

4    Lab. Code §§ 201, 202 and 203.......................................................................................3

5    Lab. Code §§ 204, 223, 226.7, 512 and 1198.................................................................3

6    Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1997.1 and 1198......................................3

7    Lab. Code §§ 226(a).........................................................................................................3

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lab. Code §§ 2698 *et seq.*..............................................................................................................3

Lab. Code § 2802..........................................................................................................................3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This amended motion seeks preliminary approval of the class action settlement of this wage-and-hour action between Plaintiff THEODORE A. EMETOH ("Plaintiff"), on behalf of himself and the Class Members described below, and Defendant FEDEX FREIGHT, INC. ("Defendant").

The parties appeared before this Court on January 14, 2020.  The Court identified several issues that the parties needed to address:

- **Release under California Civil Code section 1542**:  The parties agreed to provide supporting authority and clarification or amend the Settlement Agreement. (Declaration of Shaun Setareh ("Setareh Decl."), ¶ 3(a), Exh A.)

- **Class Counsel's Award of Fees**:  Class Counsel agrees to seek no more than 25% of the Gross Settlement Amount. (Setareh Decl., ¶ 12(B).)

- **Past Distributions**:  Class Counsel shall provide the Court with past class settlement. (Setareh Decl., ¶ 39.)

- **Incentive Payment to Class Representative**: Class Counsel shall provide the Court with additional information further supporting the incentive payment of $7,500 to Plaintiff**.** (Setareh Decl., ¶ 30(a).)

- **Selection of Settlement Administrator**:  Class Counsel shall provide the Court with additional information regarding the selection of Simpluris, Inc. ("Simpluris") as the settlement administrator. (Setareh Decl., ¶ 31(a).)

Plaintiff alleged that Defendant failed to pay him and the Class Members for all hours worked and at the correct rate of pay; provide them with compliant meal periods and rest breaks; reimburse them for all necessary expenses; provide them with compliant wage statements; and pay their final wages on time.  Plaintiff also alleged that Defendant violated statutes subjecting them to liability under the California Unfair Competition Law ("UCL"); and violated the California Labor Code Private Attorneys General Act of 2004, as amended ("PAGA") (Lab. Code §§ 2698 *et seq.*).  Defendant denies Plaintiff's allegations in their entirety, denies any liability, and further denies that, for any purpose, other than settling, the action is appropriate for class action treatment.

As the result of arm's length negotiations under the supervision of an experienced, highly regarded mediator with expertise in mediating complex wage and hour class actions, the parties have reached a fair and reasonable class action settlement of Plaintiff's claims. Pursuant to the Agreement, Plaintiff now requests that the Court enter an order preliminarily approving the Agreement; certifying a class for purposes of the settlement only; appointing Plaintiff as the Class Representative, Setareh Law Group as Class Counsel, and Simpluris as the Settlement Administrator; approving and directing the mailing of the Class Notice and related materials; and scheduling a final approval hearing on June 26, 2020 or such later date that is available to the Court.

The Agreement provides for a total aggregate settlement fund of **$3,250,000.00** (the "Gross Settlement Amount"). (Agreement, ¶ 1.21.) This amount is "all-in" and is non-reversionary. No class member will have to submit a claim in order to recover. Instead, checks will be mailed directly to the class members. Any uncashed checks will be transmitted to the State of California pursuant to California's Unclaimed Property Law to be held for the class member. In no circumstance will any of the **$3,250,000.00** revert to Defendant. (Agreement, ¶ 6.10.1, 6.11.2.)

There are an estimated 3,020 Class Members. After all Court-approved deductions from the Gross Settlement Amount, it is estimated that **$2,290,625.00** will be available to pay the Class Members' class claim Settlement Payment, inclusive of (*i.e.*, not in addition to) Class Members' respective shares of any applicable payroll taxes (including but not limited to the Class Members' FICA and FUTA contributions and any other taxes), but exclusive of Defendant's respective shares of any applicable payroll taxes (including but not limited to Defendant's FICA and FUTA contributions and any other taxes). (Agreement, ¶ 1.21, 6.10.6.) The Settlement Payment for Class Members will be calculated based on the total Workweeks for all Class Members in the Class Period plus additional Workweeks allocated for separated employees divided into the Net Settlement Amount to calculate the agreed upon payment per Workweek (the "Workweek Rate"). Each Qualified Claimant who separated from Defendant during the Class Period will receive an allotment of six additional Workweeks. Each Qualified Claimant will be paid the Workweek Rate for each Workweek. (Agreement, ¶ 6.10.)

An additional aggregate total of **$28,125.00** is payable to Class Members constituting their share (25%) of the **$112,500.00** PAGA Payment allocated to civil penalties under PAGA. (Agreement, ¶

PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

1.25.)  The Net Settlement Amount payable to the Class Members is **$2,290,625.00** after deduction of Court approved attorneys' fees and litigation costs, Settlement Administration Costs, the Enhancement Payment to the Class Representative, and the State of California's portion of the PAGA Payment. (Agreement, ¶ 1.22.)  Class Counsel shall give any required notice to the LWDA.  Based on an estimated 3,020 Class Members, the approximate average amount for Class Members is **$758.49**.

## II.    BACKGROUND

At all times relevant to this action, Defendant operates a national less-than-truckload (LTL) freight service that offers pallet-level tracking and multiple-pallet shipments.  Defendant provides service throughout the U.S., Puerto Rico, Canada and Mexico.  Defendant also provides freight service to more than 130 countries and territories.

Plaintiff, a former Road Driver of Defendant, brought this Action asserting the following violations: 1) Failure to Provide Meal Periods (Lab. Code §§ 204, 223, 226.7, 512 and 1198); 2) Failure to Provide Rest Periods (Lab. Code §§ 204, 223, 226.7 and 1198); 3) Failure to Pay Hourly Wages (Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1997.1 and 1198); 4) Failure to Indemnify (Lab. Code § 2802); 5) Failure to Provide Accurate Written Wage Statements (Lab. Code §§ 226(a)); 6) Failure to Timely Pay All Final Wages (Lab. Code §§ 201, 202 and 203); 7) Unfair Competition (Bus. & Prof. Code §§ 17200 *et seq.*); and 8) Civil Penalties (Lab. Code §§ 2698 *et seq.*). (Setareh Decl., ¶ 5.)

In discovery, Defendant provided Class Counsel with nearly 2,000 pages of documents and video footage from trucks, including copies of all applicable versions of personnel and payroll policies, contact information for the putative class, and records reflecting Class Members' hours worked and wages paid, amongst numerous other documents, as well as payroll and time clock data for the putative class. Defendant also served written discovery, issued subpoenas and deposed Plaintiff. (*Id.*, ¶ 8.)

The Parties participated in two separate full-day mediations before Hon. Stephen Sundvold and Tripper Ortman, Esq. on January 15, 2019 and May 21, 2019, respectively. The Parties were able to come to an agreement and signed a Memorandum of Understanding on May 21, 2019. (*Id.*, ¶ 9.)

