Shaun Setareh (SBN 204514)
 shaun@setarehlaw.com
William M. Pao (SBN 219846)
 william@setarehlaw.com
Alexandra R. McIntosh (SBN 320904)
 alex@setarehlaw.com
SETAREH LAW GROUP
315 South Beverly Drive, Suite 315
Beverly Hills, California 90212
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff
THEODORE A. EMETOH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THEODORE A. EMETOH, on behalf of himself, all others similarly situated,<br><br>   *Plaintiff*,<br><br>  vs.<br><br>FEDEX FREIGHT, INC., an Arkansas corporation; and DOES 1 through 50, inclusive,<br><br>   *Defendants*. | Case No. 3:17-cv-07272-YGR<br><br>Assigned For All Purposes To The Honorable Yvonne Gonzalez Rogers, Courtroom 8-1<br><br>**[PROPOSED] ORDER GRANTING AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br>**\*As Modified by the Court\***<br><br>**Re: Dkt. No. 74** |

**[PROPOSED] ORDER**

Plaintiff Theodore A. Emetoh's ("Plaintiff") Amended Motion for Preliminary Approval of Class Action Settlement came on regularly for hearing before the Honorable Yvonne Gonzalez Rogers.

After full consideration of all the materials filed in support of the Amended Motion, including the First Amended Joint Stipulation of Settlement and Release, and **GOOD CAUSE APPEARING THEREFROM**, the Court makes the following findings and orders:

1.  The Court **GRANTS** preliminary approval of the settlement pursuant to Fed. R. Civ. Proc. 23 based upon the terms set forth in the First Amended Joint Stipulation of Settlement and Release ("Amended Settlement and Release Agreement") attached to the Declaration of Shaun Setareh in support of Plaintiff's First Amended Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class. (Dkt. Nos. 75, 75-1; Dkt. No. 75-1 attached hereto as Exhibit 1.)

2.  The settlement as proposed through the Amended Motion and Amended Settlement and Release Agreement appears to be fair and reasonable and to provide significant benefit to the Settlement Classes.

3.  The settlement was reached through good faith and arm's length negotiation with the assistance of an experienced mediator.

4.  Named Plaintiff Theodore A. Emetoh is a suitable class representative and is appointed as the Class Representative for the settlement class.

5.  Named Plaintiff's counsel, Shaun Setareh and William M. Pao of the Setareh Law Group, is experienced in matters of this nature and is appointed as Class Counsel for the settlement class.

6.  The proposed settlement class defined in the settlement is provisionally certified for purposes of the settlement only.

7.  The notice provision in the settlement is constitutionally sound because individual notices will be mailed to all class members whose identities are known to the parties, and such notice is the best notice practicable under Federal Rule 23(c)(2). The

proposed Notice of Class Action Settlement (Declaration of Shaun Setareh in support of Plaintiff's First Amended Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class, Exh. C, Dkt. No. 75-1 at 66-75; attached hereto as Exhibit ) is sufficient to inform Class Members of the terms of the settlement, their rights under the settlement, their rights to object to the settlement, their rights to dispute their number of workweeks, and their rights to elect not to participate in the settlement; the processes for doing so; and the date and location of the final approval hearing, and are therefore approved.

. A Final Approval Hearing on the question of whether the proposed settlement, attorneys' fees and costs to Class Counsel, payment to the Labor & Workforce Development Agency, and the Named Plaintiffs' enhancement awards should be finally approved as fair, reasonable, and adequate as to the members of the Class is scheduled in Courtroom 8 1 of this Court on July 21, 2020 at 2:00 p.m.

9. The Court approves, as to form and content, the Notice of Class Action Settlement, in substantially the form attached to the Declaration of Shaun Setareh in support of Plaintiff's First Amended Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class as Exhibit C. (Dkt. No. 75-1 at 66-75; attached hereto as Exhibit .) The Court approves the procedure for settlement class members to participate in, to opt out of, and to object to, the settlement as set forth in the Class Notice.

10. The Court directs the mailing of the Class Notice Packet to all settlement class members by First-Class Mail.

11. To facilitate administration of the settlement pending final approval, the Court hereby enjoins plaintiffs and all settlement class members from filing or prosecuting any claims, suits or administrative proceedings (including filing claims with the Division of Labor Standards Enforcement of the California Department of Industrial Relations) regarding claims released by the settlements unless and until such settlement class members have filed valid written requests for exclusion with the

Settlement Administrator and the time for filing claims with the Settlement Administrator has elapsed.

12.    The Court orders the following Implementation Schedule for further proceedings:

    a.    Deadline for Defendants to submit Settlement Class Member contact information to Settlement Administrator: Monday, March 16, 2020 [30 days after preliminary approval].

    b.    Deadline for Settlement Administrator to mail the Class Notice Packet to Settlement Class Members: Wednesday, March 25, 2020 [40 days after preliminary approval].

    c.    Deadline for Settlement Class Members to postmark Requests for Exclusion, Objection to settlement and disputes regarding the number of workweeks: Monday, May 11, 2020 [45 days after mailing of Class Notice Packet]

    d.    Deadline for Class Counsel to file Motion for Final Approval of Class Action Settlements: Tuesday, June 16, 2020 [30 days before the Final Fairness and Approval Hearing]

    e.    Final Fairness and Approval Hearing: July 21, 2020 at 2:00 p.m.

13.    The Court retains jurisdiction over the parties to enforce the terms of the judgment.

**IT IS SO ORDERED**.

DATED:  February 14, 2020

                            YVONNE GONZALEZ ROGERS
                            UNITED STATES DISTRICT JUDGE

# EXHIBIT 1

DocuSign Envelope ID: 09A67551-6A8E-42B1-B680-ACDDCA54449A

SHAUN SETAREH, Bar No. 204514
shaun@setarehlaw.com
WILLIAM PAO, Bar No. 219846
william@setarehlaw.com
ALEXANDRA MCINTOSH, Bar No. 320904
alex@setarehlaw.com
SETAREH LAW GROUP
315 S. Beverly Dr., Suite 315
Beverly Hills, CA 90212
Telephone:    310.888-7771
Facsimile:    310.888-0109

Attorneys for Plaintiff
THEODORE A. EMETOH

KEITH A. JACOBY, Bar No. 150233
kjacoby@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East, 5th Floor
Los Angeles, CA 90067.3107
Telephone:    310.553-0308
Facsimile:    310.553-5583

SOPHIA BEHNIA, Bar No. 289318
sbehnia@littler.com
LITTLER MENDELSON, P.C.
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone:    415.433-1940
Facsimile:    415.399-8490

*Additional counsel on next page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THEODORE A. EMETOH, on behalf of himself, all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FEDEX FREIGHT, INC. an Arkansas corporation; and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No. 4:17-CV-07272-YGR<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE** |

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT
AND RELEASE

CASE NO.: 4:17-CV-07272-YGR

DocuSign Envelope ID: 09A67551-6A8E-42B1-B680-ACDDCA54449A

1  LINDA NGUYEN BOLLINGER, Bar No. 289515
   lbollinger@littler.com
2  LITTLER MENDELSON, P.C.
   50 West San Fernando Street, 7th Floor
3  San Jose, CA 95113
   Telephone:   408.998-4150
4  Facsimile:   408.288-5686

5  SANDRA C. ISOM, Bar No. 157374
   scisom@fedex.com
6  FEDEX FREIGHT, INC.
   1715 Aaron Brenner Drive, Ste. 600
7  Memphis, TN 38120
   Telephone: 901.434-8526
8  Facsimile: 901.468-1726

9  Attorneys for Defendant
   FEDEX FREIGHT, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT
AND RELEASE

CASE NO.: 4:17-CV-07272-YGR

This Joint Stipulation of Settlement and Release ("Agreement") is made and entered into between Plaintiff Theodore A. Emetoh ("Plaintiff" or "Class Representative"), individually and on behalf of all others similarly situated, including current and former alleged aggrieved employees, ("Class Members") and Defendant FedEx Freight, Inc. ("Defendant" or "FedEx") (collectively, the "Parties").

1. **DEFINITIONS.**

The following terms, when used in this Agreement, have the following meanings:

1.1 "Action" means the above stated action *Theodore A. Emetoh v. FedEx Freight, Inc.*, Case No. 4:17-CV-07272-YGR, currently pending in United States District Court for the Northern District of California.

1.2 "Agreement" means this Joint Stipulation of Settlement and Release, which includes the PAGA Settlement, except where noted.

1.3 "Claim Amount" means an individual Class Member's potential allocation of the Net Settlement Amount, as defined in Section 1.22.

1.4 "Class" or "Class Member(s)" means all persons who have worked for Defendant as non-exempt, hourly-paid Road Drivers, City Drivers, or Driver Apprentices in California at any time during the Class Period. There are approximately 3,020 Class Members.

1.5 "Class Counsel" means Shaun Setareh, William Pao, and Alexandra McIntosh of the Setareh Law Group.

1.6 "Class Period" means from November 14, 2013 through the date of Preliminary Approval, except that for Road Drivers, the settlement class period for all but the cell phone reimbursement claim begins on January 1, 2016.

1.7 "Class Representative" is Plaintiff Theodore A. Emetoh.

1.8 "Class Representative's Released Claims" means any and all claims, obligations, demands, actions, rights, causes of action, and liabilities, against the Released Parties (as defined in Section 1.35), of whatever kind and nature, character, and description, whether in law or equity, whether sounding in tort, contract, federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law, whether known or unknown, and whether anticipated or unanticipated, including unknown claims covered by California Civil Code § 1542, as quoted in

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 92087.3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT
AND RELEASE

CASE NO.: 4:17-CV-07272-YGR

DocuSign Envelope ID: 09A67551-6A8E-42B1-B680-ACDDCA54449A

Section 1.34, by the Class Representative, arising from the beginning of time to the date of signing of this Agreement, for any type of relief that can be released as a matter of law, including, without limitation, claims for wages, damages, unpaid costs, penalties (including civil and waiting time penalties), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, and restitution or equitable relief. The Class Representative's Released Claims exclude his claims pending in *Theodore Emetoh, an individual v. FedEx Freight, Inc., an Arkansas corporation; and DOES 1 through 50*, inclusive, pending in the United States District Court for the Northern District of California, Case No. 3:18-cv-02898-CRB, claims for workers' compensation or unemployment insurance benefits, or any claims which cannot be released as a matter of law (the "Excluded Claims").

1.9 "Complaint" means the Second Amended Class Action Complaint filed with this Court by Plaintiff on August 16, 2018 attached hereto as Exhibit A, and incorporated herein by reference.

1.10 "Court" means the United States District Court for the Northern District of California.

1.11 "Data" are the Class Members' dates of employment and number of Workweeks as a Class Member during the Class Period, as determined by Defendant's business records.

1.12 "Data Dispute" is a Class Member's challenge to their dates of employment or number of Workweeks set forth in the Data Dispute Form in their Notice Packet.

1.13 "Data Dispute Deadline" shall mean forty-five (45) calendar days from the initial mailing of the Notice Packet. This is also the deadline for exclusions and objections to the Agreement.

1.14 "Data Dispute Form" shall mean the document substantially in the form attached hereto as Exhibit B.

1.15 "Defendant" shall mean FedEx Freight, Inc.

1.16 "Defendant's Counsel" means Keith A. Jacoby, Sophia Behnia, and Linda N. Bollinger of Littler Mendelson, P.C., and Sandra C. Isom of FedEx Freight, Inc.

1.17 "Enhancement Payment" means the amount approved by the Court to be paid to the Class Representative, not to exceed $7,500.00, in addition to his Claim Amount as a Qualified Claimant, in recognition of his efforts in coming forward as a Class Representative. The Enhancement Payment shall be considered non-wages for which an appropriate IRS Form 1099 will be issued to the Class Representative.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT
AND RELEASE

4.

CASE NO. 4:17-CV-07272-YGR

1.18 "Final Approval Date" means the latest of the following dates: (i) if no Class Member intervenes or files an objection to the Agreement on or prior to the Court entering an order granting final approval of the Agreement, then the day after the Final Judgment becomes final (meaning the expiration of the deadline to seek any type of appellate review); (ii) if there is an objection to the Agreement by a Class Member, or a Class Member intervenes, on or prior to the date the Court enters an order granting final approval of the Agreement, then on the date of final resolution of that objection or the exhaustion of any appellate rights of that objector or any intervener, resulting in final judicial approval of the Agreement, and entry of a non-reviewable judgment; or (iii) if an appeal, review or writ is sought from the judgment, the day after the judgment is affirmed or the appeal, review or writ is dismissed or denied, and the judgment is no longer subject to further judicial review.

1.19 "Final Approval and Fairness Hearing" means the hearing set by the Court to (a) review the Agreement and determine whether the Court should give final approval, (b) consider any timely objections made pursuant to Section 6.5.7 of this Agreement, and all responses by the Parties, (c) consider the request for attorneys' fees and expenses submitted by Class Counsel, (d) consider the Settlement Administrator's Settlement Administration Costs, and (e) consider the Class Representative's application for an Enhancement Payment.

1.20 "Final Judgment" shall mean the order granting final approval of the Agreement and final judgment entered by the Court. The Final Judgment shall constitute a final judgment of the PAGA Settlement for purpose of enforcing the rule announced in *Arias v. Superior Court of San Joaquin County (Dairy)*, 46 Cal.4th 969 (2009).

1.21 "Gross Settlement Amount" is the sum of Three Million Two Hundred and Fifty Thousand U.S. Dollars ($3,250,000.00), which represents the total amount payable to the Settlement Administrator to be held in trust in the Qualified Settlement Fund for this Agreement by Defendant, and includes without limitation the Settlement Administration Costs, attorneys' fees, litigation costs, the Class Representative Enhancement Payment, and the PAGA Payment. The Gross Settlement Amount is exclusive of the employer's share of payroll taxes.

1.22 "Net Settlement Amount" is the remaining portion of the Gross Settlement Amount available for distribution to Qualified Claimants after deduction of Court approved attorneys' fees and

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT
AND RELEASE

5.

CASE NO. 4:17-CV-07272-YGR

DocuSign Envelope ID: 09A67551-6A8E-42B1-B680-ACDDCA54449A

litigation costs, Settlement Administration Costs, the Enhancement Payment to the Class Representative, and the State of California's portion of the PAGA Payment.

1.23 "Notice of Settlement" means the document substantially in the form attached hereto as Exhibit C.

1.24 "Notice Packet" means the Notice of Settlement and Data Dispute Form.

1.25 "PAGA Payment" means One Hundred and Twelve Thousand Five Hundred U.S. Dollars ($112,500.00) of the Gross Settlement Amount to be allocated to claims under the Private Attorneys General Act of 2004, which includes Eighty Four Thousand Three Hundred Seventy Five U.S. Dollars ($84,375.00) being awarded to the State of California, subject to Court approval, and Twenty Eight Thousand One Hundred Twenty Five U.S. Dollars ($28,125.00) being awarded to Qualified Claimants, divided *pro-rata* based upon the Qualified Claimants' number of Workweeks during the PAGA Period of November 9, 2016 through the date of Preliminary Approval, by including that sum in the Net Settlement Amount, subject to Court approval. The Parties acknowledge and agree that for purposes of PAGA and the Final Judgment, all Class Members were allegedly aggrieved in the same manner pursuant to Cal. Lab. Code 2698 *et seq.* in that each Class Member allegedly suffered at least one violation for which PAGA provides an available remedy. In light of the binding nature of a PAGA judgment on non-party employees pursuant to *Arias v. Superior Court of San Joaquin County (Dairy)*, 46 Cal.4th 969 (2009), and *Cardenas v. McLane Foodservice, Inc.*, 2011 WL 379413 at *3 (C.D. Cal. Jan. 31, 2011), individuals otherwise meeting the definition of Class Members who exclude themselves from the Class pursuant to Section 6.5.3 and were employed during the PAGA Period shall receive a payment for the amount of each such individual's estimated share of the PAGA Payment that was included by the Settlement Administrator in calculating the Claim Amount.

1.26 "PAGA Settlement" means the agreement to resolve the PAGA representative action pursuant to Cal. Lab. 2698 *et seq.*, for which the PAGA Payment provides consideration.

1.27 "Parties" means the Plaintiff and Defendant.

1.28 "Payroll Settlement Check" means the wage portion of the Qualified Claimant's Claim Amount.

1.29 "Plaintiff" is Theodore A. Emetoh.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT
AND RELEASE

6.

CASE NO. 4:17-CV-07272-YGR

1.30 "Preliminary Approval Date" means the date the Court approves the Agreement, and the exhibits thereto, and enters an order providing for notice to the Class, an opportunity to opt out of the Class or to submit timely objections to the Agreement (excluding the PAGA Settlement), a procedure for submitting Data Dispute Forms, and setting a hearing on the fairness of the terms of settlement, including approval of attorneys' fees and costs.

1.31 "Preliminary Approval Order" means the document substantially in the form attached hereto as Exhibit D. The Parties will jointly request that any order granting preliminary approval not be entered before December 1, 2019.

1.32 "QSF" or "Qualified Settlement Fund" means the Qualified Settlement Fund set up by the Settlement Administrator for the benefit of the Qualified Claimants and from which the settlement payments shall be made. The QSF shall be an interest-bearing escrow account established by the Settlement Administrator to hold the Gross Settlement Amount from the time the Defendant deposits the funds pursuant to Section 6.11 herein until such funds are fully and finally distributed. The QSF is intended to be a Qualified Settlement Fund within the meaning of Internal Revenue Code section 468B and Treasury Regulation section 1.468B-1, and the Settlement Administrator shall be solely responsible for filing tax returns for the QSF and paying from the QSF any taxes owed with respect to same. In addition, the Settlement Administrator, and, as required, Defendant, will jointly and timely make the "relation-back election" (as defined in Treasury Regulation 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations, provided that Defendant shall not be required to deposit any monies into the QSF before the time set forth in Section 6.11 It will be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature to all necessary parties, and thereafter cause the appropriate filing to occur. In the event it is determined that the QSF is not a Qualified Settlement Fund within the meaning of Treasury Regulation section 1.468B-1, any tax liabilities associated with such determination shall be satisfied solely from the QSF without any recourse against Defendant for additional monies.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT
AND RELEASE

7.

CASE NO. 4:17-CV-07272-YGR

1.33 "Qualified Claimant" means any and all Class Members who do not submit a timely and correctly completed request for exclusion, as set forth in Section 6.5.3.