This Agreement was reached after evaluating the Parties' theories of potential exposure for the underlying claims. The Parties also assessed appropriate discounts to the potential liability based on Defendant's contentions and defenses. (*Id.*, ¶ 10.)

The Parties agree that the above-described investigation and evaluation, as well as discovery and information exchanged during the settlement negotiations, are more than sufficient to assess the merits of the respective Parties' positions and to compromise the issues on a fair and equitable basis. (*Id.*, ¶ 11.)

### III.   THE SETTLEMENT

The following is a summary of the material elements of the Settlement:

### A.   THE SETTLEMENT CLASS

The Class to be conditionally certified is defined as:

> All persons who have worked for Defendant as non-exempt, hourly-paid Road Drivers, City Drivers, or Driver Apprentices in California at any time during the Class Period.  (Agreement, ¶ 1.4.)

> The Class Period means from November 14, 2013 through the date of Preliminary Approval (not earlier than December 1, 2019), except that for Road Drivers, the settlement class period for all but the cell phone reimbursement claim begins on January 1, 2016.[3] (Agreement, ¶ 1.6.)

### B.   GROSS SETTLEMENT AMOUNT AND DISTRIBUTIONS

Defendant will pay a maximum aggregate Gross Settlement Amount of **$3,250,000.00**. (Agreement, ¶ 1.21.)  The Gross Settlement Amount covers: (1) the Class Representative payment of **$7,500.00** to Plaintiff in compensation for having prosecuted the action and undertaken the risk of payment of costs in the event this matter had not been successfully concluded (Agreement, ¶ 1.17.); (2) Settlement Payment paid to Class Members for their class claims (Agreement, ¶ 1.38.); (3) PAGA Payment in the amount of **$112,500.00** to be allocated to claims for civil penalties under PAGA, which includes **$84,375.00** awarded to the State of California, subject to Court approval, and **$28,125.00** awarded to Qualified Claimants, divided *pro-rata* based upon the Qualified Claimants' number of Workweeks during the PAGA Period of November 9, 2016 through the date of Preliminary Approval (Agreement, ¶ 1.25); (4) the Class Members' respective shares of any applicable payroll taxes (including but not limited to Class Members' FICA and FUTA contributions and any other taxes)

---

[3] Defendant entered into a class settlement with Road Drivers in a prior action styled *Roy D. Taylor v. FedEx Freight*, Case No. 1:13-CV-01137-DAD-BAM, in which preliminary approval was granted on April 20, 2016. Therefore, liability in this case begins for the Road Drivers on January 1, 2016 as to all *Taylor* related claims.  The cell phone reimbursement claim was not released in *Taylor*, and therefore that claim extends back to the beginning of the statutory period.  (*See* Request for Judicial Notice filed concurrently herewith.)

attributable to any payments under the Settlement (Agreement, ¶¶ 6.10.4, 6.10.5); (7) the Class Counsel Award, consisting of attorneys' fees not to exceed **$812,500.00** (twenty-five percent (25%) of the Gross Settlement Amount), plus costs not to exceed **$20,000.00**, to compensate Class Counsel for all work performed thus far and all work remaining to be performed in connection with the Settlement, including without limitation documenting and administering the Settlement and securing Court approval (Agreement, ¶¶ 6.1, 6.2, 6.2.1.); and (8) the fees and expenses of the Settlement Administrator, not to exceed **$35,000.00** (Agreement, ¶ 1.36.).

After all Court-approved deductions from the Gross Settlement Amount of **$3.25M**, the estimated Net Settlement Amount constitutes approximately **$2,290,625** Gross Settlement Amount for Class Members including related tax payments (excluding Defendant's tax portion of tax payments).

To fairly allocate settlement funds based on the Qualified Claimant's dates of employment as a Class Member (excluding weeks during which no driving duties were performed) and any entitlement to waiting time penalties, the distribution amount will be calculated as follows: The total Workweeks for all Class Members in the class period plus additional Workweeks allocated for separated employees shall be divided into the Net Settlement Amount to calculate the agreed upon payment per Workweek (the "Workweek Rate"). Each Qualified Claimant who separated from Defendant during the class period at least once will receive an allotment of six additional Workweeks. Each Qualified Claimant will be paid the Workweek Rate for each Workweek. (Agreement, ¶ 6.10.)

In the event that more than **$2,290,625.00** remains in the Net Settlement Amount after payment of the Class Counsel Award, Class Counsel Litigation Costs, Class Representative Enhancement, the PAGA Payment (both Class Member and LWDA shares), and Settlement Administration Costs, then the class Settlement Payment allocated to Qualified Claimants, will be increased on a pro-rata basis, in proportion to the amounts estimated above. (Agreement, ¶ 6.10.1.)

## C.    SCOPE OF THE CLASS MEMBER RELEASES

The Parties have agreed to change the release language to address the Court's concerns regarding clarity of the release, as more fully explained in the Declaration of Sandra Isom Regarding Plaintiff's First Amended Motion for Preliminary Approval. (Dkt. 72.) The parties agree that it is their intent that the terms set forth in this Agreement will release any further attempt, by lawsuit,

administrative claim or action, arbitration, demand, or other action of any kind by the Class

Representative and each and all of the Qualified Claimants as well as all Class Members for purposes of

PAGA relief, as explained in Section 1.25, to obtain a recovery based on each and all of the allegations

in the Second Amended Complaint in this matter, including participating to any extent in any class or

collective action, for harms arising during the Class Period. (Agreement, ¶ 6.12.)

It is also the Parties intent that the Class Representative and all of the Qualified Claimants as

well as all Class Members for purposes of PAGA relief, as explained in Section 1.25, shall be deemed to

have fully, finally, and forever released the Released Parties from all Released Claims, as defined in

Sections 1.8, 1.34 and 1.35. (Agreement ¶ 6.12.1). Such release includes a California Civil Code Section

1542 ("Section 1542") waiver, which releases all claims, known or unknown, within the definition of

Released Claims, irrespective of the factual or legal basis for such claims.  The Data Dispute Form

accompanying the Class Notice sets forth the waiver and explains Class Members rights and that it does

not have the effect of waiving any and all claims a Class Member may have against Defendant.  It only

waives claims as allowed by law and specified in Sections 1.8, 1.25, 1.34, 1.35, and 6.12.

**D.    NOTICE PROCEDURES**

If appointed by the Court, Simpluris, serving as Settlement Administrator, will mail to all Class

Members a Class Notice Packet containing a Class Notice (completed to reflect the order granting

preliminary approval of the Settlement) based upon their last-known address provided by Defendant.

(Agreement, ¶ 6.3.1.).  The proposed Class Notice is attached as **Exhibit C** to the Agreement.