1.34 "Released Claims" means any and all claims contained in the Complaint and any additional wage and hour claims that could have been brought by the Plaintiff and the Class Members based on the facts alleged in said Complaint, for the Class Period as defined in Section 1.6 through the Preliminary Approval Date. "Released Claims" includes any and all claims for relief, whether suspected or unsuspected, which Qualified Claimants as well as all Class Members for purposes of PAGA relief, as explained in Section 1.25 have had, now have, or may discover in the future against the Released Parties or any of them for any or all claims alleged in the Complaint or which could have been alleged in the Complaint based on the allegations, facts, matters, transactions or occurrences alleged therein, and shall specifically include without limiting the generality thereof: claims for missed and/or unpaid meal periods and/or rest periods; failure to reimburse business expenses; failure to pay all wages owed (including without limitation, regular wages, the regular rate of pay, minimum wage, overtime pay, double time pay, premium pay or otherwise properly calculate overtime or the regular rate of pay, failure to pay employees for all hours worked, and/or off-the-clock claims); failure to properly pay all wages upon termination; any claim for failure to keep and/or maintain accurate records; unlawful deductions; failure to timely pay wages owed; claims for failure to provide accurate, itemized wage statements; waiting time penalties; and claims for PAGA penalties and/or unfair competition claims based on the foregoing. The Release of the foregoing claims extends to all theories of relief regardless of whether the claim is, was, or could have been alleged as separate claims, causes of action, lawsuits or based on other theories of relief, whether under California law, federal law, state law or common law (including, without limitation, as violations of the California Labor Code, the California Wage Orders, applicable regulations, California's Business and Professions Code section 17200 or under California's Private Attorneys General Act, and the Fair Labor Standards Act). "Released Claims" includes all types of relief available for the above-referenced claims, including, without limitation, any claims for damages, restitution, losses, penalties, fines, liens, attorneys' fees, costs, expenses, debts, interest, injunctive relief, declaratory relief, or liquidated damages. "Released

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT
AND RELEASE

8.

CASE NO. 4:17-CV-07272-YGR

1  Claims" also includes an express waiver of all benefits under section 1542 of the California Civil Code

2  as to the Released Claims only, as well as under any other federal or state statutes or common law

3  principles of similar effect. Section 1542 provides as follows:

4        **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH**

5        **THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE**

6        **RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH**

7        **THE DEBTOR.**

8  The Class Representative's and the Class Members' Section 1542 waiver releases all claims, known

9  or unknown, within the definition of Released Claims, irrespective of the factual or legal basis for such

10  claims. This 1542 waiver was a specifically negotiated term, and was specifically taken into

11  consideration in arriving at the Gross Settlement Amount. Class Members, including Class

12  Representatives, will be informed in the Notice of Settlement and will be deemed to understand that

13  Section 1542 gives them the right not to release existing claims of which they are not now aware,

14  unless they voluntarily choose to waive this right. Having been so informed, Class Members, including

15  the Class Representative, will be deemed to have voluntarily waived the rights described in Section

16  1542, and elected to assume all risks for claims that now exist in their favor, known or unknown, that

17  fall within the scope of the Released Claims. The Final Judgment shall expressly provide that it covers

18  and bars each and every Qualified Claimant as well as all Class Members for purposes of PAGA relief,

19  as explained in Section 1.25, from asserting any Released Claims in the future.

20       1.35  "Released Parties" means Defendant, its past or present parents, subsidiaries, and

21  officers, directors, shareholders, managers, employees, agents, attorneys, legal representatives,

22  successors, assigns, and predecessors in interest, affiliates, related entities, third-party staffing

23  agencies, and any individual or entity which could be jointly liable with Defendant.

24       1.36  "Settlement Administration Costs" means reasonable fees and expenses incurred by the

25  Settlement Administrator, not to exceed $35,000.00, as a result of the procedures and processes

26  expressly required by this Agreement, and shall include all costs of administering the Agreement,

27  including, but not limited to, all tax document preparation and obligations related to the QSF, custodial

28

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT
AND RELEASE

9.

CASE NO. 4:17-CV-07272-YGR

1   fees, and accounting fees incurred by the Settlement Administrator; all costs and fees associated with

2   preparing, issuing and mailing any and all notices of settlement and other settlement correspondence

3   to Class Members and/or Qualified Claimants; all costs and fees associated with communicating with

4   Class Members, Class Counsel, and Defendant's Counsel regarding settlement; all costs and fees

5   associated with computing, processing, reviewing, and paying the Claim Amounts, and resolving

6   disputed claims; all costs and fees associated with calculating tax withholdings and payroll taxes,

7   working with Defendant so that related payments to federal and state tax authorities can be made, and

8   printing tax forms relating to payments made under the settlement; all costs and fees associated with

9   preparing any tax returns and any other filings required by any governmental taxing authority or

10   agency; all costs and fees associated with preparing any other notices, reports, or filings to be prepared

11   in the course of administering Claim Amounts; and any other costs and fees incurred and/or charged

12   by the Settlement Administrator in connection with the execution of its duties under this Stipulation.

13        1.37   "Settlement Administrator" means and refers to the mutually agreed upon third-party

14   claims administrator that will be responsible for establishing, maintaining, and administering the QSF,

    as well as the administration of the Agreement and related matters as described in this Agreement.

15        1.38   "Settlement Payment" means each Qualified Claimant's share of the Net Settlement

16   Amount plus, where applicable, each Class Member's share of the PAGA Payment.

17        1.39   "Workweeks" means each week (Sunday through Saturday) during which Class

18   Members were employed, but excluding weeks during which the Class Member was not performing

19   driving duties. There are no partial or fractional Workweeks. Thus, if a Class Member performed any

20   driving duties during any part of a Sunday through Saturday week, that week shall count as a

21   Workweek. The number of Workweeks will be determined by Defendant's records.

22   **2.    THE CONDITIONAL NATURE OF THIS STIPULATION.**

23        2.1    This Agreement and all associated exhibits or attachments are made for the sole

24   purpose of settling the above-captioned lawsuit, which is entitled *Theodore A. Emetoh v. FedEx*

25   *Freight Inc.*, Case No. 4:17-CV-07272-YGR. This Agreement is made in compromise of disputed

26   claims. Because the Parties desire to settle this Action on a class-wide basis pursuant to Federal Rule

27   of Civil Procedure 23, and as a representative action pursuant to Cal. Lab. Code §2699(l), this

28

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT       10.        CASE NO. 4:17-CV-07272-YGR
AND RELEASE

1  Agreement must receive preliminary and final approval by the Court. Accordingly, the Parties enter

2  into this Agreement on a conditional basis.

3    2.2    Subject to the obligation(s) of mutual full cooperation set forth herein, FedEx may void

4  this this Agreement if the Court refuses to approve any economic term or term related to the scope of

5  the release, or declines to enter the Preliminary Approval Order, the Final Approval Order, or Final

6  Judgment in substantially the form submitted by the Parties, or if the Agreement does not become final

7  because of appellate court action or due to some other voidable event described herein. The terminating

8  Party shall give to the other Party (through its Counsel) written notice of its decision to terminate no

9  later than ten (10) calendar days after receiving notice that one of the enumerated events has occurred.

10  Termination shall have the following effects:

11    1)    The Agreement shall be terminated and shall have no force or effect, and no

12        Party shall be bound by any of its terms.

13    2)    In the event the Agreement is terminated, Defendant shall have no obligation to

14        make any payments to any Party, Class Member or attorney.

15    3)    The Preliminary Approval Order, Final Approval Order and Final Judgment,

16        including any order of class certification, shall be vacated.

17    4)    In the event this Agreement is terminated or canceled pursuant to its terms, the

18        Settlement Administrator shall refund all funds received by Defendant into the

19        QSF, and the Settlement Administration Costs incurred as of the date of

20        termination will be paid by Defendant, assuming the Defendant voided the

21        Agreement at its option. Otherwise, the Parties shall equally share such

22        Settlement Administration Costs.

23    5)    The Parties will not be deemed to have waived any claims, objections, defenses,

24        or arguments in this Action, including with respect to the issue of class

25        certification. The Parties retain and reserve these rights, and agree not to argue

26        or present any argument, and hereby waive any argument that, based on this

27        Agreement, the other Party cannot pursue or challenge claims, allegations and

28        defenses in the Action, upon any procedural or factual grounds.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT          11.          CASE NO. 4:17-CV-07272-YGR
AND RELEASE

6)     The Agreement and all negotiations, statements and proceedings relating thereto shall be without prejudice to the rights of any of the Parties, all of whom shall be restored to their respective positions prior to the Agreement and mediation on May 21, 2019. The Parties agree to return to mediation in good faith to attempt to address the concerns of the Court, and upon reaching an agreement, submit a revised agreement to the Court.

7)     The Agreement shall not be admissible or offered into evidence in the Action or any other action for any purpose whatsoever. Similarly, any conditional class certification (obtained for any purpose) shall be void *ab initio* and of no force or effect, and shall not be admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural.

## 3.   DESCRIPTION OF THE LITIGATION.

3.1     Plaintiff, a former Road Driver of Defendant, brought this Action asserting the following violations: 1) Failure to Provide Meal Periods (Lab. Code §§ 204, 223, 226.7, 512 and 1198); 2) Failure to Provide Rest Periods (Lab. Code §§ 204, 223, 226.7 and 1198); 3) Failure to Pay Hourly Wages (Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1997.1 and 1198); 4) Failure to Indemnify (Lab. Code § 2802); 5) Failure to Provide Accurate Written Wage Statements (Lab. Code §§ 226(a)); 6) Failure to Timely Pay All Final Wages (Lab. Code §§ 201, 202 and 203); 7) Unfair Competition (Bus. & Prof. Code §§ 17200 *et seq.*); and 8) Civil Penalties (Lab. Code §§ 2698 *et seq.*).

3.2     Through discovery, Defendant provided Class Counsel with nearly 3,000 pages of documents, including copies of all applicable versions of personnel and payroll policies, contact information for the putative class, and records reflecting Class Members' hours worked and wages paid, amongst numerous other documents, as well as payroll and time clock data for the putative class. Defendant also served written discovery upon and deposed Plaintiff as well as several third-party subpoenas.

3.3     The Parties participated in two separate full-day mediations before Hon. Stephen Sundvold and Tripper Ortman, Esq. on January 15, 2019 and May 21, 2019, respectively. The Parties were able to come to an agreement and signed a Memorandum of Understanding on May 21, 2019.

LITTLER MENDELSON, P.C.
2048 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT
AND RELEASE
    12.    CASE NO. 4:17-CV-07272-YGR

3.4     This Agreement was reached after evaluating the Parties' theories of potential exposure for the underlying claims. The Parties also assessed appropriate discounts to the potential liability based on Defendant's contentions and defenses.

3.5     The Parties agree that the above-described investigation and evaluation, as well as discovery and the information exchanged during the settlement negotiations, are more than sufficient to assess the merits of the respective Parties' positions and to compromise the issues on a fair and equitable basis.

4.     **BENEFITS OF THE SETTLEMENT TO THE PROPOSED CLASS.**

4.1     Based on their own independent investigations and evaluations, Class Counsel are of the opinion that the settlement with Defendant for the consideration and terms set forth below, in view of the Class Representative's and average Class Members' claims and the risk of loss, is fair, reasonable, and adequate in light of all known facts and circumstances, and is in the best interests of the Class. Class Counsel are also of the opinion that the total consideration and payment set forth in this Agreement is adequate in light of the uncertainties surrounding the risk of further litigation and the defenses that Defendant has asserted and could assert.

4.2     Class Counsel has weighed the monetary benefit under the Agreement to the Class against the expenses and length of continued proceedings that would be necessary to prosecute the Action against Defendant through trial and possible appeals. Class Counsel have also taken into account the uncertain outcome and risk of any litigation, especially in complex actions such as class actions, as well as the difficulties and delay inherent in such litigation. Therefore, Class Counsel has determined that the Agreement is in the best interests of the Class.

5.     **POSITION OF DEFENDANT.**

5.1     Defendant denies any liability or wrongdoing of any kind associated with the claims alleged in the Action, and further denies that, for any purpose other than settling this matter, this Action is appropriate for class treatment. Defendant maintains, among other things, it has complied with Federal and California law in all aspects. Nothing in this Agreement shall be construed or deemed as an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant.

5.2     There has been no final determination by any court as to the merits of the claims asserted by Plaintiff against Defendant, nor has there been any final determination as to whether a

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT          13.          CASE NO. 4:17-CV-07272-YGR
AND RELEASE

DocuSign Envelope ID: 09A67551-6A8E-42B1-B680-ACDDCA54449A

1  class should be certified, other than for settlement purposes only. Defendant will stipulate to the

2  certification of the class claims for settlement purposes only. Class certification of the PAGA

3  Settlement is not necessary to bind alleged aggrieved employees pursuant to *Arias v. Superior Court*

4  *of San Joaquin County (Dairy)*, 46 Cal. 4th 969 (2009). Defendant disputes that certification is proper

5  for the purposes of litigating the class claims proposed in or flowing from the Complaint; and the

6  Court has not evaluated manageability.

## 6. OPERATIVE TERMS OF SETTLEMENT.

The Parties to this Action agree as follows:

6.1  <u>Cooperation</u>. The Parties will cooperate in obtaining, through written stipulation or unopposed motion if a motion is required, an order from the Court approving the Agreement. The Parties agree to use their best efforts to expedite the preparation and submission of the Agreement and related documents. The Parties further agree to fully cooperate in the drafting and/or filing of any further required documents or filings, shall take all steps that may be requested by the Court or that are otherwise necessary for the approval and implementation of this Agreement, and shall otherwise use their respective best efforts to obtain Court approval of this Agreement.

6.2  <u>Preliminary Approval</u>. The Parties will seek to obtain the Court's preliminary approval of the settlement pursuant to Fed. R. Civ. Proc. 23(e) and Cal. Lab. Code § 2699(l). The Parties will jointly request that any preliminary approval order be dated no earlier than December 1, 2019 and request an immediate vacation or stay of pending dates until the entry of Final Judgment by the Court.

6.2.1  Class Counsel will prepare and file the motion for preliminary approval and related documents consistent with the terms of this Agreement and Defendant agrees not to oppose it. The Parties and their Counsel agree that this settlement is strictly confidential unless and until the Preliminary Approval Motion is filed granted. Plaintiff will not oppose FedEx filing a motion to seal the preliminary approval pleadings. If the Court declines to enforce this provision, it will not be grounds to void the Agreement.

6.2.2  Plaintiff, Defendant, and their respective Counsel will not make any public disclosure of the Agreement until after the Agreement is preliminarily approved by the Court. Plaintiff and Class Counsel agree not to disclose or publicize the Agreement, including the fact of the

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT          14.          CASE NO. 4:17-CV-07272-YGR
AND RELEASE

1   Agreement, its terms or contents, and the negotiations underlying the Agreement, in any manner or

2   form, directly or indirectly, to any person or entity, except potential class members and as shall be

3   contractually required to effectuate the terms of the Agreement as set forth herein. Class Counsel will

4   take all steps necessary to ensure that Plaintiff is aware of, and will encourage him to adhere to, the

5   restriction against any public disclosure of the Agreement until after the Agreement is preliminarily

6   approved by the Court.

7          6.2.3   The Parties agree not to initiate any contact with the media concerning this case

8   at any time. Plaintiff and Counsel will not at any time publish details of this case or the settlement

9   except on Plaintiff's Counsel's website or other publications it controls. If either Party or their Counsel

10   is contacted by the media, neither Party is required to make a statement, but may make the following

11   statement:

12          (a)   If Motion to Seal is granted: "The Parties have reached an agreement to

13   settle the pending claims in the *Theodore Emetoh v. FedEx Freight, Inc.* lawsuit. The terms of the

14   settlement are confidential and have not yet received final approval by the Court."

15          (b)   If Defendant's Motion to Seal is not granted: "The Parties have reached

16   an agreement to settle the pending claims in the *Theodore Emetoh v. FedEx Freight, Inc.* lawsuit. The

17   terms of the settlement have not yet received final approval by the Court."

18          (c)   After preliminary approval is granted: "The Parties have reached an

19   agreement to settle the pending claims in the *Theodore Emetoh v. FedEx Freight, Inc.* lawsuit."

20          (d)   At any time, Plaintiff may say: "We believe the settlement is fair and in

21   the best interests of the class."

22          (e)   If Defendant's Motion to Seal is not granted and after preliminary

23   approval is granted, Defendant may say: "FedEx Freight denies liability in this matter. Contrary to

24   Plaintiff's claims, FedEx Freight complies with the wage and hour laws in all jurisdictions where we

25   do business, including California. We have agreed to settle this matter simply to avoid the

26   burdensome cost of continued litigation."

27          (f)   The Parties expressly agree that neither Party shall provide any

28   comment beyond the above statements to any third party entity, on any digital platform, or in any

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT                    15.                    CASE NO. 4:17-CV-07272-YGR
AND RELEASE

DocuSign Envelope ID: 09A67551-6A8E-42B1-B680-ACDDCA54449A

1     other forum, except for Plaintiff's Counsel's website or other publications controlled by Plaintiff's

2     Counsel.

3           6.2.4 The Parties agree that the preliminary approval order will include a provision

4     enjoining Class Members from filing any DLSE claims, or from initiating other proceedings, regarding

5     claims released by the settlement before opting out of the settlement. If the Court declines to enforce

6     this provision, it will not be grounds to void the Agreement;

7           6.2.5 The Parties will submit this Agreement to the Court for preliminary approval

8     of its terms and for approval of the steps to be taken to obtain its final approval. The Parties will

9     request that the Court's preliminary approval of this Agreement be embodied in the Preliminary

10    Approval Order, a proposed form of which is attached as Exhibit D.

11         6.3   <u>Notice to Class Members</u>. The Settlement Administrator shall disseminate the Notice

12    Packet in the manner described below, with the Settlement Administration Costs being paid from the

13    Gross Settlement Amount.

14         6.3.1 No later than thirty (30) calendar days after the entry of the Preliminary

15    Approval Order, for each Class Member, Defendant shall provide the Settlement Administrator with

16    the name, last known mailing address, last known telephone number, Social Security Number, the

17    dates the Class Member was employed as a Class Member of Defendant in California during the Class

18    Period, the number of Workweeks attributable to the Class Member, and whether the Class Member's

19    employment with Defendant ended, in a form requested by the Settlement Administrator. This class

20    data, as well as any other class data provided to the Settlement Administrator, shall be confidential.