The Class Notice will provide Class Members information regarding the Action and a summary

of the Settlement's principal terms, including allocation of the Gross Settlement Amount. (Agreement, ¶

6.3.)  Each Class Notice also will inform the Class Members of their rights and the manner and deadline

to (1) dispute the Data in the Data Dispute Form (*e.g.*, Workweeks worked or separation during the

Class Period), (2) object to the Settlement, and (3) elect not to participate in the Settlement. (Agreement,

Exh. C.)  The Class Notice will also inform Class Members of the claims to be released. (*Id.*)  The Class

Notice and all relevant documents pertinent to Plaintiff's Motion for Preliminary Approval, including

the Settlement Agreement, shall also be made available by Class Counsel online at a website created and

maintained by the appointed Settlement Administrator at least five (5) weeks prior to the hearing on the

PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

Final Settlement Approval Motion.  (Agreement, ¶ 1.23, Exh. C.)

No later than 30 calendar days after preliminary approval of the Settlement is granted by the Court, Defendant will provide the Settlement Administrator each Class Member's name, last known mailing address, last known telephone number, Social Security Number, the dates the Class Member was employed as a Class Member of Defendant in California during the Class Period, the number of Workweeks attributable to the Class Member, and whether the Class Member's employment with Defendant ended, in a form requested by the Settlement Administrator. (Settlement, ¶ 6.3.1.)

No later than ten (10) calendar days after receipt of such address information, the Settlement Administrator will perform a national change of address ("NCOA") search, update the addresses per the results of the NCOA search, and then mail the Notice of Settlement and Data Dispute Form, substantially in the forms attached as Exhibits B and C, respectively to each Class Member by first-class mail, postage prepaid. (Agreement, ¶ 6.3.2.)

Class Members will have 45 calendar days after the Class Notice Packets are mailed (the "Response Deadline") to dispute the information in the Class Notice, elect not to participate in the Settlement (*i.e.*, exclude himself or herself). (Agreement, ¶ 1.13.)  Any Class Member who does not timely return a properly completed exclusion election will remain in the Class and be bound by the Settlement (and be paid their applicable Settlement Payment and other settlement payments as applicable.  (Agreement, ¶ 6.5.4.)

Any Notice Packets returned to the Settlement Administrator as non-deliverable on or before the Response Deadline will be sent promptly via regular First-Class U.S. Mail to the forwarding address affixed thereto. (Agreement, ¶ 6.3.4.)  If no forwarding address is provided, the Settlement Administrator will promptly attempt to determine the correct address by lawful use of a skip-trace, or other search using the name, address and/or Social Security number of the Class Member involved, and shall then perform a single re-mailing, if another mailing address is identified by the Settlement Administrator. (*Id.*)  Settlement Class Members who received a re-mailed Notice Packet shall have their Response Deadline extended fourteen (14) calendar days from the original Response Deadline. (*Id.*)

If five percent (5%) or more of the Class Members timely opt out of (*i.e.*, exclude themselves from) the Settlement, then Defendant will have the right in their sole discretion to revoke the Settlement

by written notice to Class Counsel not later than fourteen (14) calendar days after the Settlement Administrator notifies the parties of the number of valid elections not to participate in the Settlement. (Agreement, ¶ 6.5.9.)

### E.    PAYMENT OF SETTLEMENT AMOUNTS

The Settlement Administrator shall mail the Settlement Payment by regular First-Class U.S. Mail to Settlement Class Members' last known mailing address no later than fifteen (15) calendar days of the Final Approval Date. (Agreement, ¶ 6.11.2.)  Any settlement check(s) shall thereafter automatically be void if not cashed within 180 calendar days after issuance.  (*Id.*)

Settlement checks remaining un-cashed after expiration of the foregoing deadline shall be immediately cancelled by the Settlement Administrator. (*Id.*)  Funds represented by cancelled checks will be tendered by the Settlement Administrator to the State of California pursuant to California's Unclaimed Property Law (*see* Code Civ. Proc. § 1500 *et seq.*). (Agreement, ¶ 6.11.2.)  Any Class Member who does not timely cash his or her settlement check(s) shall still be bound by all of the Settlement's terms, including those pertaining to the Released Claims, as well as any Judgment that may be entered by the Court if it grants final approval to the Settlement. (Agreement, ¶ 6.11.3.)

## IV.    <u>THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL</u>

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.  *See Newberg on Class Actions* 4th (2002) ("*Newberg*"), § 11.41 (and cases cited therein); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  A class action, however, may not be dismissed, compromised, or settled without the approval of the court.  Fed. R. Civ. P. 23(e).

Judicial proceedings under Rule 23, Federal Rules of Civil Procedure, have led to defined procedures and specific criteria for settlement approval in class action settlements, described in the *Manual for Complex Litigation, Third* (Fed. Judicial Center 1995) ("*Manual*") § 30.41. The *Manual*'s settlement approval procedure describes three distinct steps: (1) Preliminary approval of the proposed settlement at an informal hearing; (2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and (3) A "formal fairness hearing," or final settlement approval hearing,

8

PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented. *Id.*, § 30.41. The procedure, commonly used by federal courts and endorsed by the leading class action commentator, Professor Herbert Newberg, safeguards class members' procedural due process rights and enables the court to fulfill its role as the guardian of class interests. *See Newberg*, § 11.22 *et seq.* Federal Rule of Civil Procedure Rule 23(e) requires the Court to review and approve a proposed voluntary dismissal, settlement, or other compromise of a certified class's claims. The Ninth Circuit has held that Rule 23(e) also applies to settlements before certification, but in a much lighter form that does not entail "the kind of substantive oversight required when reviewing a settlement binding upon the class." *Diaz v. Trust Territory of Pac. Islands,* 876 F. 2d 1401, 1408 (9th Cir. 1989). Although there has been "some uncertainty" about whether this holding applies in the wake of the 2003 amendments to Rule 23(e), *see, e.g., Lyons v. Bank of Am., NA,* No. C 11-1232, 2012 WL 5940846, at \*1 & n.1 (N.D. Cal. Nov. 27, 2012), courts in this district continue to follow *Diaz* to evaluate the proposed settlement and dismissal of putative class claims, *see, e.g., Tombline v. Wells Fargo, NA,* No. 13-cv-04567, 2014 WL 5140048, at \*2 (N.C. Cal. Oct. 10, 2014). *See also Luo v. Zynga Inc.*, No. 13-ccv-00186, 2014 WL 457742, at \*\*3-4 (N.D. Cal. Jan. 31, 2014) (applying *Diaz* to proposed settlement of putative class claims under FLSA and state law).

The decision to approve or reject a proposed settlement is committed to the trial court's sound discretion; a court's decision to approve a class action settlement may be reversed only upon a strong showing of "clear abuse of discretion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (citation omitted); *City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion) (citation omitted).