21    Except as provided for in this Agreement, the Settlement Administrator shall not provide the class data

22    to Class Counsel or Plaintiff or any third party, or use the class data or any information contained

23    therein for any purpose other than to administer this Agreement. Class Counsel agrees they will not

24    use the Class Member data for any purpose other than as required for this Agreement. The Settlement

25    Administrator shall use commercially reasonable efforts to secure the Class Member data at all times

26    so as to avoid inadvertent or unauthorized disclosure or use of such data other than as permitted by

27    this Agreement, and shall destroy the data and all copies in a complete and secure manner at the end

28    of any retention periods after which the data is no longer required for purpose of the Agreement. Class

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT
AND RELEASE
   16.       CASE NO. 4:17-CV-07272-YGR

DocuSign Envelope ID: 09A67551-6A8E-42B1-B680-ACDDCA54449A

1   Members' addresses, telephone numbers, or social security numbers shall not be filed with the Court,

2   except as may be ordered by the Court.

3        6.3.2  No later than ten (10) calendar days after receipt of such address information,

4   the Settlement Administrator will perform a national change of address ("NCOA") search, update the

5   addresses per the results of the NCOA search, and then mail the Notice of Settlement and Data Dispute

6   Form, substantially in the forms attached as Exhibits B and C, respectively, to each Class Member by

7   first-class mail, postage prepaid.

8        6.3.3  If a Class Member is deceased, the successor or estate may receive the payment.

9   Within ten (10) calendar days of notification that the Class Member is deceased, the Settlement

10   Administrator shall mail a Beneficiary Declaration and Release to the successor or individual acting

11   on behalf of the estate.

12        6.3.4  In the event that a Notice Packet is returned as undeliverable, the Settlement

13   Administrator will make reasonable efforts to obtain a valid mailing address by using the social

14   security number of the class member and standard skip tracing devices to conduct a search for a correct

15   mailing address and by contacting Class Counsel and Defendant through Defendant's Counsel.

16   Following each search that results in a corrected address, the Settlement Administrator shall promptly

17   resend the original Notice Packet to the Class Member by first-class mail, postage prepaid. Such efforts

18   must be completed no less than fourteen (14) calendar days before the date of the Final Approval and

19   Fairness Hearing. No further action is required if the search results in no corrected address.

20        6.3.5  The Parties shall cooperate in good faith with the Settlement Administrator's

21   reasonable efforts to obtain valid mailing addresses for Class Members.

22        6.3.6  All costs of mailing of the Notice Packet, whether foreseen or not, shall be paid

23   from the Gross Settlement Amount, including the cost of searching for Class Members' addresses as

24   provided in Section 6.3.4. All other reasonable costs of the Settlement Administrator shall also be paid

25   from the Gross Settlement Amount.

26        6.3.7  No later than fourteen (14) calendar days prior to the date of the Final Approval

27   and Fairness Hearing, the Settlement Administrator shall file a declaration under penalty of perjury

28   advising the Court that the requirements of Sections 6.3.1 through 6.3.4 of this Agreement have been

fulfilled.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT      17.      CASE NO. 4:17-CV-07272-YGR
AND RELEASE

DocuSign Envelope ID: 09A67551-6A8E-42B1-B680-ACDDCA54449A

6.3.8  Compliance with these procedures shall constitute due and sufficient notice to Class Members of this Agreement and shall satisfy the requirement of due process. Nothing else shall be required of, or done by, the Parties or their Counsel to provide notice of the proposed Agreement.

6.4      Responses to Notice. The Notice Packet shall provide Class Members with information as to how they may challenge the Data in the Data Dispute Form. Class Members need not exclude themselves from the Agreement to submit a Data Dispute Form. If a Class Member timely submits both a Data Dispute Form and a request for exclusion, the Data Dispute Form shall control, and the request for exclusion shall be null and void.

6.5      Class Members will have until the Data Dispute Deadline within which to complete and postmark their Data Dispute Form for return to the Settlement Administrator. Except as provided by Section 6.5.1 and 6.5.2, no Data Dispute Forms will be honored if postmarked after the Data Dispute Deadline.

6.5.1  For Class Members who are re-mailed the Notice Packet due to it being undeliverable, the deadline by which to submit a Data Dispute Form, file an objection, or submit a request for exclusion will be the later of (i) fourteen (14) calendar days from the date the Notice Packet was re-mailed, or (ii) the Data Dispute Deadline.

6.5.2  If a Data Dispute Form is timely submitted, but is deficient or incomplete, the Settlement Administrator will return the Data Dispute Form (or, if deemed necessary, a new Data Dispute Form) to the Class Member within five (5) business days of receipt of the Data Dispute Form with a deficiency notice explaining the deficiencies and stating that the Class Member will have fifteen (15) calendar days from the date of the deficiency notice to correct the deficiencies and resubmit the Data Dispute Form. Neither the Parties nor their Counsel shall discourage any Class Member from submitting a Data Dispute Form. The Settlement Administrator will timely notify Class Members whose dispute letters are untimely or denied for other reasons.

6.5.3  Class Members, with the exception of the Class Representative, may opt-out of the Agreement. Class Members who wish to exercise this option must submit a request for exclusion to the Settlement Administrator as provided in this section. The request for exclusion must (a) be in writing; (b) state the name, address and telephone number of the Class Member; (c) state either the Class Member's approximate years of employment with Defendant or the employee identification

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT
AND RELEASE

18.

CASE NO. 4:17-CV-07272-YGR

number assigned to the Class Member by Defendant; (d) request exclusion from the Class saying words to the effect of "I wish to opt out of the Class in: *Emetoh v. FedEx Freight, Inc.*"; (e) be sent via U.S. Mail postmarked no later than the Data Dispute Deadline; and (f) be signed and dated with return address or contact information. No request for exclusion may be made on behalf of a group of members of the Class. The date of the postmark on the return-mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted. By submitting such a Request for Exclusion, a Class Member shall be deemed to have exercised his or her option to opt out of the class action lawsuit, except that opting out does not alter the binding nature of the PAGA Settlement, Release, Final Approval, and Final Judgment related to the PAGA Settlement.

6.5.4 Any member of the Class who requests exclusion from the Agreement will not be entitled to any share of the settlement (except for a PAGA Payment), will not be bound by the Agreement or Final Judgment (except as to the PAGA Settlement and related Final Judgment), and will not have any right to object, appeal or comment thereon. Members of the Class who fail to submit a valid and timely request for exclusion shall be bound by all terms of the Agreement and the Final Judgment entered in this Action, regardless of whether they otherwise have requested exclusion from the Agreement.

6.5.5 The Settlement Administrator is to send a deficiency notice to the Class Members for any irregularities in the requests for exclusion that are timely submitted; the deficiency notice will provide the Class Members no less than fifteen (15) calendar days from the mailing of the deficiency notice to cure the deficiency, even if after the claims period ends.

6.5.6 Within ten (10) calendar days of the Data Dispute Deadline, the Settlement Administrator shall notify Class Counsel and Defendant's Counsel of the identity of Class Members who have submitted requests for exclusion and whether the request for exclusion was timely or untimely filed. No later than fourteen (14) calendar days before the Final Approval and Fairness Hearing, the Settlement Administrator shall file a declaration under penalty of perjury providing the Court with a complete list of all members of the Class who have timely requested exclusion from the Agreement.

6.5.7 Any person who does not request exclusion but who wishes to object or otherwise be heard concerning this Agreement must provide the Settlement Administrator with written

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT
AND RELEASE

19.

CASE NO. 4:17-CV-07272-YGR

DocuSign Envelope ID: 09A67551-6A8E-42B1-B680-ACDDCA54449A

1   notice of his or her intent to object to this Agreement, although no Class Member has the right to

2   object to the PAGA Settlement. To be considered timely, the notice must be sent to the Settlement

3   Administrator via U.S. Mail and postmarked no later than the Data Dispute Deadline. The notice must

4   set forth any and all objections to this Agreement and include any supporting papers and arguments.

5   Any person who fails to submit such a timely written notice shall be barred from making any statement

6   objecting to this Agreement, and shall forever waive his or her objection, except by special permission

7   of the Court, but may still attend the hearing to obtain such special permission. The Settlement

8   Administrator shall promptly forward all objections to the Parties and have them filed with the Court

9   within ten (10) calendar days of the Data Dispute Deadline with any later received objections filed

10  with the Court promptly upon receipt and in any case no later than five (5) business days before the

11  Final Approval and Fairness Hearing. Either of the Parties may file a responsive document to any

12  notice of intent to object with the Court no later than five (5) business days before the Final Approval

13  and Fairness Hearing. Any person who objects to the Agreement shall be bound by the order of the

    Court.

14          6.5.8   If any individual whose name does not appear on the updated class list provided

15  to the Settlement Administrator believes that he or she is a member of the Class, he or she shall have

16  the opportunity to dispute his or her exclusion from the Class. Individuals who believe they are Class

17  members must notify the Settlement Administrator in writing no later than the Data Dispute Deadline.

18  The Parties will meet and confer regarding any such individuals in an attempt to reach an agreement

19  as to whether any such individual should be regarded as a Class member. If the Parties so agree, the

20  Settlement Administrator will mail a Notice Packet to the individual, and treat the individual as a Class

21  member for all other purposes. Such an individual will have all of the same rights as any other Class

22  member under this agreement.

23          6.5.9   If five percent (5%) or more of the total number of Class Members submit

24  timely and valid requests for exclusion, then Defendant shall have the option to void the Agreement.

25  Defendant must exercise this option within fourteen (14) calendar days of receiving a report from the

26  Settlement Administrator showing the total number of timely and valid requests for exclusion

27  exceeding 5% of Class Members. If Defendant chooses to exercise this option, the effect will be

28  precisely the same as if final approval did not occur, as discussed in Section 2.2. As a condition to

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT          20.          CASE NO. 4:17-CV-07272-YGR
AND RELEASE

DocuSign Envelope ID: 09A67551-6A8E-42B1-B680-ACDDCA54449A

1  exercise of this option, Defendant must pay the Settlement Administration Costs incurred as of the

2  date of this exercise, notwithstanding other allocations of Settlement Administration Costs set forth in

3  this Agreement.

4      6.5.10 Neither the Parties nor their respective Counsel will solicit or otherwise

5  encourage any Class Member, directly or indirectly, to request exclusion from the Agreement or object

6  to the Agreement.

7      6.6    Data Dispute Procedures. Any Qualified Claimant who disputes the Data listed on the

8  Data Dispute Form shall complete the Data Dispute Form and provide it together with any supporting

9  information or documentation to the Settlement Administrator by the Data Dispute Deadline. A Data

10  Dispute Form will be deemed submitted (a) when postmarked, if it is mailed by first-class, registered,

11  or certified mail, postage prepaid, addressed in accordance with the instructions on the form, or (b) if

12  otherwise submitted, when it is actually received at the address designated on the form. If a Qualified

13  Claimant does not timely dispute the Data contained in the Data Dispute Form, the Data contained in

14  the Data Dispute Form mailed to the Qualified Claimant shall govern the calculation of his or her

     entitlement under the Agreement

15      6.6.1  Defendant shall review and respond to each submitted Data Dispute Form

16  within ten (10) calendar days of receipt, and shall transmit a copy of its response to the Settlement

17  Administrator. Defendant's response shall state whether Defendant agrees with or disputes the

18  information provided in the Data Dispute Form.

19          (a)    If Defendant agrees with all of the information provided in the Data

20  Dispute Form, the information and documentation provided by the Qualified Claimant and attached

21  to the Data Dispute Form shall govern the calculation of the entitlement under the Agreement of the

22  person whose employment information is listed in the Data Dispute Form.

23          (b)    If Defendant disagrees with any of the information provided in a Data

24  Dispute Form, it shall follow the procedure set forth in Section 6.6.2 of this Agreement.

25      6.6.2  In the event that Defendant disagrees with the information provided in a Data

26  Dispute Form, Defendant's Counsel will promptly advise Class Counsel in writing of the dispute and

27  provide Class Counsel with copies of all information relevant to the dispute. Copies of all Data Dispute

28  Forms and correspondence with the person(s) submitting the Data Dispute Form(s) shall be made

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT    21.    CASE NO. 4:17-CV-07272-YGR
AND RELEASE

1   available to Class Counsel upon request. Defendant's Counsel and Class Counsel shall attempt in good

2   faith to resolve any such dispute within ten (10) calendar days of Class Counsel's receipt of

3   Defendant's Counsel's notice of a dispute as to the Data Dispute Form. Class Counsel shall have full

4   discretion on behalf of the Qualified Claimants to resolve such disputes with Defendant's Counsel,

5   except that any and all payments relating to the disputed entitlement must be from the Net Settlement

6   Amount.

7         6.6.3  In the event the Parties are unable to resolve any dispute under this section, the

8   Court shall review all information, materials and documents provided by the Qualified Claimant, Class

9   Counsel, and/or Defendant's Counsel, and make a decision regarding the dispute. This decision shall

10  be final and unappealable.

11        6.7  Application for Attorneys' Fees and Expenses. Class Counsel shall apply to the Court

12  for an award of fees from the Gross Settlement Amount in an amount not to exceed One Million

13  Eighty-Two Thousand Two-Hundred Fifty Dollars ($1,082,250.00) (thirty three and one-third percent

14  of the Gross Settlement Amount) and actual costs incurred up to Twenty Thousand Dollars

15  ($20,000.00). Defendant agrees not to oppose Class Counsel's application for fees and expenses

16  provided the application is made consistent with this section. To the extent the Court awards less than

17  this amount, the remainder shall be distributed to the Qualified Claimants. Failure of the Court to

18  award the requested attorneys' fees and costs is not a grounds to void this Agreement, however,

19  Plaintiff reserves the right to appeal any such decision.

20        6.8  Application for Enhancement Payment. Class Counsel, on behalf of Plaintiff, shall

21  apply to the Court for an Enhancement Payment from the Gross Settlement Amount, per the Court's

22  direction, or no later than the same day Plaintiff files his anticipated Motion for Final Approval of

23  Class Action Settlement. To the extent the Court awards less than the requested amount, the remainder

24  shall be distributed to the Qualified Claimants. Failure of the Court to award the requested

25  Enhancement Payment is not a grounds to void this Agreement.

26        6.8.1  Any request for an Enhancement Payment may be supported by a declaration

27  from the Class Representative seeking payment and outlining the burdens and obligations assumed in

28  connection with his role as a Class Representative. Defendant agrees not to oppose Class

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT
AND RELEASE

22.

CASE NO. 4:17-CV-07272-YGR

DocuSign Envelope ID: 09A67551-6A8E-42B1-B680-ACDDCA54449A

1 Representative's application for the Enhancement Payment provided the application is made
2 consistent with this Agreement.

3      6.8.2 Plaintiff shall be solely and legally responsible to pay any and all applicable
4 taxes on his Class Representative Enhancement Payment and hold harmless Defendant from any claim
5 or liability for taxes, penalties, or interest arising as a result of the Class Representative Enhancement
6 Payment.

7      6.9   <u>Final Approval and Fairness Hearing</u>. On the date set forth in the Notice Packet, the
8 Court shall hold the Final Approval and Fairness Hearing where objections, if any, may be heard. If
9 the Court approves this Agreement at the Final Approval and Fairness Hearing, the Parties request that
10 the Court enter the Final Judgment.

11      6.10   <u>Tax Allocation of the Net Settlement Amount</u>. To fairly allocate settlement funds based
12 on the Qualified Claimant's dates of employment as a Class Member (excluding workweeks where
13 the Qualified Claimant was not performing driving duties) and any entitlement to waiting time
14 penalties, the distribution amounts will be calculated as follows: The total Workweeks for all Class
15 Members in the class period plus additional Workweeks allocated for separated employees shall be
16 divided into the Net Settlement Amount to calculate the agreed upon payment per Workweek (the
17 "Workweek Rate"). Each Qualified Claimant who separated from Defendant during the class period
18 at least once will receive an allotment of six additional Workweeks. Each Qualified Claimant will be
19 paid the Workweek Rate for each Workweek.

20      6.10.1 There will be no reversion of any of the Gross Settlement Amount or Net
21 Settlement Amount to Defendant. For any Class Member that requests exclusion from the Class, his
22 or her Claim Amount will be added to the Net Settlement Amount and distributed to Qualified
23 Claimants on a proportional basis. All Qualified Claimants will receive their Claim Amount, such that
24 100% of the Net Settlement Amount will be paid.

25      6.10.2 The Parties recognize that the Claim Amounts to be paid to Class Members
26 reflect settlement of a dispute over claimed wages, business expenses, interest, premiums and
27 penalties. The parties agree that such payments are not, and are not intended to be made as a payment
28 with respect to, a penalty or a punishment of any type or kind for purposes of Internal Revenue Service
Code §162(f), except that the PAGA Payment is a civil penalty.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT      23.
AND RELEASE                 CASE NO. 4:17-CV-07272-YGR

DocuSign Envelope ID: 09A67551-6A8E-42B1-B680-ACDDCA54449A

**6.10.3** With the exception of the PAGA Payment, no governmental entity is directly or indirectly a recipient of any portion of the payments made pursuant to this Agreement, and no governmental entity has any interest or involvement of any type or kind in the litigation hereby settled. The payments made herein are not made or received with the intention of avoiding or reducing any liability to a governmental entity of any type or kind.

**6.10.4** The Settlement Administrator will prepare and issue Forms 1099 and W-2's as part of this Agreement and calculate and deduct required withholdings from each Payroll Settlement Check, and file tax forms with the appropriate government agencies as required by law. Pursuant to its duties and undertakings, the Settlement Administrator shall work with Defendant to ensure that all monies and information needed to remit and report the applicable portions of the payroll tax payment to the appropriate taxing authorities are provided on a timely basis. Defendant agrees to reasonably cooperate with the Settlement Administrator to the extent necessary to determine the amount of the payroll tax payment required under this section. Defendant and Defendant's Counsel will not be responsible for any errors or omissions in the Settlement Administrator's calculations of the withholdings.

**6.10.5** Qualified Claimants shall be solely responsible for the reporting and payment of their share of any federal, state and/or municipal income or other taxes on payments made pursuant to this Agreement. No Party has made any representation to any of the other Parties as to the taxability of any payments pursuant to this Agreement, including the payments to Class Members, the payments to Class Counsel, the payments to the Class Representative, the payroll tax liability of Defendant, or the allocation of settlement proceeds to wage and non-wage income as provided in Section 6.10.4, or otherwise as to tax implications of any provision of this Agreement.

**6.10.6** Defendant will pay the employer's share of payroll taxes only attributable to the portion of the Net Settlement Amount deemed to be wages. Defendant shall not be responsible for payroll tax payments on any other portion of the Gross Settlement Amount or Net Settlement Amount.

**6.10.7** Defendant and Defendant's Counsel will not be liable for any errors or omissions in the Settlement Administrator's calculation of each Qualified Claimant's Claim Amount. Defendant and Defendant's Counsel will not be liable with respect to any claims relating to management of the QSF or distribution of the funds from the QSF, the payment of taxes (other than

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT
AND RELEASE

24.