The purpose of the preliminary evaluation of class action settlements is to determine only whether the proposed settlement is within the range of possible approval, and thus whether notice to the class of the settlement terms and conditions and the scheduling of a formal fairness hearing is worthwhile. To grant preliminary approval of this class action settlement, the court need only find that the settlement falls within the range of possible final approval, also described as "the range of

reasonableness." *See, e.g., North County Contractor's Assn., Inc. v. Touchstone Ins. Svcs.*, 27 Cal. App.4th 1085, 1089-90 (1994); *In re Traffic Exec. Ass'n-Eastern Railroads,*, 627 F.2d 631, 633-34 (2d Cir. 1980); *see also* 4 *Newberg*, § 11.25.  In sum, preliminary approval of a settlement and notice to the proposed class (or collective) is appropriate:  "[i]f [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval…" *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

The Settlement proposed by the parties meets the standards for preliminary approval.

### A.    NORTHERN DISTRICT PROCEDURAL REQUIREMENTS FOR CLASS ACTION SETTLEMENTS

This District promulgated *Procedural Guidance for Class Action Settlements*, which instructs that "[t]he motion for preliminary approval should state," among other things, the following:

#### i.    Any Differences Between the Settlement Class and the Class Proposed in the Second Amended Complaint

The Second Amended Complaint specifies the following class description:

**Truck Driver Class**:  All persons employed by Defendants and/or any staffing agencies and/or any other third parties in hourly or non-exempt positions in California during the **Relevant Time Period**; excluding claims released by California-based employees who worked for Defendants as Road Drivers or other drivers paid by the hour to the extent they performed road runs paid on a piece rate basis, in California on or after January 28, 2012 through December 31, 2015.

The Second Amended Complaint also specifies several sub-classes of truck drivers.

(ECF 37, ¶ 39.)

The Settlement proposes a single Settlement Class that consists of:

All persons who have worked for Defendant as non-exempt, hourly-paid Road Drivers, City Drivers, or Driver Apprentices in California at any time during the Class Period.

(Agreement, ¶ 1.4.)

After consideration of discovery received from Defendant and analysis to certify the class, it was determined that although the Second Amended Complaint asserted a class and various sub-classes, invariably all proposed class members were those who worked for Defendant as truck drivers in California. (Setareh Decl., ¶ 12.)  As such, and to simplify the Settlement Agreement, the parties agreed

10

that the classes should consist of a single class as defined in the Settlement Agreement.  Moreover, Defendant is paying substantial consideration for the releases applicable to the claims in the settlement class.

### ii.  Estimate of the Number and /or Percentage of Class Members Expected to Submit a Claim

Submission of claim forms is not required as to any other aspect of the Settlement or Class Members.  Furthermore, with respect to the Settlement, there is absolutely no reversion of any portion of the settlement proceeds. (*Id.*)

### iii.  Settlement Administrator Selection Process

Defendant obtained bids from two third-party settlement administrators experienced in administering wage-and-hour class action settlements, Phoenix ($21,300) and Simpluris ($22,754), both of which defense counsel had prior satisfactory dealings as a settlement administrator.  (Setareh Decl., ¶ 31-33.)  The proposed forms of Class Notice to all putative Class Members were specified to be sent by mail after running all the addresses through the United States Postal Service NCOA database to obtain current address information. (Agreement, ¶ 6.3.2.)  The Gross Settlement Amount is also to be deposited into an account established by the Settlement Administrator as a "Qualified Settlement Fund" with all authorized payments to be paid out of this fund. (Agreement, ¶ 6.11.)  Both bids were reasonable and Phoenix was lower.  However, Phoenix could not pass security requirements required by Littler for data transfer.  (Setareh Decl., ¶ 31(a).).  Simpluris is regularly appointed as a claims administrator by California courts to administer settlements.  The parties thus selected Simpluris, which Class Counsel believes is reasonable in light of Class Counsel's experience in such settlement administration matters, and given the work to be done by or potentially required of the Settlement Administrator due to the various Settlement provisions. (Setareh Decl., ¶¶ 31-33.)  Over the last two years, Class Counsel have engaged with Simpluris 20 times in 20 class actions.  (Setareh Decl., ¶ 33.)

### iv.  Class Counsel's Lodestar and Multiplier Sought

The Class Counsel Award requested by Plaintiff is reasonable and fair, because the lodestar for the work performed is $333,575.00 with a multiplier sought of 2.44 would result in an amount of $812,500.00. (Setareh Decl., ¶ 24.)  The hourly rates are consistent with the prevailing market rates for

1    attorneys of similar experience. (*Id.*.)

2        The Class Counsel fee award amount of up to $812,500.00 accurately reflects the parties' intent

3    that Class Counsel shall seek no more than this amount in fees.  This amount is equivalent to twenty-

4    five percent (25%) of the Gross Settlement Amount. (Setareh Decl., ¶ 12.)

5                        **(a)        A Reasonable Result Was Achieved on Behalf of the Class**

6        The benefit achieved on behalf of Class Members defines a primary yardstick against which any

7    fee motion is measured.  *See Serrano v. Priest* (1977) 20 Cal. 3d 25, 49; *accord Vizcaino v. Microsoft*

8    *Corp.* (9th Cir. 2002), 290 F.3d 1043, 1048.

9        The Parties reached a Settlement in good faith after negotiating at arm's length with a

10   professional mediator skilled in resolving class action cases including wage and hour actions.  (Setareh

11   Decl., ¶ 9.)  Settlement occurred only after discovery commenced. (*Id.*)  That discovery included serving

12   multiple sets of interrogatories and comprehensive requests for production to Defendant. (*Id.*)

13   Ultimately, the parties agreed to participate in private mediation and also agreed that Defendant would

14   produce relevant class-wide data and timekeeping records (not just a sampling) along with information

15   about Class composition prior to mediation. (*Id.*)  In addition, Class Counsel interviewed a number of

16   putative Class Members about their experiences with Defendant related to meal and rest breaks. (*Id.*)

17   With the information produced by Defendant, and the additional detailed data with respect to the class

18   produced for mediation, it was sufficient to permit Plaintiff's counsel to adequately evaluate the

19   Settlement. (*Id.*)  And, notably, approval of a class action settlement does not require that discovery be

20   exhaustive.  *See, e.g.*, *In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D.

21   Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength

22   and weaknesses of their cases).  The fact that settlement results from arm's length negotiations

23   following "relevant discovery" creates "a presumption that the agreement is fair."  *Linney v. Cellular*

24   *Alaska Partnership*, 1997 WL 450064, at *5 (N.D. Cal. 1997).

25       With respect to the claims asserted on behalf of the settlement Class in this case, there are

26   significant risks that support the reduced compromise amount. These risks include, but are not limited to

27   the following:

28           (i)        The risk that Plaintiff would be unable to establish liability for allegedly unpaid straight

time and overtime wages, *see Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1, 39 & fn. 33 (2014) ("*Duran*"), *citing Dilts v. Penske Logistics, LLC*  2014 WL 205039 (S.D. Cal. 2014) (dismissing certified off-the-clock claims based on proof at trial).  Defendant has contended, for example, that straight time was paid and that overtime was paid or not due and owing across the putative Class as alleged by Plaintiff.