CASE NO. 4:17-CV-07272-YGR

DocuSign Envelope ID: 09A67551-6A8E-42B1-B680-ACDDCA54449A

1    the employer's share of payroll taxes), the withholding of taxes, or any obligations or losses incurred

2    by any person or any entity in connection therewith.

3          6.10.8 The Settlement Administrator shall allocate all Claim Amounts to Qualified

4    Claimants as follows:

5          (a)     Twenty percent (20%) of the Claim Amounts shall be allocated for

6    payment of disputed wages to Qualified Claimants. For this portion of the Claim Amounts, Qualified

7    Claimants shall receive an IRS Form W-2 from the Settlement Administrator.

8          (b)     Eighty percent (80%) of the Claim Amounts shall be allocated for

9    disputed business expense reimbursement, Labor Code § 226, penalties, including the PAGA

10   Payment, and interest. This portion of the Claim Amounts consists of other income, not wages, for

11   which the Qualified Claimants shall receive an IRS Form 1099 from the Settlement Administrator as

    and if required by law.

12         6.10.9 The Class Members receiving all or any portion of any payment hereunder are

13   present or former employees of Defendant.

14        6.11   <u>Distribution of Settlement Proceeds</u>. Within fourteen (14) calendar days after the Final

15   Judgment is entered, Defendant shall electronically wire the entire Gross Settlement Amount and

16   employer's share of payroll taxes to the Settlement Administrator, who shall deposit it and hold it in

17   trust in the QSF. The final and complete delivery by Defendant to the Settlement Administrator of the

18   Gross Settlement Amount and employer's share of payroll taxes shall constitute full and complete

19   discharge of the entire obligation of Defendant under this Agreement, except that Defendant is also

20   responsible for any retroactive tax increase assessed on the amounts allocated to wages, upon an

21   accounting provided by the Settlement Administrator. No Released Party shall have any further

22   obligation or liability to Class Counsel, Class Representative, or Qualified Claimants.

23         6.11.1   Within seven (7) calendar days after the Final Approval Date, the

24   Settlement Administrator shall promptly deduct and pay (and, if available, electronically wire) from

25   the Gross Settlement Amount (1) all Court-awarded attorney's fees and costs; (2) the Enhancement

26   Payment; (3) Settlement Administration Costs; and (4) the State of California's portion of the PAGA

27   Payment. Following deduction of the amounts of such payments, the Settlement Administrator shall

28   calculate and make payments to the Qualified Claimants in accordance with this Agreement.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT
AND RELEASE

25.

CASE NO. 4:17-CV-07272-YGR

DocuSign Envelope ID: 09A67551-6A8E-42B1-B680-ACDDCA54449A

(a)     The Settlement Administrator shall wire the Court-approved attorneys' fees and costs to Class Counsel. Class Counsel shall provide the Settlement Administrator with the pertinent taxpayer identification number and wire instructions.

(b)     The Settlement Administrator shall send a check by mail for the Court-approved Enhancement Payment to the Class Representative, in care of Class Counsel.

6.11.2    Within fifteen (15) calendar days of the Final Approval Date, the Settlement Administrator shall issue Claim Amounts to Qualified Claimants in the form of a check, which shall become null and void if not deposited within one hundred eighty (180) calendar days of issuance. After one hundred eighty (180) calendar days of issuance, funds from undeposited checks, plus any interest that has accrued on that sum after being deposited into the QSF, shall be deposited with the State of California pursuant to California's Unclaimed Property Law, Code of Civil Proc. (C.C.P.) §1500 *et seq.*, and specifically as unclaimed intangible property and/or wages within the meaning of C.C.P. §1513 (4) & (7) and subject to distribution pursuant to Court order pursuant to C.C.P. §1519.5.

6.11.3    The failure by a Class Member to claim or deposit any check issued by the Settlement Administrator shall have no effect on that Class Member's release of all Released Claims as set forth herein.

6.11.4    No person shall have any claim against the Settlement Administrator, Defendant or any of the Released Parties, the Class Representative, the Class Members, or Class Counsel based on distribution or payments made substantially in accordance with this Agreement, or further orders of this Court. The Settlement Administrator, however, shall be licensed and bonded in an amount sufficient to cover any claims against it.

6.12    Release of Claims. The Parties agree that it is their intent that the terms set forth in this Agreement will release any further attempt, by lawsuit, administrative claim or action, arbitration, demand, or other action of any kind by each and all of the Qualified Claimants as well as all Class Members for purposes of PAGA relief, as explained in Section 1.25, including participation to any extent in any class or collective action, to obtain a recovery based on each and all of the allegations in the operative complaint in this matter, for harms arising during the Class Period.

6.12.1    Upon full and final payment by Defendant of the Gross Settlement Amount consistent with Section 6.11, the Class Representative and each Qualified Claimants as well as all

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT                    26.                    CASE NO. 4:17-CV-07272-YGR
AND RELEASE

DocuSign Envelope ID: 09A67551-6A8E-42B1-B680-ACDDCA54449A

Class Members for purposes of PAGA relief, as explained in Section 1.25, shall be deemed to have fully, finally, and forever released the Released Parties from all Released Claims, as defined in Sections 1.8, 1.34 and 1.35. The Agreement includes a release of all Released Claims by Qualified Claimants, as well as all Class Members for purposes of PAGA relief, as explained in Section 1.25. As of the entry and filing of the Final Judgment, Plaintiff, the Qualified Claimants, as well as all Class Members for purposes of PAGA relief, as explained in Section 1.25, shall be permanently enjoined and forever barred from prosecuting any and all Released Claims against the Released Parties.

   6.12.2 In addition, upon full and final payment by Defendant of the Gross Settlement Amount, and conditioned upon the Court approving a Class Representative Enhancement Payment in any amount, the Class Representative shall be deemed to have fully, finally, and forever released the Released Parties from the Class Representative's Released Claims, and the Class Representative shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by the law, the provisions, rights, and benefits he may otherwise have had pursuant to Section 1542, as quoted in the preceding paragraph.

  6.13 <u>Miscellaneous Provisions</u>

   6.13.1 The respective signatories to this Agreement represent that they are fully authorized to enter into this Agreement and bind the respective Parties to its terms and conditions.

   6.13.2 The Parties represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or right released and discharged in this Agreement.

   6.13.3 Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States certified mail, return receipt requested, addressed as follows:

  To the Plaintiff and the Class:

  Shaun Setareh
  William Pao
  Alexandra McIntosh
  Setareh Law Group

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT
AND RELEASE

27.

CASE NO. 4:17-CV-07272-YGR

DocuSign Envelope ID: 09A67551-6A8E-42B1-B680-ACDDCA54449A

315 S. Beverly Dr., Ste. 315
Beverly Hills, CA 90212

To Defendant:

Keith A. Jacoby
Littler Mendelson, P.C.
2049 Century Park East, 5th Floor
Los Angeles, CA  90067.3107

Sophia Behnia
Littler Mendelson, P.C.
333 Bush Street, 34th Floor
San Francisco, CA  94104

Linda N. Bollinger
Littler Mendelson, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA  95113.2303

Sandra C. Isom
FedEx Freight, Inc.
1715 Aaron Brenner Drive, Ste. 600
Memphis, TN 38120

6.13.4     The Parties hereto agree that the terms and conditions of this Agreement are the result of lengthy, intensive, arm's-length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or its Counsel participated in the drafting of this Agreement.

6.13.5     The Class Representative, by signing this Agreement, is bound by the terms herein and further agrees not to request to be excluded from the Agreement and not to object to any terms of this Agreement. Any such request for exclusion or objection shall therefore be void and of no force or effect. Defendant, Class Counsel, and the Class Representative waive their rights to file an appeal, writ, or any challenge whatsoever to the terms of this Agreement.

6.13.6     The Parties agree that nothing contained in this Agreement shall be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant, and Defendant denies any liability therefore. Each Party has entered into this Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses. This Agreement is a settlement document and shall not be admissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce its terms or in which

DocuSign Envelope ID: 09A67551-6A8E-42B1-B680-ACDDCA54449A

1    Defendant is relying upon this Agreement in support of an affirmative defense. To the extent this

2    Agreement is deemed void or the Final Approval Date does not occur or for whatever reason does not

3    result in the final resolution of the Action, Defendant does not waive, and, instead, expressly reserves

4    its rights to challenge all claims and allegations in the Action upon all procedural, factual and legal

5    grounds, as well as asserting any and all other potential defenses or privileges.

6         6.13.7    With the exception of the Excluded Claims, Plaintiff and Class Counsel

7    represent that they do not currently intend to pursue any claims against Defendant, including, but not

8    limited to, any and all claims relating to or arising from Plaintiff's employment with Defendant, and

9    that Class Counsel is not currently aware of any facts or legal theories upon which any claims or causes

10   of action could be brought against Defendant by Plaintiff, excepting those facts or legal theories

11   alleged in the Complaint and the Excluded Claims. The Parties further acknowledge, understand, and

12   agree that this representation is essential to the Agreement and that this Agreement would not have

13   been entered into were it not for this representation.

14        6.13.8    Neither Class Counsel nor any other attorneys acting for, or purporting to act

15   for, the Class, Class Members, or the Class Representative, may recover or seek to recover any

16   amounts for fees, costs, or disbursements from the Released Parties or the settlement except as

17   expressly provided herein.

18        6.13.9    This Agreement, including exhibits, constitutes the full, complete and entire

19   understanding, agreement and arrangement between the Class Representative and Qualified Claimants

20   on the one hand and Defendant on the other hand with respect to the settlement of the Action and

21   Released Claims against Defendant. Except those set forth expressly in the Agreement, there are no

22   other agreements, covenants, promises, representations or arrangements between the Parties with

23   respect to the settlement of the Action and the Released Claims against Defendant.

24        6.13.10   This Agreement may not be changed, altered, or modified, except in writing

25   signed by the Parties hereto and approved by the Court. This Agreement may not be discharged except

26   by performance in accordance with its terms or by a writing used by the Parties hereto. No rights under

27   this Agreement may be waived except in writing.

28

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT          29.          CASE NO. 4:17-CV-07272-YGR
AND RELEASE

DocuSign Envelope ID: 09A67551-6A8E-42B1-B680-ACDDCA54449A

6.13.11   This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, Settlement Administrators, successors, and assigns.

6.13.12   This Agreement and the exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to have been wholly performed, in the State of California, and the rights and obligations of the Parties to the Agreement shall be construed and enforced in accordance with, and governed by, the substantive laws of the State of California without giving effect to that State's choice of law principles.

6.13.13   This Agreement shall become effective upon its execution by the Parties. The Class Representative, Class Counsel, Defendant and Defendant's Counsel may execute this Agreement in counterparts and by way of facsimile signature or scanned signature attached to an email, and execution of counterparts shall have the same force and effect as if each signatory had signed the same instrument.

6.13.14   In the event that one or more of the Parties to this Agreement institutes any legal action, arbitration, or other proceeding to enforce the provisions of this Agreement or to declare rights and/or obligations under this Agreement, the successful Party or Parties shall be entitled to recover from the unsuccessful Party or Parties reasonable attorneys' fees and costs, including expert witness fees incurred in connection with any enforcement actions. Notwithstanding the entry of Final Judgment, the Court shall retain jurisdiction of this matter for purposes of interpreting and enforcing the terms of this Agreement and the Judgment.

6.13.15   Paragraph titles or captions contained in the Agreement are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement, or any provision thereof.

6.13.16   Class Counsel will provide an opportunity for Defendant's Counsel to review the Motions for Preliminary and Final Approval prior to filing with the Court, including furnishing any drafts at least seven (7) calendar days before filing.

6.13.17   With respect to all of the documents produced by Defendant in this litigation, Plaintiff's attorneys acknowledge that they continue to be bound by the Parties' Stipulated

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT                    30.                    CASE NO. 4:17-CV-07272-YGR
AND RELEASE

DocuSign Envelope ID: 09A67551-6A8E-42B1-B680-ACDDCA54449A

1    Protective Order and that these documents must be kept confidential and otherwise handled in

2    accordance with the terms of the Protective Order.

3         6.13.18    IRS Circular 230 Disclaimer. Each Party to this Agreement (for purposes of

4    this section, the "acknowledging party" and each Party to this Agreement other than the

5    acknowledging party, an "other party") acknowledges and agrees that:

6         (a) No provision of this Agreement, and no written communication or

7    disclosure between or among the Parties or their attorneys and other advisers, is or was intended to be,

8    nor shall any such communication or disclosure constitute or be construed or be relied upon as, tax

9    advice within the meaning of United States Treasury Department circular 230 (31 CFR part 10, as

10   amended);

11        (b) The acknowledging party (a) has relied exclusively upon his, her or its own,

12   independent legal and tax counsel for advice (including tax advice) in connection with this Agreement;

13   (b) has not entered into this Agreement based upon the recommendation of any other Party or any

14   attorney or advisor to any other Party; (c) is not entitled to rely upon any communication or disclosure

15   by any attorney or adviser to any other Party to avoid any tax penalty that may be imposed on the

16   acknowledging party; and

17        (c) no attorney or adviser to any other Party has imposed any limitation that

18   protects the confidentiality of any such attorney's or adviser's tax strategies (regardless of whether

19   such limitation is legally binding) upon disclosure by the acknowledging party of the tax treatment or

20   tax structure of any transaction, including any transaction contemplated by this Agreement.

21        IN WITNESS WHEREOF, this Agreement is executed by the Parties and their duly

22   authorized attorneys, as of the day and year herein set forth.

23

24   Dated: 1/28/2020                    By: _____
                                              DocuSigned by:
25                                           Theodore A. Emetoh
                                             A9871C08E241483...
26                                           Plaintiff

27

28   Dated: _____             By: _____

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT          31.                    CASE NO. 4:17-CV-07272-YGR
AND RELEASE

DocuSign Envelope ID: 09A67551-6A8E-42B1-B680-ACDDCA54449A

FedEx Freight, Inc.
Defendant

APPROVED AS TO FORM AND CONTENT:

SETAREH LAW GROUP

Dated: _____          By: _____
                                     Shaun Setareh
                                     Attorneys for Plaintiff

LITTLER MENDELSON, P.C.

Dated: _____          By: _____
                                     Keith A. Jacoby
                                     Attorneys for Defendant
                                     FedEx Freight, Inc.

4834-3565-3539.5 057116.1023

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT          32.          CASE NO. 4:17-CV-07272-YGR
AND RELEASE

Dated: January 28, 2020

By: _Sandra C. [signature]_
    FedEx Freight, Inc.
    Defendant

APPROVED AS TO FORM AND CONTENT:

SETAREH LAW GROUP

Dated: _1/28/20_

By: _[signature]_
    Shaun Setareh
    Attorneys for Plaintiff

LITTLER MENDELSON, P.C.

Dated: January 28, 2020

By: _[signature]_
    Keith A. Jacoby
    Sophia Behnia
    Linda N. Bollinger
    Attorneys for Defendant
    FedEx Freight, Inc.

4834-3565-3539.5 057116.1023

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

FIRST AMENDED JOINT
STIPULATION OF SETTLEMENT
AND RELEASE

32.

CASE NO. 4:17-CV-07272-YGR

**EXHIBIT A**

1   Shaun Setareh (SBN 204514)
        shaun@setarehlaw.com
2   H. Scott Leviant (SBN 200834)
        scott@setarehlaw.com
3   **SETAREH LAW GROUP**
    9454 Wilshire Boulevard, Suite 907
4   Beverly Hills, California  90212
    Telephone:     (310) 888-7771
5   Facsimile:     (310) 888-0109

6   Attorneys for Plaintiff THEODORE A. EMETOH

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  THEODORE A. EMETOH, on behalf of himself,       Case No.: 3:17-cv-07272-YGR
    all others similarly situated,
12                                                   <u>CLASS ACTION</u>
                    Plaintiff,
13                                                   **SECOND AMENDED COMPLAINT**
            vs.
14                                                      1.  Failure to Provide Meal Periods (Lab.
    FEDEX FREIGHT, INC., an Arkansas                        Code §§ 204, 223, 226.7, 512 and 1198);
15  corporation; and DOES 1 through 50, inclusive,     2.  Failure to Provide Rest Periods (Lab.
                                                           Code §§ 204, 223, 226.7 and 1198);
16                  Defendants.                         3.  Failure to Pay Hourly Wages (Lab. Code
                                                           §§ 223, 510, 1194, 1194.2, 1197, 1997.1
17                                                          and 1198);
                                                       4.  Failure to Indemnify (Lab. Code § 2802);
18                                                     5.  Failure to Provide Accurate Written
                                                           Wage Statements (Lab. Code §§ 226(a));
19                                                     6.  Failure to Timely Pay All Final Wages
                                                           (Lab. Code §§ 201, 202 and 203);
20                                                     7.  Unfair Competition (Bus. & Prof. Code
                                                           §§ 17200 *et seq.*)
21                                                     8.  Civil Penalties (Lab. Code §§ 2698 *et
                                                           seq.*)
22

23                                                   <u>**JURY TRIAL DEMANDED**</u>

24                                                   Filed:        November 14, 2017
                                                     Removed:      December 22, 2017
25

26

27

28

1

TABLE OF CONTENTS

2

3    I.    INTRODUCTION ................................................................................................. 1

4    II.   JURISDICTON AND VENUE ........................................................................... 1

5    III.  PARTIES ............................................................................................................. 1

6    IV.   GENERAL ALLEGATIONS COMMON TO ALL CLAIMS ........................... 2

7          A.    Missed Meal Periods ............................................................................... 3

8          B.    Meal Periods and Off-the-Clock Work ................................................... 3

9          C.    On-Duty Meal Periods ............................................................................ 4

10         D.    Missed Rest Periods ................................................................................ 5

11         E.    Expense Reimbursement .......................................................................... 5

12         F.    Wage Statements ..................................................................................... 5

13   V.    CLASS ALLEGATIONS .................................................................................... 6

14   FIRST CLAIM FOR RELIEF ........................................................................................ 9

15   SECOND CLAIM FOR RELIEF ................................................................................. 11

16   THIRD CLAIM FOR RELIEF ..................................................................................... 12

17   FOURTH CLAIM FOR RELIEF ................................................................................. 15

18   FIFTH CLAIM FOR RELIEF ...................................................................................... 16

19   SIXTH CLAIM FOR RELIEF ..................................................................................... 17

20   SEVENTH CLAIM FOR RELIEF ............................................................................... 19

21   EIGHTH CLAIM FOR RELIEF .................................................................................. 21

22   PRAYER FOR RELIEF ............................................................................................... 23

23   DEMAND FOR JURY TRIAL .................................................................................... 24

24

25

26

27

28

COMES NOW, Plaintiff THEODORE A. EMETOH ("Plaintiff"), on behalf of himself, all others similarly situated, and the general public, complains and alleges as follows:

## I.      **INTRODUCTION**

1.      Plaintiff brings this class and representative action against Defendant FEDEX FREIGHT, INC., an Arkansas corporation; and DOES 1 through 50, inclusive (collectively referred to as "Defendants") for alleged violations of the Labor Code and Business and Professions Code.  As set forth below, Plaintiff alleges that Defendants have:

        (a)      failed to provide him and all other similarly situated individuals with meal periods;

        (b)      failed to provide them with rest periods;

        (c)      failed to pay them premium wages for missed meal and/or rest periods;

        (d)      failed to pay them at least minimum wage for all hours worked;

        (e)      failed to pay them for all vested vacation pay and/or floating holidays;

        (f)      failed to reimburse them for all necessary business expenses;

        (g)      failed to provide them with accurate written wage statements; and

        (h)      failed to pay them all of their final wages following separation of employment.