(ii)    The risk that Class Members' meal and rest break claims may be retroactively preempted by a recent decision issued by the Federal Motor Carrier Safety Administration that is currently the subject of a legal challenge pending with the Ninth Circuit Court of Appeals, which if affirmed, would preclude Plaintiff and Class Members from seeking relief for violations of California meal and rest break requirements.  Defendant produced class-wide data and provided access to several hundred declarations to demonstrate the potential lack of a common practice or policy, in support of its assertion that individualized inquiries would be necessary.

(iii)    The risk that Plaintiff would not be able to prove liability for alleged failure to provide compliant meal periods and rest breaks; or that to establish liability for the failure to provide compliant meal periods and rest breaks would require an individualized inquiry that would prevent these issues from being resolved on a class and/or collective basis.  For example, Plaintiff alleged that Defendant did not actually enforce its written meal period policy, instead, Plaintiff alleged employees were coerced into misrecording their meal periods and even had to alter their own records to reflect that they were taken when in fact, they were not taken.  Also, Plaintiff alleged employees were required to respond to calls at any time, including during meal periods and rest breaks.

(iv)    The risk that Defendant's challenged employment policies might not ultimately support class certification or a class-wide liability finding, *see*, *Duran*, 59 Cal. 4th at 14 & fn. 28 (citing Court of Appeal decisions favorable on class certification issue without expressing opinion as to ultimate viability of proposition).  Defendant has contended, for example, that it did not have a purported policy of not paying required compensation, but rather a policy of paying compensation and of requiring employees to report any unpaid compensable time, and that any failures to report by employees cannot be legally charged to Defendant and in any event involve such highly individualized circumstances as to prevent class and collective certification should this case be litigated.  *See, e.g.*, *Morillion v. Royal*

1    *Packing Co.*, 22 Cal. 4th 575, 585 (2000) (employer not required to pay employees for time spent

2    performing work of which the employer had no knowledge).

3         (v)    The risk that Plaintiff may not be able to establish liability for personal cell phone use

4    for business purpose and that individualized inquiries may be necessary to determine whether Defendant

5    required personal cell phone use or the employee chose it as a convenience.

6         (vi)   For the same reasons, liability, damages recovery, and certification risks are heightened

7    given:  (1) the risk that uncertainties pertaining to the ultimate legality of Defendant's policies and

8    practices could preclude class-wide awards of statutory penalties under Labor Code section 226(e); (2)

9    the risk that individual differences between settlement Class Members could be construed as pertaining

10   to liability, and not solely to damages, *see*, *Duran*, 59 Cal. 4th at 19; and (C) the risk that class or

11   collective treatment could be deemed improper as to one or more claims except for settlement purposes.

12        (vii)   The risk that any civil penalties award under PAGA could be reduced by the Court in its

13   discretion could materially impact the recovery by the Class, see Labor Code section 2699(e)(1).

14        (viii)   The risk that lengthy appellate litigation could ensue as to both liability and certification

15   issues, with associated litigation risk and costs, further enhances the value of a confirmed settlement as

16   opposed to unpredictable litigation.

17        In these respects, Defendant strongly denies any liability and the propriety of class certification

18   for any reason other than settlement.  Continued litigation of this lawsuit presented Plaintiff and

19   Defendant with substantial legal risks that were (and continue to be) very difficult to assess.

20        In light of the uncertainties of protracted litigation, the Settlement amount reflects a fair and

21   reasonable recovery for the settlement Class Members. (Setareh Decl., ¶¶ 13-21.)  The Settlement

22   amount is, of course, a compromise figure. (*Id.*)  By necessity, it took into account risks related to

23   liability, damages, class and collective action certification, and all the defenses asserted by the

24   Defendant as to all such matters. (*Id.*)  Moreover, each settlement Class Member will be given the

25   opportunity to opt out of the Settlement, allowing those who feel they have claims that are greater than

26   the benefits they can receive under this Settlement to pursue their own claims. (*Id.*)  There are an

27   estimated 3,020 class members with respect to the settlement. (*Id.*)  With 3,020 persons in the class, the

28   approximate average gross recovery for each class member is almost **$758.49**. (*Id.*) The value of this

14

amount reflects a fair compromise well within the range of reasonableness.  Given the strong case that Defendant could bring to bear to challenge certification and liability, this is not an inconsequential sum in these challenging economic times.  And, confirming the fundamental fairness of the Settlement, each Class Member will be compensated based on the number of Workweeks they worked during the applicable Class Period. (Agreement, ¶ 6.10.)

### (b) The Experience, Reputation, and Ability of Class Counsel

California law also recognizes the "skill and experience of attorneys" as appropriate criteria for evaluating a fee motion. *Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 647 (1995); *accord In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) ("skill and efficiency of counsel" among fee motion criteria); *In re Heritage Bond Litig.*, 2005 U.S Dist. LEXIS 13555 at *64 (C.D. Cal. June 10, 2005) (Considering "the quality of Class Counsel's effort, experience and skill"). Class Counsel has had substantial experience with the causes of action here and has regularly litigated employment law class and collective actions. (Setareh Decl., ¶¶ 22-27)

### (c) The Effort Required by the Litigation Justifies the Fee

California and federal law also look to the time and labor required in connection with the litigation and settlement of a class and collective action for which final approval is sought.  *See Serrano*, 20 Cal. 3d at 49, *accord Vizcaino*, 290 F.3d at 1048-50.  Compared to the reasonable value of the claims, Class Counsel expended substantial effort to achieve the Settlement result.  (Setareh Decl. ¶¶ 28-31.)

Class counsel expended considerable time and resources in litigating this matter.  The work done by the attorneys working on this case includes communicating with Plaintiff, drafting pleadings, propounding multiple sets of interrogatories and comprehensive requests for production to Defendant, reviewing documents produced by Defendant, working up and drafting a mediation brief, working with an expert to analyze the data produced by Defendant, attending not one but two mediation sessions with mediators experienced in resolving wage and hour class actions, drafting a motion for preliminary approval, and drafting supplemental papers in support of the motion for preliminary approval. (*Id.*)  The "time and labor" criterion weighs in favor of an award of the requested fees.

**(d)  The Complexity of the Legal and Factual Issues**

California law recognizes that the litigation's general complexity and "difficulty of the questions involved, and the skill in presenting them" are properly considered. *Serrano*, 30 Cal. 3d at 49, *accord Wershba v. Apple Computer*, 91 Cal. App. 4th 224, 245 (2001). Complexity of legal issues was moderate here, though the fee is reasonable, rendering this factor neutral. (*Id.*)

**(e)  Class Counsel Assumed Substantial Risk**

The novelty and challenges presented by a class and collective action, as well as the corresponding risk that the class members and class counsel will be paid no recovery or fee, is properly evaluated in connection with a fee motion. (*Id* ) *See Serrano*, 20 Cal. 3d at 49; *accord Vizcaino*, 290 F.3d at 1050-51 (multiplier applied to lodestar cross-check reflects risk of non-recovery). Ninth Circuit and California state courts regard circumstances in which class counsel's work is wholly contingent – as is the case here – as a factor weighing in favor of approving a negotiated fee award that approximates market rates. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-33 (2001).