Based on these alleged Labor Code violations, Plaintiff now brings this class and representative action to recover unpaid wages, restitution and related relief on behalf of himself, all others similarly situated, and the general public.

## II.      **JURISDICTON AND VENUE**

2.      Venue is proper in this District under 28 U.S.C. section 1391(b)(2) and (c) because a substantial part of the events and omissions giving rise to the claims alleged in this complaint occurred in this District.

3.      This Court has personal jurisdiction over this matter because Defendants conduct substantial business activity in this District, and because many of the unlawful acts described in this complaint occurred in this District and gave rise to the claims alleged.

## III.      **PARTIES**

4.      Plaintiff THEODORE A. EMETOH is, and at all relevant times mentioned herein, an individual residing in the State of California.

5.   Plaintiff is informed and believes, and thereupon alleges that Defendant FEDEX FREIGHT, INC. is, and at all relevant times mentioned herein, an Arkansas corporation doing business in the State of California.

6.   Plaintiff is ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 50, inclusive, and therefore sue these defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of the DOE defendants when ascertained. Plaintiff is informed and believes, and thereupon alleges that each of the fictitiously named defendants are responsible in some manner for the occurrences, acts and omissions alleged herein and that Plaintiff's alleged damages were proximately caused by these defendants, and each of them. Plaintiff will amend this complaint to allege both the true names and capacities of the DOE defendants when ascertained.

7.   Plaintiff is informed and believes, and thereupon alleges that, at all relevant times mentioned herein, some or all of the defendants were the representatives, agents, employees, partners, directors, associates, joint venturers, principals or co-participants of some or all of the other defendants, and in doing the things alleged herein, were acting within the course and scope of such relationship and with the full knowledge, consent and ratification by such other defendants.

8.   Plaintiff is informed and believes, and thereupon alleges that, at all relevant times mentioned herein, some of the defendants pursued a common course of conduct, acted in concert and conspired with one another, and aided and abetted one another to accomplish the occurrences, acts and omissions alleged herein.

## IV.   GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

9.   Plaintiff was hired by Defendants as a non-exempt, hourly employee from approximately February 2006 through July 14, 2017. Plaintiff worked as a long-haul truck driver transporting goods in interstate commerce.

10.   Plaintiff's job duties fell within the definition of being in the "Transportation Industry" as defined in Section 2 of the Industrial Welfare Commission Wage Order 9-2001 ("Wage Order"). Accordingly, Plaintiff was entitled to the protections of the Labor Code and the applicable Wage Order.

11.   Plaintiff and the putative class regularly worked through their meal periods and/or took his meal periods after the fifth hour as he was driving long distances and needed to arrive at his designated

drop off location by a certain time.

12.     Even though Plaintiff and the putative class did not take their meal periods and/or took them after the fifth hour, they would be required to sign a "Kronos Edit Form" on those days each time by their manager deducting thirty minutes for a purported meal period that they did not take.

13.     Defendants knew or should have known that Plaintiff and the putative class did not take their meal periods and/or took them after the fifth hour and so should not have required Plaintiff and the putative class to sign a "Kronos Edit Form" purporting to authorize the deduction of thirty minutes as a meal period when they did not take their meal periods and/or took them after the fifth hour.

**A.      Missed Meal Periods**

14.     Plaintiff and the putative class members were not provided with meal periods of at least thirty (30) minutes for each five (5) hour work period due to (1) Defendants' policy of not scheduling each meal period as part of each work shift; (2) chronically understaffing each work shift with not enough workers; (3) imposing so much work on each employee such that it made it unlikely that an employee would be able to take their breaks if they wanted to finish their work on time; and (4) no formal written meal and rest period policy that encouraged employees to take their meal and rest periods.

15.     As a result of Defendants' policy, Plaintiff and the putative class were regularly not provided with uninterrupted meal periods of at least thirty (30) minutes for each five (5) hours worked due to complying with Defendants' productivity requirements that required Plaintiff and the putative class to work through their meal periods in order to complete their assignments on time.

**B.      Meal Periods and Off-the-Clock Work**

16.     Plaintiff and the putative class were not paid all wages earned as Defendants directed, permitted or otherwise encouraged Plaintiff and the putative class to perform off-the-clock work.

17.     When Plaintiff and the putative class were unable to take their meal periods and/or took them after the fifth hour, they were required to sign a "Kronos Edit Form" authorizing the deduction of thirty minutes from their daily hours worked for purported meal periods, even though Plaintiff and the putative class were unable to take their meal periods and/or took them after the fifth hour of work.

18.     As a result of performing off-the-clock work that was directed, permitted or otherwise encouraged by Defendants, Plaintiff and the putative class should have been paid for this time.  Instead,

Defendants only paid Plaintiff and the putative class based on the time they were "on the clock" and did not pay Plaintiff and the putative class for the time that was deducted based on the Kronos Edit Forms they were required to sign.

19. Defendants knew or should have known that Plaintiff and the putative class did not take their meal periods and/or took them after the fifth hour and failed to pay Plaintiff and the putative class for these hours.

20. Defendants were aware of this practice and directed, permitted or otherwise encouraged Plaintiff and the putative class to perform off-the-clock work.

21. As a result of Defendants' policies and practices, Plaintiff and the putative class were not paid for all hours worked.

**C.      On-Duty Meal Periods**

22. Plaintiff and the putative class were directed by Defendants to always have their cellphones with them during each shift. Plaintiff is informed and believes that the purpose for this requirement was to permit Defendants to provide instructions to him at any time Defendants chose, which was consistent with the fact that Plaintiff and putative class members were instructed that they were expected to take any calls that came in from their supervisors at any time.

23. Even if they were on a meal period, Defendants even required and directed Plaintiff and the putative class to have their cellphones with them and required Plaintiff and the putative class to take calls that came in during meal periods.

24. During his shifts, there were many occasions when Plaintiff took calls on his cellphone while he was on a meal period.

25. As a result of Defendants' policies and practices, Plaintiff and the putative class were not provided with at least thirty minutes, uninterrupted meal periods during which they were relieved of all duty as they were (1) required to have their cellphones with them at all times; and (2) required to take any calls that came in.

26. As a result of Defendants' policies and practices, Plaintiff and the putative class were not paid for the time spent where they were not relieved of all duty and/or took calls while they were on a meal period.

27.     Therefore, as an alternative theory of liability to Plaintiff's allegations of missed, late, short, or interrupted meal periods set forth above, the practices, procedures, requirements, and/or policies of Defendants imposed on-duty meal periods upon Plaintiff and the putative class, an arrangement that Plaintiff did not agree to and, to Plaintiff's knowledge, no member of the putative class agreed to.

### D.     Missed Rest Periods

28.     Plaintiff and the putative class members were not provided with rest periods of at least ten (10) minutes for each four (4) hour work period, or major fraction thereof, due to (1) Defendants' policy of not scheduling each rest period as part of each work shift; (2) chronically understaffing each work shift with not enough workers; (3) imposing so much work on each employee such that it made it unlikely that an employee would be able to take their breaks if they wanted to finish their work on time; and (4) no formal written meal and rest period policy that encouraged employees to take their meal and rest periods. As a result of Defendants' policy, Plaintiff and the putative class were regularly not provided with uninterrupted rest periods of at least ten (10) minutes for each four (4) hours worked due to complying with Defendants' productivity requirements that required Plaintiff and the putative class to work through their rest periods in order to complete their assignments on time.

### E.     Expense Reimbursement

29.     Plaintiff and the putative class members were required to utilize their own personal cell phones to take calls during the course of business from dispatch in order to notify them of their daily assignments, changes to their routes and/or schedules, and other necessary information for them to complete their jobs.

30.     Plaintiff and the putative class members were not reimbursed for business expenses incurred in the use of their personal cell phones.

31.     Defendants failed to reimburse Plaintiff and the putative class for such necessary business expenses incurred by them.

### F.     Wage Statements

32.     Plaintiff and the putative class were not provided with accurate wage statements as mandated by law pursuant to Labor Code section 226.

33.     Defendants failed to comply with Labor Code section 226(a)(1) as "gross wages earned" were not accurately reflected in that: (1) all hours worked, including overtime, were not included; and (2) any and all meal and/or rest period premium wages were not paid.

34.     Defendants failed to comply with Labor Code section 226(a)(2) as "total hours worked by the employee" were not accurately reflected in that: all hours worked, including overtime, were not included.

35.     Defendants failed to comply with Labor Code section 226(a)(5) as "net wages earned" were not accurately reflected in that: (1) all hours worked, including overtime, were not included; and (2) any and all meal and/or rest period premium wages were not paid.

36.     Defendants failed to comply with Labor Code section 226(a)(9) as "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee" were not accurately reflected in that: all hours worked, including overtime, were not included.

## V.     CLASS ALLEGATIONS

37.     This action has been brought and may be maintained as a class action pursuant to Federal Rules of Civil Procedure 23 because there is a well-defined community of interest among the persons who comprise the readily ascertainable classes defined below and because Plaintiff is unaware of any difficulties likely to be encountered in managing this case as a class action.

38.     **Relevant Time Period**:  The relevant time period is defined as the time period beginning four years prior to the filing of this action until judgment is entered.

39.     **Truck Driver Class**:  All persons employed by Defendants and/or any staffing agencies and/or any other third parties in hourly or non-exempt positions in California during the **Relevant Time Period**; excluding claims released by California-based employees who worked for Defendants as Road Drivers or other drivers paid by the hour to the extent they performed road runs paid on a piece rate basis, in California on or after January 28, 2012 through December 31, 2015.

> **Truck Driver Meal Period Sub-Class**:  All **Trucker Driver Class** members who worked in a shift in excess of five hours during the **Relevant Time Period**.
>
> **Truck Driver Rest Period Sub-Class**:  All **Truck Driver Class** members who worked a shift of at least three and one-half (3.5) hours during the **Relevant Time**

1    **Period**.

2    **Truck Driver Wage Statement Penalties Sub-Class**: All **Truck Driver Class**
     members employed by Defendants in California during the period beginning one year
3    before the filing of this action and ending when final judgment is entered.

4    **Truck Driver Expense Reimbursement Sub-Class**: All **Truck Driver Class**
     members employed by Defendants in California who incurred business expenses during
5    the **Relevant Time Period**.

6    **Truck Driver Waiting Time Penalties Sub-Class**: All **Truck Driver Class** members
     who separated from their employment with Defendants during the period beginning
7    three years before the filing of this action and ending when final judgment is entered.

8    **Waiting Time Penalties Class**: All exempt and non-exempt employees who separated
     from their employment with Defendants during the period beginning three years before
9    the filing of this action and ending when final judgment is entered.

10   **UCL Class**: All **Truck Driver Class** members employed by Defendants in California
     during the **Relevant Time Period**.
11

12        40.    **Reservation of Rights**:  Plaintiff reserves the right to amend or modify the class

13   definitions with greater specificity, by further division into sub-classes and/or by limitation to particular

14   issues.

15        41.    **Numerosity**:  The class members are so numerous that the individual joinder of each

16   individual class member is impractical.  While Plaintiff does not currently know the exact number of class

17   members, Plaintiff is informed and believes, and thereupon alleges that the actual number exceeds the

18   minimum required for numerosity under California law.

19        42.    **Commonality and Predominance**:  Common questions of law and fact exist as to all

20   class members and predominate over any questions which affect only individual class members.  These

21   common questions include, but are not limited to:

22        (a)    Whether Defendants maintained a policy or practice of failing to provide

23               employees with their meal periods;

24        (b)    Whether Defendants maintained a policy or practice of failing to provide

25               employees with their rest periods;

26        (c)    Whether Defendants failed to pay premium wages to class members when they

27               have not been provided with required meal and/or rest periods;

28        (d)    Whether Defendants failed to pay minimum and/or overtime wages to class

members as a result of policies that fail to provide meal periods in accordance with California law;

(e)    Whether Defendants failed to reimburse class members for all necessary business expenses incurred during the discharge of their duties;

(f)    Whether Defendants failed to provide class members with accurate written wage statements as a result of providing them with written wage statements with inaccurate entries for, among other things, amounts of gross and net wages, and total hours worked;

(g)    Whether Defendants applied policies or practices that result in late and/or incomplete final wage payments;

(h)    Whether Defendants are liable to class members for waiting time penalties under Labor Code section 203;

(i)    Whether class members are entitled to restitution of money or property that Defendants may have acquired from them through unfair competition;

43.    **Typicality:**  Plaintiff's claims are typical of the other class members' claims.  Plaintiff is informed and believes and thereupon alleges that Defendants have a policy or practice of failing to comply with the Labor Code and Business and Professions Code as alleged in this Complaint.

44.    **Adequacy of Class Representative:**  Plaintiff is an adequate class representative in that he has no interests that are adverse to, or otherwise conflict with, the interests of absent class members and is dedicated to vigorously prosecuting this action on their behalf.  Plaintiff will fairly and adequately represent and protect the interests of the other class members.

45.    **Adequacy of Class Counsel:**  Plaintiff's counsel are adequate class counsel in that they have no known conflicts of interest with Plaintiff or absent class members, are experienced in wage and hour class action litigation, and are dedicated to vigorously prosecuting this action on behalf of Plaintiff and absent class members.

46.    **Superiority:**  A class action is vastly superior to other available means for fair and efficient adjudication of the class members' claims and would be beneficial to the parties and the Court. Class action treatment will allow a number of similarly situated persons to simultaneously and efficiently

1  prosecute their common claims in a single forum without the unnecessary duplication of effort and

2  expense that numerous individual actions would entail.  In addition, the monetary amounts due to many

3  individual class members are likely to be relatively small and would thus make I difficult, if not

4  impossible, for individual class members to both seek and obtain relief.  Moreover, a class action will

5  serve an important public interest by permitting class members to effectively pursue the recovery of

6  monies owed to them.  Further, a class action will prevent the potential for inconsistent or contradictory

7  judgments inherent in individual litigation.

8  ### FIRST CLAIM FOR RELIEF

9  ### FAILURE TO PROVIDE MEAL PERIODS

10  ### (Lab. Code §§ 004, 223, 226.7, 512 and 1198)

11  ### (Plaintiff and Truck Driver Meal Period Sub-Class)

12  47.    Plaintiff incorporates by reference the preceding paragraphs of the Complaint as if fully

13  alleged herein.

14  48.    At all relevant times, Plaintiff and the **Truck Driver Meal Period Sub-Class** members

15  have been non-exempt employees of Defendant entitled to the full meal period protections of both the

16  Labor Code and the applicable Industrial Welfare Commission Wage Order.

17  49.    Labor Code section 512 and Section 11 of the applicable Industrial Welfare Commission

18  Wage Order impose an affirmative obligation on employers to provide non-exempt employees with

19  uninterrupted, duty-free meal periods of at least thirty minutes for each work period of five hours, and to

20  provide them with two uninterrupted, duty-free meal periods of at least thirty minutes for each work period

21  of ten hours.

22  50.    Labor Code section 226.7 and Section 11 of the applicable Industrial Welfare Commission

23  Wage Order ("Wage Order") both prohibit employers from requiring employees to work during required

24  meal periods and require employers to pay non-exempt employees an hour of premium wages on each

25  workday that the employee is not provided with the required meal period.

26  51.    Compensation for missed meal periods constitutes wages within the meaning of Labor

27  Code section 200.

28  52.    Labor Code section 1198 makes it unlawful to employ a person under conditions that

1   violate the applicable Wage Order.

2       53.    Section 11 of the applicable Wage Order states:

3   "No employer shall employ any person for a work period of more than five (5) hours
    without a meal period of not less than 30 minutes, except that when a work period of
4   not more than six (6) hours will complete the day's work the meal period may be
    waived by mutual consent of the employer and employee.  Unless the employee is
5   relieved of all duty during a 30 minute meal period, the meal period shall be considered
    an 'on duty' meal period and counted as time worked.  An 'on duty' meal period shall
6   be permitted only when the nature of the work prevents an employee from being
    relieved of all duty and when by written agreement between the parties an on-the-job
7   paid meal period is agreed to.  The written agreement shall state that the employee may,
    in writing, revoke the agreement at any time."
8

9       54.    At all relevant times, Plaintiff was not subject to a valid on-duty meal period agreement.

10  Plaintiff is informed and believes that, at all relevant times, **Truck Driver Meal Period Sub-Class**

11  members were not subject to valid on-duty meal period agreements with Defendants.

12      55.    Plaintiff alleges that, at all relevant times during the applicable limitations period,

13  Defendants maintained a policy or practice of not providing Plaintiff and members of the **Truck Driver**

14  **Meal Period Sub-Class** with uninterrupted, duty-free meal periods for at least thirty (30) minutes for each

15  five (5) hour work period, as required by Labor Code section 512 ad the applicable Wage Order.

16      56.    Plaintiff alleges that, at all relevant times during the applicable limitations period,

17  Defendants maintained a policy or practice of failing to pay premium wages to **Truck Driver Meal**

18  **Period Sub-Class** members when they worked five (5) hours without clocking out for any meal period.

19      57.    Plaintiff alleges that, at all relevant times during the applicable limitations period,

20  Defendants maintained a policy or practice of automatically deducting one-half hour for a meal period

21  from the paychecks of **Truck Driver Meal Period Sub-Class** members on each day they worked,

22  regardless of whether or not they were able to take an uninterrupted, duty-free meal period.

23      58.    Plaintiff alleges that, at all relevant times during the applicable limitations period,

24  Defendants maintained a policy or practice of not providing Plaintiff and members of the **Truck Driver**

25  **Meal Period Sub-Class** with a second meal period when they worked shifts of ten or more hours and

26  failed to pay them premium wages as required by Labor Code 512 and the applicable Wage Order.