**v.  Notice Pursuant to the Class Action Fairness Act of 2005**

Notice pursuant to Section 1715(b) of the Class Action Fairness Act of 2005 ("CAFA") to the appropriate federal and state officials is required in this action because this action is a class action and was removed from state court pursuant to the CAFA removal provisions. 28 U.S.C. §§ 1332(d) and 1453(b). Defendant provided notice on November 20, 2019 to the appropriate governmental officials as required by 28 U.S.C. § 1715(b). (Dkt. 70.) As such, the final order will not be entered prior to 90 calendar days after notice as required pursuant to 28 U.S.C. § 1715(b).

**b.  The Settlement Was the Product of Informed, Non-Collusive Negotiations.**

The Settlement was reached after informed, arm's-length negotiations between the parties with the help of the Hon. Stephen Sundvold and Tripper Ortman, Esq., two accomplished mediators with significant experience mediating employment wage and hour class and collective actions. (Setareh Decl., ¶¶ 13-21.) Both parties conducted investigation and discovery allowing them to assess the strengths and weaknesses of the case. Plaintiffs' counsel also retained an expert who reviewed and analyzed payroll and timekeeping data prior to the settlement negotiations. (*Id.*) The Parties participated in two separate full-day mediations before Hon. Stephen Sundvold and Tripper Ortman,

16

1  Esq. on January 15, 2019 and May 21, 2019, respectively. The Parties were able to come to an

2  agreement and signed a Memorandum of Understanding on May 21, 2019. (*Id.*, ¶ 9.)  The Settlement

3  thus is the product of non-collusive negotiations.

4          **c.  The Settlement Has No "Obvious Deficiencies."**

5          The Settlement is substantial and non-reversionary and provides for a payment of **$3,250,000.00**

6  by Defendant which is, by any account, a significant amount given the value of the claims made by

7  Plaintiff. (Setareh Decl., ¶ 12.)  The Settlement Payment for each Class Member asserting wage and

8  hour claims will be based on the individual Workweek or paystub count, respectively, for each Class

9  Member divided by the total number of Workweeks or paystubs, as applicable, for all Class Members,

10  which is a fair way to calculate what each such Class Member should receive. (Agreement, ¶ 6.10.)  If

11  all other amounts sought are awarded, it is estimated that before taxes the average Class Member will

12  receive approximately **$758.49**.

13          Defendant does not oppose the Class Representative Service Award (**$7,500.00**) or the Class

14  Counsel Award (up to **$812,500.00** in fees plus up to **$20,000.00** in costs), and regardless they are

15  subject to Court approval at the Final Approval hearing. (Agreement, ¶¶ 6.7, 6.8.)  The parties agree that

16  the LWDA will receive **$84,375.00** (75%) as its share of the **$112,500.00** PAGA Payment that is

17  allocated to PAGA penalties, and that this amount is reasonable. (Agreement, ¶ 1.25.)

18          **d.  The Settlement Falls Within the Range of Possible Approval.**

19          The Settlement falls well within the range of possible approval.  To evaluate this criterion,

20  which focuses on "substantive fairness and adequacy," "courts primarily consider plaintiffs' expected

21  recovery balanced against the value of the settlement offer."  *In re Tableware Antitrust Litig.*, 484 F.

22  Supp. 2d at 1080.  Following review of the payroll and timekeeping data provided by Defendant and

23  applicable law, Plaintiff's counsel determined that the value of their claims before considering statutory

24  and civil penalties to be approximately $910,664,867.80.  (Setareh Decl., ¶¶ 13-21.)

25          The following chart provides the estimated potential recovery on a class basis that Plaintiff

26  believes he could reasonably achieve *if he were to prevail on all his causes of action*:

27

28

**Plaintiff's Estimated Potential Recovery[5]**

Assumptions: Wage and Hour Putative Class Members ("PCMs"): 3,020

| Cause of Action | Estimated Potential Recovery | Calculations for Estimated Potential Recovery |
|---|---|---|
| Unpaid Wages | $908,719.70 | 185,453 pay periods x 1 (violation per pay period (per week) x $24.50 average hourly rate x 20% |
| Meal Period Premiums | $1,740,156.60 (excluding interest) | 355,134 meal period count required during the entire class period x $24.50 average hourly rate x 20% violation rate |
| Rest Period Premiums | $1,923,436.20 (excluding interest) | 392,538 rest period count required during the entire class period x $24.50 average hourly rate x 20% violation rate |
| Late Pay (Labor Code § 203) Penalties | $558,600 | 475 termination count during the entire class period x $24.50 average hourly rate x 8 hours x 30 days x 20% |
| Wage Statement (Labor Code § 226) Penalties | $3,690,390.00 | 1,867 pay periods during the entire class period x $50 (for first violation) x 20% violation rate = $18,670.00

183,586 subsequent pay periods during the entire class period x $100 (for subsequent violations) with a maximum penalty of $4,000 per person x 20% violation rate = $3,671,720.00 |

[5] Plaintiff inadvertently omitted the unpaid wage claim and PAGA relief calculations from the initial motion for preliminary approval. The unpaid wage damages arise from the Kronos edit forms that PCMs were required to fill out even though they were not provided with compliant meal periods. However, the Total Potential Recovery amount changed only slightly due to an error in the calculation of the Late Pay exposure.

PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

| Expense Reimbursement for Personal Cellphone Use | $497,885 (excluding interest) | 99,577 month count during the entire class period across all drivers x $5 |
|---|---|---|
| PAGA Penalties | **$931,918.75** | 10% of total estimated amount |
| **Total Potential Recovery** | **$10,251,106.20** | |

(Setareh Decl., ¶¶ 13-19.)  Therefore, the settlement amount is approximately **31.7** percent of the Class-wide damages.  This is an excellent result, well above the amount of many settlements granted final approval by courts within the Ninth Circuit.  *See e.g., Stovall-Gusman v. W.W. Granger, Inc.*, 2015 U.S. Dist. LEXIS 78671, *12-13 (N.D. Cal. 2015) (7.3% of the "estimated trial award"); *In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-54 (C.D. Cal. 2014) [(3%]; *In re LDK Solar Secs. Litig.*, 2010 U.S. Dist. LEXIS 87168, *6 (N.D. Cal. 2010) (5% of "plaintiff's expert estimated damages").  Of course, it should not be surprising that a settlement yields less than what the class could theoretically have recovered at trial.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes").

The Settlement should be approved because it confers a substantial benefit on Class Members, while proceeding with litigation would impose significant risk with no guarantee of increased benefits.