27      59.    At all relevant times, Defendants failed to pay Plaintiff and the **Truck Driver Meal**

28  **Period Sub-Class** members additional premium wages, and/or were not paid premium wages at the

1    employees' regular rates of pay when required meal periods were not provided.

2        60.    Pursuant to Labor Code section 204, 218.6 and 226.7, Plaintiff, on behalf of himself and

3    the **Truck Driver Meal Period Sub-Class** members, seek to recover unpaid premium wages, interest

4    thereon, and costs of suit.

5        61.    Pursuant to Labor Code section 1194, Code of Civil Procedure section 1021.5, the

6    substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of himself and the

7    **Truck Driver Meal Period Sub-Class** members, seek to recover reasonable attorneys' fees.

8    **SECOND CLAIM FOR RELIEF**

9    **FAILURE TO PROVIDE REST PERIODS**

10   **(Lab. Code §§ 204, 223, 226.7 and 1198)**

11   **(Plaintiff and Truck Driver Rest Period Sub-Class)**

12       62.    Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

13       63.    At all relevant times, Plaintiff and the **Truck Driver Rest Period Sub-Class** members

14   have been non-exempt employees of Defendants entitled to the full rest period protections of both the

15   Labor Code and the applicable Wage Order.

16       64.    Section 12 of the applicable Wage Order imposes an affirmative obligation on employers

17   to permit and authorize employees to take required rest periods at a rate of no less than ten minutes of net

18   rest time for each four hour work period, or major fraction thereof, that must be in the middle of each work

19   period insofar as practicable.

20       65.    Labor Code section 226.7 and Section 12 of the applicable Wage Order both prohibit

21   employers from requiring employees to work during required rest periods and require employers to pay

22   non-exempt employees an hour of premium wages at the employees' regular rates of pay, on each

23   workday that the employee is not provided with the required rest period(s).

24       66.    Compensation for missed rest periods constitutes wages within the meaning of Labor Code

25   section 200.

26       67.    Labor Code section 1198 makes it unlawful to employ a person under conditions that

27   violate the Wage Order.

28       68.    Plaintiff alleges that, at all relevant times during the applicable limitations period,

Defendants maintained a policy or practice of not providing members of the **Truck Driver Rest Period Sub-Class** with net rest period of at least ten minutes for each four hour work period, or major fraction thereof, as required by the applicable Wage Order.

69. At all relevant times, Defendants failed to pay Plaintiff and the **Truck Driver Rest Period Sub-Class** members additional premium wages when required rest periods were not provided.

70. Pursuant to Labor Code section 204, 218.6 and 226.7, Plaintiff, on behalf of himself and **Truck Driver Rest Period Sub-Class** members, seek to recover unpaid premium wages, interest thereon, and costs of suit.

71. Pursuant to Labor Code section 1194, Code of Civil Procedure section 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of himself and **Truck Driver Rest Period Sub-Class** members, seek to recover reasonable attorneys' fees.

<u>**THIRD CLAIM FOR RELIEF**</u>

**FAILURE TO PAY HOURLY AND OVERTIME WAGES**

**(Lab. Code §§ 223, 510, 1194, 1197 and 1198)**

**(Plaintiff and Truck Driver Class)**

72. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

73. At all relevant times, Plaintiff and **Truck Driver Class** members are or have been non-exempt employees of Defendants entitled to the full protections of the Labor Code and the applicable Wage Order.

74. Section 2 of the applicable Wage Order defines "hours worked" as "the time during which an employee is subject to the control of the employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

75. Section 4 of the applicable Wage Order requires an employer to pay non-exempt employees at least the minimum wage set forth therein for all hours worked, which consist of all hours that an employer has actual or constructive knowledge that employees are working.

76. Labor Code section 1194 invalidates any agreement between an employer and an employee to work for less than the minimum or overtime wage required under the applicable Wage Order.

77. Labor Code section 1194.2 entitles non-exempt employees to recover liquidated damages

1   in amounts equal to the amounts of unpaid minimum wages and interest thereon in addition to the

2   underlying unpaid minimum wages and interest thereon.

3       78.     Labor Code section 1197 makes it unlawful for an employer to pay an employee less than

4   the minimum wage required under the applicable Wage Order for all hours worked during a payroll

5   period.

6       79.     Labor Code section 1197.1 provides that it is unlawful for any employer or any other

7   person acting either individually or as an officer, agent or employee of another person, to pay an

8   employee, or cause an employee to be paid, less than the applicable minimum wage.

9       80.     Labor Code section 1198 makes it unlawful for employers to employ employees under

10   conditions that violate the applicable Wage Order.

11       81.     Labor Code section 204 requires employers to pay non-exempt employees their earned

12   wages for the normal work period at least twice during each calendar month on days the employer

13   designates in advance and to pay non-exempt employees their earned wages for labor performed in excess

14   of the normal work period by no later than the next regular payday.

15       82.     Labor Code section 223 makes it unlawful for employers to pay their employees lower

16   wages than required by contract or statute while purporting to pay them legal wages.

17       83.     Labor Code section 510 and Section 3 of the applicable Wage Order require employees to

18   pay non-exempt employees overtime wages of no less than one and one-half times their respective regular

19   rates of pay for all hours worked in excess of eight hours in one workday, all hours worked in excess of

20   forty hours in one workweek, and/or for the first eight hours worked on the seventh consecutive day of one

21   workweek.

22       84.     Labor Code section 510 and Section 3 of the applicable Wage Order also require

23   employers to pay non-exempt employees overtime wages of no less than two times their respective regular

24   rates of pay for all hours worked in excess of twelve hours in one workday and for all hours worked in

25   excess of eight hours on a seventh consecutive workday during the workweek.

26       85.     Plaintiff is informed and believes that, at all relevant times, Defendants have applied

27   centrally devised policies and practices to her and **Truck Driver Class** members with respect to working

28   conditions and compensation arrangements.

86.     At all relevant times, Defendants failed to pay hourly wages to Plaintiff and **Truck Driver Class** members for all time worked, including but not limited to, overtime hours at statutory and/or agreed rates.

87.     At all relevant times during the applicable limitations period, Defendants maintained a policy or practice of automatically deducting one-half hour from Plaintiff's timecard on every workday for a meal period, regardless of whether or not Plaintiff was provided with a meal period.

88.     Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of automatically deducting one-half hour from **Truck Driver Class** members' timecard on every workday for a meal period, regardless of whether or not **Truck Driver Class** members were provided with a meal period.

89.     As a result of Defendants' policy or practice of automatically deducting one-half hour from employees' timecards for every workday for a meal period, Plaintiff and **Truck Driver Class** members were required to perform off-the-clock work that Defendants either knew or should have known they were working.

90.     At all relevant times, Defendants failed to pay hourly wages to Plaintiff for all time worked, including but not limited to, overtime wages at statutory and/or agreed rates by suffering or permitting her to work during unpaid meal periods and/or failing to properly pay Plaintiff for all overtime hours worked.

91.     Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of not paying hourly wages to **Truck Driver Class** members for all time worked, including but not limited to, minimum wage and/or overtime hours at statutory and/or agreed rates by suffering or permitting them to work during unpaid meal periods.

92.     Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of not paying hourly wages to **Truck Driver Class** members for all time worked, including but not limited to, minimum wage and/or overtime hours at statutory and/or agreed rates by suffering or permitting them to work during on-duty meal periods.

93.     During the relevant time period, Defendants failed to pay Plaintiff and **Truck Driver Class** members all earned wages every pay period at the correct rates, including minimum wage and/or

overtime rates, because Defendants directed, permitted or otherwise encouraged Plaintiff and **Truck Driver Class** members to perform off-the-clock work.

94.     As a result of Defendants' unlawful conduct, Plaintiff and **Truck Driver Class** members have suffered damages in an amount, subject to proof, to the extent they were not paid the full amount of wages earned during each pay period during the applicable limitations period, including overtime wages.

95.     Pursuant to Labor Code sections 204, 218.6, 223, 510, 1194 and 1194.2, Plaintiff, on behalf of himself and **Truck Driver Class** members, seek to recover unpaid straight time and overtime wages, interest thereon and costs of suit.

96.     Pursuant to Labor Code section 1194, Code of Civil Procedure section 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of himself and **Truck Driver Class** members, seek to recover reasonable attorneys' fees.

## FOURTH CLAIM FOR RELIEF

### FAILURE TO INDEMNIFY

### (Lab. Code § 2802)

### (Plaintiff and Truck Driver Expense Reimbursement Sub-Class)

97.     Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

98.     Labor Code section 2802(a) states:

"An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."

99.     At all relevant times during the applicable limitations period, Plaintiff and the **Truck Driver Expense Reimbursement Sub-Class** members incurred necessary business related expenses and costs, including but not limited to, regular use of personal cellphone during the course of business.

100.    Plaintiff is informed and believes, and thereupon alleges that the reimbursement paid by Defendants was insufficient to indemnify Plaintiff and **Truck Driver Expense Reimbursement Sub-Class** members for all necessary expenses incurred in the discharge of their duties.

101.    Plaintiff is informed and believes and thereupon alleges that the reimbursement paid by Defendants was insufficient to indemnify **Truck Driver Expense Reimbursement Sub-Class** members

1   for all necessary business expenses incurred in the discharge of their duties.

2   102.   Plaintiff is informed and believes that, during the applicable limitations period, Defendants

3   maintained a policy or practice of not reimbursing Plaintiff and **Truck Driver Expense Reimbursement**

4   **Sub-Class** members for all necessary business expenses.

5   103.   Accordingly, Plaintiff and **Truck Driver Expense Reimbursement Sub-Class** members

6   are entitled to restitution for all unpaid amounts due and owing to within four years of the date of the filing

7   of the Complaint and until the date of entry of judgment.

8   104.   Plaintiff, on behalf of himself, and **Truck Driver Expense Reimbursement Sub-Class**

9   members, seek interest thereon and costs pursuant to Labor Code section 218.6, and reasonable attorneys'

10   fees pursuant to Code of Civil Procedure section 1021.5.

11   ## FIFTH CLAIM FOR RELIEF

12   ## FAILURE TO PROVIDE ACCURATE WRITTEN WAGE STATEMENTS

13   ### (Lab. Code § 226)

14   ### (Plaintiff and Truck Driver Wage Statement Penalties Sub-Class)

15   105.   Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

16   106.   Labor Code section 226(a) states:

17   "An employer, semimonthly or at the time of each payment of wages, shall furnish to
his or her employee, either as a detachable part of the check, draft, or voucher paying

18   the employee's wages, or separately if wages are paid by personal check or cash, an
accurate itemized statement in writing showing (1) gross wages earned, (2) total hours

19   worked by the employee, except as provided in subdivision (j), (3) the number of piece-
rate units earned and any applicable piece rate if the employee is paid on a piece-rate

20   basis, (4) all deductions, provided that all deductions made on written orders of the
employee may be aggregated and shown as one item, (5) net wages earned, (6) the

21   inclusive dates of the period for which the employee is paid, (7) the name of the
employee and only the last four digits of his or her social security number or an

22   employee identification number other than a social security number, (8) the name and
address of the legal entity that is the employer and, if the employer is a farm labor

23   contractor, as defined in subdivision (b) of Section 1682, the name and address of the
legal entity that secured the services of the employer, and (9) all applicable hourly rates

24   in effect during the pay period and the corresponding number of hours worked at each
hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary

25   services employer as defined in Section 201.3, the rate of pay and the total hours
worked for each temporary services assignment.  The deductions made from payment

26   of wages shall be recorded in ink or other indelible form, properly dated, showing the
month, day, and year, and a copy of the statement and the record of the deductions shall

27   be kept on file by the employer for at least three years at the place of employment or at
a central location within the State of California.  For purposes of this subdivision,

28   'copy' includes a duplicate of the itemized statement provided to an employee or a

computer-generated record that accurately shows all of the information required by this subdivision."

107.    Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, Defendants have failed to provide **Truck Driver Wage Statement Penalties Sub-Class** members with written wage statements as described above.

108.    Plaintiff is informed and believes that Defendants' failure to provide her and **Truck Driver Wage Statement Penalties Sub-Class** members with accurate written wage statements were intentional in that Defendants have the ability to provide them with accurate wage statements but have intentionally provided them with written wage statements that Defendants have known do not comply with Labor Code section 226(a).

109.    Plaintiff and **Truck Driver Wage Statement Penalties Sub-Class** members have suffered injuries, in that Defendants have violated their legal rights to receive accurate wage statements and have misled them about their actual rates of pay and wages earned.  In addition, inaccurate information on their wage statements have prevented immediate challenges to Defendants' unlawful pay practices, has required discovery and mathematical computations to determine the amount of wages owed, has caused difficulty and expense in attempting to reconstruct time and pay records, and/or has led to the submission of inaccurate information about wages and deductions to federal and state government agencies.

110.    Pursuant to Labor Code section 226(e), Plaintiff, on behalf of himself and **Truck Driver Wage Statement Penalties Sub-Class** members, seek the greater of actual damages or $50.00 for the initial pay period in which a violation of Labor Code section 226(a) occurred, and $100.00 for each subsequent pay period in which a violation of Labor Code section 226(a) occurred, not to exceed an aggregate penalty of $4000.00 per class member, as well as awards of reasonable attorneys' fees and costs.

## SIXTH CLAIM FOR RELIEF

### FAILURE TO TIMELY PAY ALL FINAL WAGES

### (Lab. Code §§ 201-203)

### (Plaintiff, Truck Driver Waiting Time Penalties Sub-Class and Waiting Time Penalties Class)

111.    Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

112.     At all relevant times, Plaintiff and **Truck Driver Waiting Time Penalties Sub-Class and Waiting Time Penalties Class** members have been entitled, upon the end of their employment with Defendants, to timely payment of all wages earned and unpaid before termination or resignation.

113.     At all relevant times, pursuant to Labor Code section 201, employees who have been discharged have been entitled to payment of all final wages immediately upon termination.

114.     At all relevant times, pursuant to Labor Code section 202, employees who have resigned after giving at least seventy-two (72) hours notice of resignation have been entitled to payment of all final wages at the time of resignation.

115.     At all relevant times, pursuant to Labor Code section 202, employees who have resigned after giving less than seventy-two (72) hours notice of resignation have been entitled to payment of all final wages within seventy-two (72) hours of giving notice of resignation.

116.     During the applicable limitations period, Defendants failed to pay Plaintiff all of her final wages in accordance with the Labor Code by failing to timely pay her all of her final wages.

117.     Plaintiff is informed and believes that, at all relevant time during the applicable limitations period, Defendants have failed to timely pay **Truck Driver Waiting Time Penalties Sub-Class and Waiting Time Penalties Class** members all of their final wages in accordance with the Labor Code.

118.     Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, Defendants have maintained a policy or practice of paying **Truck Driver Waiting Time Penalties Sub-Class and Waiting Time Penalties Class** members their final wages without regard to the requirements of Labor Code sections 201 or 202 by failing to timely pay them all final wages.

119.     Plaintiff is informed and believes and thereupon alleges that Defendants' failure to timely pay all final wages to her and **Truck Driver Waiting Time Penalties Sub-Class and Waiting Time Penalties Class** members have been willful in that Defendants have the ability to pay final wages in accordance with Labor Code sections 201 and/or 202 but have intentionally adopted policies or practices that are incompatible with those requirements.

120.     Pursuant to Labor Code sections 203 and 218.6, Plaintiff, on behalf of himself and **Truck Driver Waiting Time Penalties Sub-Class and Waiting Time Penalties Class** members, seek waiting time penalties from the dates that their final wages have first become due until paid, up to a maximum of

1    thirty days, and interest thereon.

2        121.    Pursuant to Code of Civil Procedure section 1021.5, the substantial benefit doctrine and/or

3    the common fund doctrine, Plaintiff, on behalf of himself and **Truck Driver Waiting Time Penalties**

4    **Sub-Class and Waiting Time Penalties Class** members, seek awards of reasonable attorneys' fees and

5    costs.

6                            **SEVENTH CLAIM FOR RELIEF**

7                              **UNFAIR COMPETITION**

8                        **(Bus. & Prof. Code §§ 17200 *et seq.*)**

9                          **(Plaintiff and UCL Class)**

10        122.    Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

11        123.    Business and Professions Code section 17200 defines "unfair competition" to include any

12   unlawful business practice.

13        124.    Business and Professions Code section 17203-17204 allow a person who has lost money or

14   property as a result of unfair competition to bring a class action to recover money or property that may

15   have been acquired from similarly situated persons by means of unfair competition.

16        125.    California law requires employers to pay hourly, non-exempt employees for all hours they

17   are permitted or suffered to work, including hours that the employer knows or reasonable should know

18   that employees have worked.

19        126.    Plaintiff and the **UCL Class** members re-alleges and incorporates the FIRST, SECOND,

20   THIRD and FOURTH Claims for Relief herein.

21        127.    Plaintiff lost money or property as a result of the aforementioned unfair competition.

22        128.    Defendants have or may have acquired money by means of unfair competition.

23        129.    Plaintiff is informed and believes and thereupon alleges that by committing the Labor

24   Code violations described in this Complaint, Defendants violated Labor Code sections 215, 216, 225,

25   226.6, 354, 408, 553, 1175, 1199 and 2802, which make it a misdemeanor to commit the Labor Code

26   violations alleged herein.

27        130.    Defendants have committed criminal conduct through their policies and practices of, *inter*

28   *alia*, failing to comport with their affirmative obligations as an employer to provide non-exempt

1  employees with uninterrupted, duty-free meal periods of at least thirty minutes for each work period of

2  five or more hours, failing to provide rest periods of at least ten minutes to non-exempt employees for

3  every four hours worked or major fraction thereof, failing to pay non-exempt employees for all hours

4  worked, and by failing to reimburse them for all expenses incurred in the discharge of their duties to

5  Defendants.

6     131.   At all relevant times, Plaintiff and **UCL Class** members have been non-exempt employees

7  and entitled to the full protections of both the Labor Code and the applicable Wage Order.

8     132.   Defendants' unlawful conduct as alleged in this Complaint amounts to and constitutes

9  unfair competition within the meaning of Business and Professions Code section 17200 *et seq*.  Business

10 and Professions Code sections 17200 *et seq*. protects against unfair competition and allows a person who

11 has suffered an injury-in-fact and has lost money or property as a result of an unfair, unlawful or

12 fraudulent business practice to seek restitution on her own behalf and on behalf of similarly situated

13 persons in a class action proceeding.

14    133.   As a result of Defendants' violations of the Labor Code during the applicable limitations

15 period, Plaintiff has suffered an injury-in-fact and has lost money or property in the form of earned wages.