### i.  Liability Is Contested, and the Settlement Provides Class Members with Substantial Monetary Relief

Plaintiffs' counsel conducted a thorough investigation into the facts of this class action and diligently pursued an investigation of Class Members' claims against Defendant.  (Setareh Decl., ¶¶ 13-21.)  Plaintiff's counsel propounded discovery, reviewed Defendant's written policies, including employee manuals and thoroughly reviewed a database of timekeeping and payroll data for the entire class to create a reliable damage model detailing the number of possible violations at issue. (*Id.*) For its part, Defendant contests liability in the action, is represented by zealous counsel, and is prepared to vigorously defend against these claims if the Action is not settled.

To be sure, if the litigation proceeds, Defendant could face significant liability.  However, while Plaintiff is reasonably confident of a favorable outcome, there is substantial risk that the evidence and/or

1  legal developments could seriously diminish the value of his and the Class Members' claims.

2        Plaintiff asserts that Defendant did not enforce its written meal period and rest break policies,

3  defaulting to operational practices instead, and that this resulted in Class Members not receiving legally

4  compliant meal and rest periods.  Plaintiff further asserts that Defendant's written meal period and rest

5  break policies were habitually overridden by coercing employees into misrecording their meal periods

6  and altering their timekeeping records to reflect that they were taken when in fact, they were not taken.

7  Also, Plaintiff alleges employees were required to respond to calls at any time, including during meal

8  periods and rest breaks, that resulted in employees not receiving uninterrupted meal periods and rest

9  breaks.  Plaintiff also complains that he was not provided with compliant wage statements (both direct

10  and derivative) and was not paid his final wages on time (derivative).  Plaintiff further asserts that

11  Defendant failed to reimburse truck drivers for the use of their personal cellphones while working.

12        By contrast, Defendant disputes liability and asserts that employees were provided  meal periods

13  and rest breaks as required by California law, and in fact, took the breaks as mandated by legally

14  compliant Company policies.  Defendant asserts it did not require employees to work through their meal

15  periods and rest breaks.  If true, this would defeat liability, and the individualized inquiries that may be

16  necessary to determine liability would complicate certification.  In addition, Defendant asserts

17  California meal and rest break requirements are retroactively preempted by a recent decision issued by

18  the Federal Motor Carrier Safety Administration that is currently the subject of a legal challenge

19  pending with the Ninth Circuit Court of Appeals.  Defendant also vigorously disputes that a class could

20  be certified here outside the settlement context, including without limitation given manageability

21  concerns.

22        In light of these risks for both parties, the Settlement provides a sizeable recovery while

23  mitigating all parties' risk if the matter were to proceed.  As such, the Settlement is fair, reasonable,

24  adequate, and is in the best interest of the Class in light of all known facts and circumstances, including

25  the risk of the significant delay. (*Id.*)  The Settlement is also in the best interest of judicial efficiency in

26  this case, as it obviously eliminates a lengthy and contested pre-certification class action lawsuit from

27  this Court's calendar.  (*Id.*)

28

PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

#### ii.   The Class Release Is Appropriate Given Plaintiff's Claims.

As described above, as part of the Settlement, Class Members will release all claims based on or arising from the facts pled in the complaint. (Agreement, ¶¶ 6.12, 6.12.1.)  These released claims appropriately track the breadth of Plaintiff's allegations in the Action. (*Id.*)

And, of course, Class Members have the right to opt out of the Settlement by submitting a Request for Exclusion provided for in the Class Notice. (Agreement, ¶ 6.5.4.)  If they do so, they will not release any claims, but, of course, also will not share in the recovery in that event.

#### iii.   Class Counsel's Fees Requested Are Consistent with Prevailing Market Rates.

As more fully explained above in Section II(A)(4)(a)-(e), the Class Counsel Award requested by Plaintiff is reasonable and fair, because the lodestar for the work performed is **$333,575.00** with a multiplier sought of 2.44 would result in an amount close to the fee award being requested by Plaintiff's counsel. (Setareh Decl., ¶ 24.)  The hourly rates are consistent with the prevailing market rates for attorneys of similar experience.  (*Id.*)

The Class Counsel fee award amount of up to **$812,500.00** accurately reflects the parties' intent that Class Counsel shall seek no more than this amount in fees.  This amount is equivalent to twenty-five percent or 25% of the Gross Settlement Amount. (*Id.*)

#### e.   Certification of a Class for Settlement Purposes Only Is Appropriate.

Pursuant to Rule 23(c)(1), Federal Rules of Civil Procedure, the Court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000) (citing Fed. R. Civ. P. 23(c)(1)).  Conditional approval of the class is appropriate where the plaintiff demonstrates (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation; and one of the three requirements of Rule 23(b) also is met.  Conditional certification of the settlement class is appropriate here as all the factors Rule 23 requirements are met.

#### i.   The Numerosity Requirement Is Met.

The numerosity requirement is met if the class is so large that joinder of all members would be impracticable. *Gay v. Waiters' & Dairy Lunchmen's Union Loc. No. 30*, 489 F. Supp. 282 (N.D. Cal. 1980), *aff'd*, 694 F.2d 531 (9th Cir. 1982).  Here, the estimated count of approximately 3,020 class

1    members satisfies the numerosity requirement.  (Setareh Decl., ¶ 17.)

2                    **ii.    Commonality and Typicality Requirements.**

3            Rule 23(a) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).

4    The commonality requirement has been construed permissively; not all questions of law and fact need to

5    be common.  *Hanlon v. Chrysler Corp.*, 150 F.3d at 1019.  Here, Plaintiff alleges that his claims involve

6    common questions of both fact and law regarding Defendant's alleged failure to abide by state wage-

7    and-hour law—and Defendant will not object to Plaintiff's position on this issue solely for the purposes

8    of the Settlement.

9            Furthermore, "Rule 23(a)(3) requires that the claims of the named parties be typical of the

10   claims of the members of the class."  *Fry*, 198 F.R.D. at 468.  "Under the rule's permissive standards,

11   representative claims are 'typical' if they are reasonably coextensive with those of absent Class

12   Members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  Plaintiff contends, and

13   for purposes of the Settlement only Defendant will not object to Plaintiff's position, that Plaintiff's

14   respective claims are essentially identical to all other non-exempt truck driver employees employed in

15   California by Defendant, and their claims are typical of such workers with the same common issues.

16                    **iii.   Adequacy of Representation.**

17           To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiff must show:

18   "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class

19   vigorously, (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the

20   individual's claims and those asserted on behalf of the class."  *Fry*, 198 F.R.D. at 469.  For purposes of

21   the Settlement only, Defendant will not challenge Plaintiff's claim that the adequacy of representation

22   requirement is met here because Plaintiff claims he has the same interests as the remaining members of

23   the Settlement Class, there is no conflict between the named Plaintiff's claims and those of the other

24   Class Members, and Plaintiff is represented by experienced and competent counsel who have substantial

25   experience in litigating wage-and-hour class actions. (Setareh Decl., ¶¶ 34-38.)