16 Specifically, Plaintiff has lost money or property as a result of Defendants' conduct.

17    134.   Plaintiff is informed and believes that other similarly situated persons have been subject to

18 the same unlawful policies or practices of Defendants.

19    135.   Due to the unfair and unlawful business practices in violation of the Labor Code,

20 Defendants have gained a competitive advantage over other comparable companies doing business in the

21 State of California that comply with their legal obligations.

22    136.   California's Unfair Competition Law ("UCL") permits civil recovery and injunctive for

23 "any unlawful, unfair or fraudulent business act or practice," including if a practice or act violates or is

24 considered unlawful under any other state or federal law.

25    137.   Accordingly, pursuant to Bus. & Prof. Code sections 17200 and 17203, Plaintiffs request

26 the issuance of temporary, preliminary and permanent injunctive relief enjoining Defendants, and each of

27 them, and their agents and employees, from further violations of the Labor Code and applicable Industrial

28 Welfare Commission Wage Orders; and upon a final hearing seek an order permanently enjoining

1    Defendants, and each of them, and their respective agents and employees, from further violations of the

2    Labor Code and applicable Industrial Welfare Commission Wage Orders.

3         138.    Pursuant to Business and Professions Code section 17203, Plaintiff, on behalf of himself

4    and **UCL Class** members, seek declaratory relief and restitution of all monies rightfully belonging to them

5    that Defendants did not pay them or otherwise retained by means of its unlawful and unfair business

6    practices.

7         139.    Pursuant to Code of Civil Procedure section 1021.5, the substantial benefit doctrine and/or

8    the common fund doctrine, Plaintiff and **UCL Class** members are entitled to recover reasonable attorneys'

9    fees in connection with their unfair competition claims.

10                        **EIGHTH CLAIM FOR RELIEF**

11                              **CIVIL PENALTIES**

12                          **(Lab. Code §§ 2698 *et seq.*)**

13        140.    Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

14        141.    During the applicable limitations period, Defendants have violated Labor Code sections

15   201, 202, 203, 204, 223, 226(a), 226.7, 227.3, 510, 512, 1194, 1197, 1198 and 2802.

16        142.    Labor Code sections 2699(a) and (g) authorize an aggrieved employee, on behalf of herself

17   and other current and former employees, to bring a representative civil action to recover civil penalties

18   pursuant to the procedures set forth in Labor Code section 2699.3 that may, but need not, be brought or

19   maintained as a class action.

20        143.    Plaintiff, a former employee against who Defendants committed one or more of the alleged

21   Labor Code violations during the applicable limitations period, is an aggrieved employee within the

22   meaning of Labor Code section 2699(c).

23        144.    Plaintiff has complied with the procedures for bringing suit specified in Labor Code

24   section 2699.3.

25        145.    Pursuant to Labor Code sections 2699(a) and (f), Plaintiff seeks the following civil

26   penalties for Defendants' violations of Labor Code sections 201, 202, 203, 204, 223, 226(a), 226.7, 227.3,

27   510, 512, 1194, 1197, 1198 and 2802:

28            (a)    For violations of Labor Code sections 201, 202, 203, 212, 226.7, 227.3, 1194, 1198

and 2802, $100 for each employee per pay period for each initial violation and $200 for each employee per pay period for each subsequent violation (penalties set by Labor Code section 2699(f)(2));

(b) For violations of Labor Code section 203, a penalty in an amount not exceeding thirty days pay as waiting time (penalties set by Labor Code section 256);

(c) For violations of Labor Code section 204, $100 for each employee for each initial violation that was neither willful nor intentional, $200 for each employee, plus 25% of the amount unlawfully withheld from each employee, for each initial violation that was either willful or intentional, and $200 for each employee, plus 25% of the amount unlawfully withheld from each employee, for each subsequent violation, regardless of whether the subsequent violation was either willful or intentional (penalties set by Labor Code section 210);

(d) For violations of Labor Code section 223, $100 for each employee for each initial violation that was neither willful nor intentional, $200 for each employee, plus 25% of the amount unlawfully withheld from each employee, for each initial violation that was either willful or intentional, and $200 for each employee, plus 25% of the amount unlawfully withheld from each employee, for each subsequent violation, regardless of whether the subsequent violation was either willful or intentional (penalties set by Labor Code section 225.5);

(e) For violations of Labor Code section 226(a), if this action is deemed to be an initial citation, $250 for each employee for each violation. Alternatively, if an initial citation or its equivalent occurred before the filing of this action, $1,000 for each employee for each violation (penalties set by Labor Code section 226.3);

(f) For violation of Labor Code sections 510 and 512, $50 for each employee for each initial pay period for which the employee was underpaid, and $100 for each employee for each subsequent pay period for which the employee was underpaid (penalties set by Labor Code section 558);

(g) For violations of Labor Code section 1197, $100 for each aggrieved employee for

each initial violation of Labor Code section 1197 that was intentional, and $250 for each aggrieved employee per pay period for each subsequent violation of Labor Code section 1197, regardless of whether the initial violation was intentional (penalties set by Labor Code section 1197.1);

(h)   Pursuant to Labor Code section 2699(g), Plaintiff seeks award of reasonable attorneys' fees and costs in connection with her claims for civil penalties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for relief and judgment against Defendants as follows:

1. An order that the action be certified as a class action;
2. An order that Plaintiff be appointed class representative;
3. An order that counsel for Plaintiff be appointed class counsel;
4. Unpaid wages;
5. Actual damages;
6. Liquidated damages;
7. Restitution;
8. Declaratory relief;
9. Pre-judgment interest;
10. Statutory penalties;
11. Civil penalties;
12. Costs of suit;
13. Reasonable attorneys' fees; and
14. Such other relief as the Court deems just and proper.

# DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself, all other similarly situated, and the general public, hereby demands a jury trial on all issues so triable.

Respectfully submitted,

Dated: July 24, 2018,

**SETAREH LAW GROUP**

By: _____
Shaun Setareh
H. Scott Leviant

Attorneys for Plaintiff

# EXHIBIT B

**DATA DISPUTE FORM**
*Theodore A. Emetoh v. FedEx Freight, Inc.,*
United States District Court for the Northern District of California, Case No. 4:17-CV-07272-YGR

> **Your Estimated Claim Amount is <<EST. CLAIM AMOUNT>>**

The purpose of this form is to confirm the information the Settlement Administrator has on file for you. **IF YOU DO NOT DISPUTE THE BELOW INFORMATION, NO RESPONSE OR FURTHER ACTION IS REQUIRED BY YOU.** Your payment under the Settlement will be calculated using the below information.

If you feel that any of the information listed below is incorrect, you must provide all of the requested information, including attaching supporting documentation, and return this Data Dispute Form postmarked no later than **<<DATA DISPUTE DEADLINE>>**, to:

Settlement Administrator
<<ADDRESS>>
<<CITY, STATE ZIP>>

> **If you miss the deadline, your Claim Amount will be calculated using the below information.**

**A.     PLEASE VERIFY YOUR NAME AND ADDRESS:**

Name/Address Corrections (if any):

«First1» «Last1»
«c/o»
«Address1» «Address2»
«City»,«ST»  «ZIP»  «Country»

**B.     EMPLOYMENT INFORMATION:**

FedEx Freight, Inc.'s ("Defendant") records indicate that you were employed as a driver by Defendant and worked in California during the period from November 14, 2013 through December 1, 2019, excluding weeks that you performed no driving duties at all during the Sunday to Saturday workweek. This is the relevant time period which is being compromised in this action, except that for Road Drivers, the settlement class period for all but the cell phone reimbursement claim begins on January 1, 2016 through December 1, 2019 ("Class Period"). Defendant's records show the following:

Number of Workweeks of employment as a driver during Class Period in California                <<NUMBER OF WORK WEEKS >>

·   Road/Apprentice Drivers from 01/01/2016 to <<12/01/19 or date of preliminary approval, whichever is later>> for disputed wages.
·   Road/Apprentice Drivers from 11/14/2013 to <<12/01/19 or date of preliminary approval, whichever is later>>for disputed business expense reimbursement
·   City/Apprentice Drivers from 11/14/2013 to <<12/01/19 or date of preliminary approval, whichever is later>> for both disputed wages and disputed business expenses

Number of Workweeks of employment as a driver during PAGA Period from 11/09/2016 to <<12/01/19 or date of preliminary approval, whichever is later>>                <<NUMBER OF WORK WEEKS>>

Six additional Workweeks due to separation during the Class Period in California                <<ZERO OR SIX WORK WEEKS >>

If you disagree with the above information, please provide here the number of workweeks you believe is accurate and attach documentation in support of this information. (Please Note: Failure to provide documentation may result in rejection.) _____

**C.    YOUR ESTIMATED CLAIM AMOUNT: <<EST. CLAIM AMOUNT >>**

Your estimated Claim Amount is listed at the top of this Data Dispute Form and is based on the information in Section B above.  This estimated amount is calculated based on the Net Settlement Amount as described in the Joint Stipulation of Settlement and Release.

**D.    ACKNOWLEDGEMENTS, RELEASE, AND DECLARATION UNDER PENALTY OF PERJURY:**

I have received the Class Notice and submit this Data Dispute Form under the terms of the proposed Settlement described.  I acknowledge I am giving up the Released Claims against the Releasees as described in the Class Notice and summarized below.  I understand the full terms of the proposed Settlement are on file with the Court.

By participating in the settlement, I agree to provide the following release of claims to FedEx and the Released Parties:

Upon full and final payment by Defendant of the Gross Settlement Amount consistent with Section 6.11 of the First Amended Joint Stipulation of Settlement and Release I agree to fully, finally, and forever released the Released Parties from all Released Claims, as defined in Sections 1.8, 1.34 and 1.35 of the Agreement. I understand I shall be permanently enjoined and forever barred from prosecuting any and all Released Claims against the Released Parties.

I understand that "Released Parties" means FedEx Freight, Inc., Defendant, its past or present parents, subsidiaries, and officers, directors, shareholders, managers, employees, agents, attorneys, legal representatives, successors, assigns, and predecessors in interest, affiliates, related entities, third-party staffing agencies, and any individual or entity which could be jointly liable with FedEx Freight, Inc.

I understand that "Released Claims"  means any and all claims contained in the Second Amended Complaint (Complaint) and any additional wage and hour claims that could have been brought by the Plaintiff and the Class Members based on the facts alleged in said Complaint, for the Class Period as defined in Section 1.6 of the Agreement through the Preliminary Approval Date.

I understand "Released Claims" includes any and all claims for relief, whether suspected or unsuspected, which I have had, now have, or may discover in the future against the Released Parties or any of them for any or all claims alleged in the Complaint or which could have been alleged in the Complaint based on the allegations, facts, matters, transactions or occurrences alleged therein, and shall specifically include without limiting the generality thereof: claims for missed and/or unpaid meal periods and/or rest periods; failure to reimburse business expenses; failure to pay all wages owed (including without limitation, regular wages, the regular rate of pay, minimum wage, overtime pay, double time pay, premium pay or otherwise properly calculate overtime or the regular rate of pay, failure to pay employees for all hours worked, and/or off-the-clock claims); failure to properly pay all wages upon termination; any claim for failure to keep and/or maintain accurate records; unlawful deductions; failure to timely pay wages owed; claims for failure to provide accurate, itemized wage statements; waiting time penalties; and claims for PAGA penalties and/or unfair competition claims based on the foregoing. The Release of the foregoing claims extends to all theories of relief regardless of whether the claim is, was, or could have been alleged as separate claims, causes of action, lawsuits or based on other theories of relief, whether under California law, federal law, state law or common law (including, without limitation, as violations of the California Labor Code, the California Wage Orders, applicable regulations, California's Business and Professions Code section 17200 or under California's Private Attorneys General Act, and the Fair Labor Standards Act). "Released Claims" includes all types of relief available for the above-referenced claims, including, without limitation, any claims for damages,

restitution, losses, penalties, fines, liens, attorneys' fees, costs, expenses, debts, interest, injunctive relief, declaratory relief, or liquidated damages.

I understand "Released Claims" also includes an express waiver of all benefits under section 1542 of the California Civil Code as to the Released Claims only, as well as under any other federal or state statutes or common law principles of similar effect. Section 1542 provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

I understand the Section 1542 waiver releases all claims, known or unknown, within the definition of Released Claims, irrespective of the factual or legal basis for such claims. I have been informed in the Notice of Settlement and will be deemed to understand that Section 1542 gives me the right not to release existing claims of which I am not now aware, unless I voluntarily choose to waive this right. Having been so informed, I will be deemed to have voluntarily waive the rights described in Section 1542, and elected to assume all risks for claims that now exist in their favor, known or unknown, that fall within the scope of the Released Claims. The Final Judgment shall operate to preclude me from asserting any Released Claims in the future.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the information I provided above is true.

_____        _____
Dated                                                          Signature

Full Name (Print): _____

Last Four Social Security Number:  XXX -XX - ___ ___ ___ ___
*(Failure to sign and fill in each of the above information will result in the rejection of your dispute.)*

Email Address (for confirmation of receipt of this Data Dispute Form): _____
4847-8339-6518.2 057116.1023

**EXHIBIT C**

*Theodore A. Emetoh v. FedEx Freight, Inc.,* Case No. 4:17-CV-07272-YGR

# If you worked as a non-exempt, hourly-paid Road Driver, City Driver, or Driver Apprentice for FedEx Freight, Inc., in California, you could get a payment from a class action settlement.

*The United States District Court authorized this notice. This is not a solicitation from a lawyer.*

This document describes your rights with respect to the *Emetoh* class action. Please read it carefully. The details of the action and settlement are described below, but the relevant points are as follows:

- A settlement of a class action lawsuit for $3,250,000.00, will provide about $2,020,875.00 to pay claims by California Road Drivers, City Drivers, or Driver Apprentices employed by FedEx Freight, Inc., ("FedEx") from November 14, 2013 through <<December 1, 2019 or date of preliminary approval, whichever is later>>, except that for Road Drivers, the settlement class period for all but the cell phone reimbursement claim begins on January 1, 2016;
- The settlement resolves a lawsuit in which a Road Driver claimed that FedEx failed to pay all wages owed, failed to reimburse for business expenses, and failed to provide meal and rest periods to him and others similarly situated;
- FedEx denied all liability and vigorously defended its practices as lawful;
- The parties agreed that the settlement was reasonable to avoid the costs and risks associated with continuing the lawsuit;
- The settlement pays money to Road Drivers, City Drivers, or Driver Apprentices like you and releases FedEx from liability;
- Court-appointed lawyers for the Road Drivers, City Drivers, or Driver Apprentices will ask the Court for up to $1,082,250.00 from the settlement as fees (33-1/3% of the total settlement amount), and up to $20,000 for expenses for investigating the facts, litigating the case and negotiating the settlement;
- The two sides disagree on whether or not Plaintiff could have prevailed at trial and, if so, how much money could have been won;
- The Court in charge of this case still has to decide whether the settlement is fair and whether to approve the settlement. Payments will be made if the Court approves the settlement and after appeals are resolved. *Please be patient.*
- Your legal rights are affected whether you act, or do not act. These rights and options—**and the deadlines to exercise them**—are explained in this notice.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| DO NOTHING | You will be a part of the settlement and be bound by its terms. You will receive payment. |
| EXCLUDE YOURSELF (OPT OUT) | You may elect to opt out of the Settlement and not be bound by it. If you do so, you will get no payment, but you may be able to bring a lawsuit against FedEx. Your statement must be postmarked or fax stamped on or before ____, 2020. |
| OBJECT | Write to the Court about why you do not like the settlement. |
| GO TO A HEARING | Ask to speak in Court about the fairness of the settlement. |

BASIC INFORMATION …………………………………..……………… **PAGE 3**
    1. Why did I get this notice package?
    2. What is this lawsuit about?
    3. Why is this a class action?
    4. Why is there a settlement?

WHO IS IN THE SETTLEMENT……………………………….…… **PAGE 4**
    5. How do I know if I am part of the settlement?
    6. Are there exceptions to being included?
    7. I am still not sure if I am included.

THE SETTLEMENT BENEFITS—WHAT YOU GET………………….. **PAGE 4**
    8. What does the settlement provide?
    9. How much will my payment be?

HOW YOU GET A PAYMENT…………………….….……………….. **PAGE 5**
    10. How can I get a payment?
    11. When would I get my payment?
    12. What am I giving up to get a payment or stay in the Class? **PAGE 6**

EXCLUDING YOURSELF FROM THE SETTLEMENT………………… **PAGE 6**
    13. How do I get out of the settlement?
    14. If I do not exclude myself, can I sue FedEx for the same thing later?
    15. If I exclude myself, can I get money from this settlement?

THE LAWYERS REPRESENTING YOU………………………………... **PAGE 6**
    16. Do I have a lawyer in the case?
    17. How will the lawyers be paid? **PAGE 7**

OBJECTING TO THE SETTLEMENT……………….…..……………. **PAGE 7**
    18. How do I tell the Court that I do not like the settlement?
    19. What is the difference between objecting and excluding?

THE COURT'S FAIRNESS HEARING…………………………………. **PAGE 7**
    20. When and where will the Court decide whether to approve the settlement?
    21. Do I have to come to the hearing? **PAGE 8**
    22. May I speak at the hearing?

IF YOU DO NOTHING………………………….….………………… **PAGE 8**
    23. What happens if I do nothing at all?

GETTING MORE INFORMATION…………………………………….. **PAGE 8**
    24. Are there more details about the settlement?

# BASIC INFORMATION

## 1. Why did I get this notice package?

The records of FedEx Freight, Inc., ("FedEx") indicate you worked as a Road Driver, City Driver, or Driver Apprentice in California between November 14, 2013 and <<December 1, 2019 or date of preliminary approval, whichever is later>>. You were sent this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about all of your options before the Court decides whether to finally approve the settlement. If the Court approves it and after any objections and appeals are resolved, an administrator appointed by the Court will make the payments that the settlement allows.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court, Northern District of California, Oakland Division and the case is known as *Theodore A. Emetoh, et al. (Plaintiff) vs. FedEx Freight, Inc. (Defendant)*. The person who sued is called Plaintiff, and the company he sued, FedEx, is called Defendant.

## 2. What is this lawsuit about?

This lawsuit was initiated in 2017, by a Road Driver from the Mira Loma service center. It has been litigated for over two years in both state and federal court. The driver who brought the suit claimed that FedEx failed to pay all wages owed and failed to reimburse business expenses to him and to other California Road Drivers, City Drivers, or Driver Apprentices, including pay for missed meal and rest periods and pay for other work time as well as reimbursement for use of his personal cellular phone. The lawsuit also claimed FedEx failed to timely and fully pay final wages due at termination, and failed to furnish accurate itemized wage statements.

FedEx denied that it did anything wrong. FedEx contended that it properly paid all wages owed, properly provided meal and rest periods, provided lawful itemized wage statements, properly paid all wages upon termination of employment, and properly provided reimbursement for business expenses. FedEx contended that none of the claims alleged by Plaintiff had merit. FedEx believes that it would have succeeded in Court.

## 3. Why is this a class action?

In a class action, one or more people called Class Representatives (in this case, Theodore A. Emetoh), sue on behalf of people who have similar claims. All these people comprise a Class and are referred to as Class Members. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

## 4. Why is there a settlement?

In order to avoid the costs and risks associated with trial, the parties agreed to resolve the case through settlement. The Court did not decide in favor of the Road Drivers, City Drivers, and Driver Apprentices or in favor of FedEx. There has been no finding that FedEx did anything wrong, and there has been no trial. Rather, the Class Representative and the attorneys think the settlement is best for all Class Members and the Court has agreed.

The Court has given its preliminary approval to the settlement, and confirms that Theodore A. Emetoh is the Class Representative and attorneys Shaun Setareh, William Pao, and Alex McIntosh of Setareh Law Group, are the attorneys for the Class Members (the "Class Counsel").

# WHO IS IN THE SETTLEMENT

To see if you will get money from this settlement, you first have to decide if you are a Class Member.

## 5. How do I know if I am part of the settlement?

The Judge decided that everyone who fits this description is a Class Member:

> "All persons who have worked for Defendant as non-exempt, hourly-paid Road Drivers, City Drivers, or Driver Apprentices in California at any time between November 14, 2013 through the date of Preliminary Approval, except that for Road Drivers, the settlement class period for all but the cell phone reimbursement claim begins on January 1, 2016."

This means that if you worked as a regular Road Driver, City Driver, or Driver Apprentice in California between the dates listed (the "Class Period"), you are a Class Member. If you were on leave of absence during the Class Period, or if you were domiciled outside of California during any or all of the Class Period, you are not a Class Member during that time.

## 6. Are there exceptions to being included?

Yes. If you are a Class Member, you have the option of excluding yourself as stated in Section 13 below. If you do nothing, you will be a Class Member.

## 7. I am still not sure if I am included.

If you are still not sure whether you are included, you can call the Claims Administrator at <<INSERT>> or Class Counsel at <<INSERT>> for more information.

# THE SETTLEMENT BENEFITS—WHAT YOU GET

## 8. What does the settlement provide?

FedEx has agreed to pay up to $3,250,000.00 to settle this lawsuit. Out of the settlement fund, the Class Representative Emetoh will ask for additional compensation for his service as a Class Representative ($7,500). Class Counsel will ask for $1,082,250.00 for attorneys' fees (33-1/3% of the total settlement amount), and up to $20,000 for costs, and the Claims Administrator will ask for up to $35,000 for administering the settlement. Of the total amount, $112,500 of the settlement will be paid under the Private Attorneys General Act ("PAGA"), of which $84,375 will be paid to the State of California Labor and Workforce Development Agency The money remaining in the settlement fund, up to approximately $2,020,875.00 (the "Net Settlement Amount") will be available for distribution, based on the number of weeks they worked during the Class Period. Included in the Net Settlement Amount is $28,125 of the PAGA payment that will be paid to Class Members who were employed on or after November 9, 2016.

## 9. How much will my payment be?

Your share of the fund will depend on the total number of Class Members minus those who request exclusion ("Qualified Claimants") and how many weeks you worked as a Road Driver, City Driver, or Driver Apprentice during the Class Period. Here's how it works:

If the settlement is approved as proposed, Qualified Claimants will share in up to $2,020,875.00 of the settlement amount, divided on a *pro rata* basis depending on the length of their employment during the Class Period, and based on the number of such drivers. Based upon the information provided by Defendant, the Claims Administrator will calculate the total number of compensable workweeks worked by the Qualified Claimants during the Class Period. The funds payable to the

Qualified Claimants will be divided *pro rata*, based upon workweeks worked during the Class Period, using the following parameters:

    a.    Qualified Claimants who worked as Road/Apprentice Drivers (from 01/01/2016 to <<12/01/19 or date of preliminary approval, whichever is later>>) and City/Apprentice Drivers (from 11/14/2013 to <<12/01/19 or date of preliminary approval, whichever is later>>) will share in 20% of the Net Settlement Amount allocated for payment of disputed wages, or about $398,550.00.

    b.    Qualified Claimants who worked as Road/Apprentice Drivers (from 11/14/2013 to <<12/01/19 or date of preliminary approval, whichever is later>>) and City/Apprentice Drivers (11/14/2013 to <<12/01/19 or date of preliminary approval, whichever is later>>) will share in 80% of the Net Settlement Amount allocated for disputed business expense reimbursement, Labor Code §226, penalties, and interest, or about $1,594,200.00.

    c.    Class Members who worked from 11/9/16 to <<12/01/19 or date of preliminary approval, whichever is later>>) will share the PAGA Payment of $28,125.00.

    d.    The total Workweeks for all Class Members in the Class Period plus additional Workweeks allocated for separated employees shall be divided into the Net Settlement Amount to calculate the agreed upon payment per Workweek (the "Workweek Rate").

    e.    Each Qualified Claimant will be assigned Workweek(s), which means each week (Sunday through Saturday) during which Class Members were employed, but excluding weeks during which the Class Member performed no driving duties based upon Defendant's records.
        i.    There are no partial or fractional Workweeks. Thus, if a Class Member performed driving duties during any part of a Sunday through Saturday week, that week shall count as a Workweek.

    f.    Each Qualified Claimant who separated from Defendant during the class period at least once will receive an allotment of six additional Workweeks.

If there is any dispute about weeks worked, FedEx records control, unless the Class Member can provide persuasive documentary evidence to the contrary, as determined by the Claims Administrator. The number of weeks that FedEx's records show that you worked in each position during the Class Period is listed on your Data Dispute Form. You may have worked more than the dates shown, but the only time that is relevant to this settlement is the time period between November 2013 and <<December 2019 or date of preliminary approval, whichever is later>>.

Your Claim amount will be partially paid as wages, for which you will receive an IRS Form W-2, and partially paid as expenses, interest and penalties, for which you will receive an IRS Form 1099. You are responsible for paying your taxes on any amount you receive. This Notice is not tax advice and you should consult your tax advisor. Checks will be valid for 90 days. The proceeds of any uncashed checks will be paid to the State of California pursuant to California's Unclaimed Property law in the name of the Class Member.

# HOW YOU GET A PAYMENT

### 10. How can I get a payment?

If you do nothing, you will automatically participate in the Settlement and receive a Settlement Payment based on the information in the enclosed individualized Data Dispute Form. If any information provided on that Form is incorrect, you can and should make corrections on the attached Form and provide that information to the Settlement Administrator named below in this Notice. You may also get a Data Dispute Form by calling the Claims Administrator at <<INSERT>>. Read the instructions carefully and fill out the form, sign it, and mail it postmarked no later than <<INSERT>>. Late claims will not be considered, absent good cause.

If you are a Class Member and do not exclude yourself from the Settlement Class, you will be bound by all of the provisions of the Settlement, including a full release of claims that will prevent you from separately suing or bringing claims against FedEx, its employees or any other related persons or entities for the matters being settled in this Action, as described in more detail below.

## 11. When would I get my payment?

The Court will hold a hearing on <<INSERT>>, to decide whether to approve the settlement. If the Court approves the settlement after that, there may be appeals. It is always uncertain when these appeals can be resolved, and resolving them can take time, perhaps more than a year. To check on the progress of the settlement, call the Claims Administrator at <<INSERT>>, or contact Class Counsel. *Please be patient.*

## 12. What am I giving up to get a payment or stay in the Class?

Unless you exclude yourself, you are part of the Class. This means that you cannot sue FedEx, nor can you continue to sue, or be part of any other lawsuit against FedEx about the legal issues in or related to *this* case. It also means that all of the Court's orders will apply to you and legally bind you. If you do nothing or sign the Data Dispute Form, you agree to the "Release" on the Data Dispute Form and as further outlined in full in the Settlement, which describes exactly the legal claims that you give up if you do not exclude yourself.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want a payment from this settlement, but you want to keep the right to sue or continue to sue FedEx on your own about the legal issues in this case (except as to the PAGA remedies), then you must take steps to get out of this case. This is called excluding yourself - or is sometimes referred to as "opting out" of the settlement Class.

## 13. How do I get out of the settlement?

To exclude yourself from the settlement, you must send a letter by mail saying simply that you want to be excluded from the *Emetoh, et al., vs. FedEx Freight, Inc.,* case. No special language is required. Be sure to include your name, address, telephone number, and print and sign your name. You must mail your exclusion request to the Settlement Claims Administrator at the address below, postmarked no later than <<INSERT>> to:

*Emetoh, et al. v. FedEx Freight, Inc.* Claims Administrator
c/o <<INSERT>>

If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) FedEx in the future. However, you will receive a PAGA Payment and will be bound by the PAGA judgment.

NOTE: Class Members need not exclude themselves from the Agreement to submit a Data Dispute Form. If a Class Member timely submits both a Data Dispute Form and a request for exclusion, the Data Dispute Form shall control, and the request for exclusion shall be null and void.

## 14. If I do not exclude myself, can I sue FedEx for the same thing later?

No. Unless you follow the procedure to exclude yourself, you give up any right to sue FedEx for the claims that this settlement resolves. If you have a pending lawsuit or claims against FedEx, you are advised to speak to your lawyer in that case immediately. You must exclude yourself from *this* Class to continue your own lawsuit if it involves the same or related issues. Remember, the exclusion deadline is <<INSERT>>.

## 15. If I exclude myself, can I get money from this settlement?

No. If you exclude yourself, <u>you will not receive any money as part of this Settlement</u>, as you can only get money from this settlement if you do not exclude yourself form its terms.

# THE LAWYERS REPRESENTING YOU

## 16. Do I have a lawyer in this case?

The Court has appointed Shaun Setareh, William Pao, and Alex McIntosh of Setareh Law Group located in Beverly Hills, California to represent you and other Class Members. These lawyers are called Class Counsel. You will not be charged for these lawyers, although they will be compensated from the Settlement Fund as discussed in Section 8 and 17. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 17. How will the lawyers be paid?

Class counsel will ask the Court to approve payment of up to $1,082,250 to them for attorneys' fees (33-1/3% of the total settlement), and up to $20,000 for costs. The fees will pay Class Counsel for investigating the facts, litigating the case and negotiating and finalizing the settlement. These amounts will not reduce the approximately $2,020,875 available for Class Members. FedEx has agreed not to oppose these fees and expenses. In the event the Court approves a lesser amount of fees or costs, those amounts will become part of the pool the class will share.

# OBJECTING TO THE SETTLEMENT

*You can tell the Court that you do not agree with the settlement or some part of it.*

## 18. How do I tell the Court that I do not like the settlement?

If you are a Class Member, you can object to the settlement if you do not like it. You can give reasons why you think the Court should not approve the settlement and the Court will consider your views. To object, and to have the Court hear your views, you must send a letter saying that you object to the *Emetoh, et al., v. FedEx Freight, Inc.* settlement. You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

Any objection to the proposed settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and any supporting papers must be sent to the Settlement Administrator at <<ADDRESS>> <<CITY, STATE ZIP>> via U.S. Mail and postmarked no later than <<insert date>>.

Be sure to include your name, address, telephone number, your printed and signed name, and the legal and factual reasons you object to the settlement.

## 19. What is the difference between objecting and excluding?

Objecting is simply telling the Court that you do not like something about the settlement. You can object only if you stay in the Class, and even if you object you are entitled to a portion of the settlement.

Excluding yourself is telling the Court that you do not want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you. You will receive no money under the settlement if you exclude

yourself.

# THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you do not have to. ***You may only speak at the hearing if you follow the instructions below.***

## 20. When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at <<INSERT>> on <<INSERT>>, at the United States District Court, Northern District of California, Oakland Division, 1301 Clay Street, Suite 400S, Oakland, CA 94612 in Courtroom 1 on the 4th Floor. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections and they have been properly lodged, the Court will consider them. The Judge will listen to people who have asked to speak at the hearing. At or after the hearing, the Court will decide whether to approve the settlement.

## 21. Do I have to come to the hearing?

No. Class Counsel will answer questions the Judge may have. But, you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not required.

## 22. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear" in the *Emetoh, et al., vs. FedEx Freight, Inc.,* settlement. Be sure to include your name, address, telephone number, and your printed and signed name. Your Notice of Intention to Appear must be postmarked no later than <<INSERT>>, and be sent to the Settlement Administrator at the address listed in question 18 and the Clerk of the Court for the United States District Court for the Northern District of California, Oakland Division, 1301 Clay Street, Suite 400 S, Oakland, CA 94612. You cannot speak at the hearing if you excluded yourself, and you will not be able to speak unless you timely file a Notice of Intention to Appear.

# IF YOU DO NOTHING

## 23. What happens if I do nothing at all?

If you do nothing, you will receive money from this settlement and release FedEx from the claims in this lawsuit as outlined above in this notice. Unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against FedEx about the legal issues in this case ever again.

# GETTING MORE INFORMATION

## 24. Are there more details about the settlement?

This notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please see the settlement agreement available at www._____.com, or by contacting Class Counsel Setareh Law Group, at 315 South Beverly Drive, Suite 315, Beverly Hills, California 90212, telephone (310) 888-7771, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, United States District Court, Northern District, Oakland Division, Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Suite 400 S, Oakland, CA 94612, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays and ask to view the Court file in *Theodore A. Emetoh, et al.(Plaintiff) vs. FedEx Freight, Inc., (Defendant),* Case No.: 3:17-cv-07272-YGR.

PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.

Date: <<INSERT>>
This Notice has been approved by the Judge of the United States District Court.

# EXHIBIT D

Shaun Setareh (SBN 204514)
  shaun@setarehlaw.com
William M. Pao (SBN 219846)
  william@setarehlaw.com
Alexandra R. McIntosh (SBN 320904)
  alex@setarehlaw.com
SETAREH LAW GROUP
315 South Beverly Drive, Suite 315
Beverly Hills, California 90212
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff
THEODORE A. EMETOH

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| THEODORE A. EMETOH, on behalf of himself, all others similarly situated,<br><br>     *Plaintiff*,<br><br>vs.<br><br>FEDEX FREIGHT, INC., an Arkansas corporation; and DOES 1 through 50, inclusive,<br><br>     *Defendants*. | Case No. 3:17-cv-07272-YGR<br><br>Assigned For All Purposes To The Honorable Yvonne G. Rogers, Courtroom 8<br><br>**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:    TBD<br>Time:    TBD<br>Place:   Courtroom 8 |

# [PROPOSED] ORDER

Plaintiff THEODORE A. EMETOH ("Plaintiff") Motion for Preliminary Approval of Class Action Settlement came on regularly for hearing before the Honorable Yvonne G. Rogers.

After full consideration of all the materials filed in support of the Motion, and GOOD CAUSE APPEARING THEREFROM, the Court makes the following findings and orders:

1. The Court **GRANTS** preliminary approval of the Settlement pursuant to Fed. R. Civ. Proc. 23 based upon the terms set forth in the Settlement Agreements ("Settlements" or "Settlement Agreements") attached to the Declaration of Shaun Setareh.

2. The Settlement as proposed appear to be fair and reasonable and to provide significant benefit to the Settlement Classes.

3. The Settlement was reached through good faith and arm's length negotiation with the assistance of an experienced mediator.

4. Named Plaintiff THEODORE A. EMETOH is a suitable class representative and is appointed as the Class Representative for the Settlement Class.

5. Named Plaintiff's counsel, Shaun Setareh and William M. Pao of the Setareh Law Group, is experienced in matters of this nature and is appointed as Class Counsel for the Settlement Class.

6. The proposed Settlement Class defined in the Settlement is provisionally certified for purposes of the settlement only.

7. The notice provision in the Settlement is constitutionally sound because individual notices will be mailed to all class members whose identities are known to the parties, and such notice is the best notice practicable. The proposed Notice of Class Action Settlement (Declaration of Shaun Setareh, Exh. __) is sufficient to inform Class Members of the terms of the Settlement, their rights under the Settlement, their rights to object to the Settlement, their rights to dispute their number of workweeks, and their rights to elect not to participate in the Settlement; the processes for doing so; and the date and location of the final approval hearing, and are therefore approved.

///

8. A Final Approval Hearing on the question of whether the proposed Settlement, attorneys' fees and costs to Class Counsel, payment to the Labor & Workforce Development Agency, and the Named Plaintiffs' enhancement awards should be finally approved as fair, reasonable, and adequate as to the members of the Class is scheduled in Courtroom 8 of this Court on _____ at _____.

9. The Court approves, as to form and content, the Notice of Class Action Settlement, in substantially the form attached to the Declaration of Shaun Setareh as Exhibit __. The Court approves the procedure for Settlement Class members to participate in, to opt out of, and to object to, the Settlement as set forth in the Class Notice.

10. The Court directs the mailing of the Class Notice Packet to all Settlement Class members by First-Class Mail.

11. To facilitate administration of the Settlement pending final approval, the Court hereby enjoins Plaintiffs and all Settlement Class members from filing or prosecuting any claims, suits or administrative proceedings (including filing claims with the Division of Labor Standards Enforcement of the California Department of Industrial Relations) regarding claims released by the Settlements unless and until such Settlement Class members have filed valid written requests for exclusion with the Settlement Administrator and the time for filing claims with the Settlement Administrator has elapsed.

12. The Court orders the following Implementation Schedule for further proceedings:

    a. Deadline for Defendants to submit Settlement Class Member contact information to Settlement Administrator:_____ [30 days after preliminary approval].

    b. Deadline for Settlement Administrator to mail the Class Notice Packet to Settlement Class Members: _____[40 days after preliminary approval].

c. Deadline for Settlement Class Members to postmark Requests for Exclusion, Objection to settlement and disputes regarding the number of workweeks: _____ [45 days after mailing of Class Notice Packet]

d. Deadline for Class Counsel to file Motion for Final Approval of Class Action Settlements: _____ [30 days before the Final Fairness and Approval Hearing]

e. Final Fairness and Approval Hearing:_____ at _____.

13. The Court retains jurisdiction over the parties to enforce the terms of the judgment.

IT IS SO ORDERED.

DATED: December ___, 2019

_____
Honorable Yvonne G. Rogers
UNITED STATES DISTRICT JUDGE