26                    **iv.    Class Certification Is Proper Under Rule 23(b)(3).**

27           In addition to demonstrating the four prerequisites of Rule 23(a), class certification requires a

28   showing that certification is proper under one of the three requirements of Rule 23(b).  Here, Defendant

1  agree not to dispute for purposes of the Settlement only that certification of the Class is appropriate

2  under Rule 23(b)(3) based on Plaintiff's claim in the settlement context that "questions of law or fact

3  common to class members predominate over any questions affecting only individual members, and…a

4  class action is superior to other available methods for fairly and efficiently adjudication of the

5  controversy." Fed. R. Civ. P. 23(b)(3). Although Defendant has expressed concerns regarding trial

6  manageability, these concerns are not implicated in a settlement.

7        **f.    The Notice Packet Is Fair and Adequate.**

8        "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*,

9  150 F.3d at 1025. A class action settlement notice "is satisfactory if it 'generally describes the terms of

10  the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

11  forward and be heard.'" *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004)

12  (quoting *Mendoza v. Tucson Sch. Dist. No. 1.*, 623 F.2d 1338, 1352 (9th Cir. 1980).

13        Here, the Data Dispute Form and Class Notices (Exhibits B and C, respectively, to the

14  Settlement) and the manner of notice are "the best notice practicable," as required under Rule

15  23(c)(2)(B). All Class Members can be identified, and the Class Notice Packet (including the Class

16  Notice and Data Dispute Form) will be mailed directly to each Class Member using First-Class U.S.

17  Mail. (Agreement, ¶ 6.3.2.) The Class Notice and all relevant documents pertinent to Plaintiff's Motion

18  for Preliminary Approval shall also be made available online at a website created and maintained by the

19  Settlement Administrator not less than 5 weeks prior to the final approval hearing. (Agreement, ¶ 1.23,

20  Exh. A.) The Class Notice adequately informs Class Members of the nature of the litigation, the

21  essential terms of the Settlement, his or her estimated Settlement Payment and other payments (if any),

22  and how to object to or elect not to participate in the Settlement or correct the information on which his

23  or her Settlement Payment or other payment (as applicable) is calculated. (*Id.*, ¶¶ 1.23 and 1.14, Exh. B

24  and C, respectively.) Further, the Class Notice identifies Class Counsel's contact information, specifies

25  the amounts of the Class Representative Service Award, the Class Counsel Award that Plaintiff will

26  seek, and explains how to obtain additional information regarding the Action and the Settlement. (*Id.*)

27        Specifically, Defendant shall provide the Settlement Administrator with the Class Data for

28  purposes of preparing and mailing Notice Packets to Settlement Class Members. 'Class Data' means

1   information regarding Settlement Class Members that Defendant will in good faith compile from their

2   records and provide to the Settlement Administrator formatted as a Microsoft Excel spreadsheet and

3   shall include each Settlement Class Member's identifying information. (Agreement, ¶ 6.3.1.)

4        The Class Notice and other materials will be promptly mailed by the Settlement Administrator

5   after updating the addresses through a national change of address search.  The Settlement Administrator

6   will attempt to locate any Class Members whose Class Notices are returned as undeliverable. (*Id*.)  In

7   sum, these procedures provide the best possible notice to the Class Members.

8            **g.  Simpluris Should Be Appointed the Settlement Administrator.**

9        For the reasons set forth in Section II ¶A.3,  Plaintiff proposes that the Court appoint Simpluris

10   to serve as the Settlement Administrator.  The estimated fees and costs for settlement administration for

11   the Settlement is approximately $22,754. (Setareh Decl., ¶ 33.)  The parties agree that this estimates is

12   reasonable and adequate to provide the necessary notice of the Settlement to the estimated 3,020 Class

13   Members.  Class Counsel will provide an updated settlement administration expense estimate at the time

14   the parties file the motion for final approval of the Settlement.

15            **h.  Residual.**

16        The entire Gross Settlement Amount will be paid out. (Agreement, ¶¶ 6.10, 6.10.1.)  Settlement

17   checks that remain uncashed after more than 180 calendar days following the checks' issuance will be

18   paid to the State of California pursuant to California's Unclaimed Property law in the name of the Class

19   Member. (Agreement, ¶ 6.11.2.).

20            **i.  Proposed Schedule.**

21        Plaintiffs propose the following schedule for approval of the Settlement, which assumes that

22   preliminary approval of the Settlement is granted on :

| Date | Event |
| --- | --- |
| 03/05/20 | Defendant will provide Settlement Administrator a database containing Class Member information necessary to calculate Settlement Payment (30 calendar days after Preliminary Approval) |
| 03/16/20 | Settlement Administrator to mail Class Notice Packets to all Class Members (10 calendar days after receiving Class Member information) |
| 04/30/20 | Date by which Plaintiff and Class Counsel will submit their motion for Class Representative Service Award and Class Counsel Award (45 calendar days after Class Notice Packets are mailed to Class Members) |

PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

| Date | Event |
|---|---|
| 04/30/20 | Last day for Class Members to submit Objections, Requests for Exclusion, and Data Dispute Forms to the Settlement Administrator (45 calendar days after Settlement Administrator mails Class Notice Packets to all Class Members), subject to extension provisions of Settlement Agreement |
| 05/11/20 | Date by which Settlement Administrator will provide Parties with a list of all Class Members who submitted timely and valid Request for Exclusion Forms (10 calendar days after the deadline for submitting exclusions), subject to extension provisions of Settlement Agreement |
| 06/02/20 | Date Plaintiff will submit his motion for final approval of Settlement |
| 06/21/20 | Date by which Settlement Administrator will file declaration certifying that notice packets have been mailed under the provisions of the Settlement Agreement (30 calendar days before the final approval hearing) |
| 06/30/20 | Date by which Plaintiff and Settlement Administrator will file with the Court a summary of objections received and Plaintiff's responses thereto (21 calendar days before the final approval hearing) |
| 07/14/20 | Date by which the parties must file responsive documents to any objections (5 business days before the final approval hearing). This is also the deadline to submit objections. |
| 07/21/20 | Hearing on Plaintiff's motion for final approval of Settlement (not less than 90 calendar days after order preliminarily approving Settlement) |

## V.   CONCLUSION

For the reasons set forth above, Plaintiff respectfully request that the Court grant his motion in its entirety and enter an order:  (1) conditionally certifying the Settlement Class; (2) granting preliminary approval of the Settlement; (3) appointing Plaintiff as the Class Representative; (4) appointing Setareh Law Group as Class Counsel; (5) approving and directing the mailing of the Class Notices and related materials; (6) appointing Simpluris as the Settlement Administrator; and (7) scheduling the final approval hearing for July 21, 2020, or as soon thereafter as is available and convenient for the Court.

DATED:  January 28, 2020               SETAREH LAW GROUP


                                       /s/ Shaun Setareh
                                       SHAUN SETAREH
                                       WILLIAM M. PAO
                                       ALEXANDRA R. MCINTOSH
                                       Attorneys for Plaintiff
                                       THEODORE A. EMETOH

4846-9620-0877.2 057116.1023

PLAINTIFF'S FIRST AMENDED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS