1  Shaun Setareh (SBN 204514)
     shaun@setarehlaw.com
2  William M. Pao (SBN 219846)
     william@setarehlaw.com
3  SETAREH LAW GROUP
   315 South Beverly Drive, Suite 315
4  Beverly Hills, California 90212
   Telephone (310) 888-7771
5  Facsimile (310) 888-0109

6  Attorneys for Plaintiff
   THEODORE A. EMETOH

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                 OAKLAND DIVISION

11

12  THEODORE A. EMETOH, on behalf of       Case No. 4:17-cv-07272-YGR
    himself, all others similarly situated,
13                                          Assigned For All Purposes To The Honorable
              *Plaintiff*,                  Yvonne Gonzalez Rogers, Courtroom 8
14
         vs.                                **PLAINTIFF'S NOTICE OF MOTION AND**
15                                          **MOTION FOR FINAL APPROVAL OF**
    FEDEX FREIGHT, INC., an Arkansas        **CLASS ACTION SETTLEMENT AND**
16  corporation; and DOES 1 through 50, inclusive, **CERTIFICATION OF SETTLEMENT**
                                            **CLASS; MEMORANDUM OF POINTS AND**
17            *Defendants*.                 **AUTHORITIES; DECLARATION OF**
                                            **SHAUN SETAREH; [PROPOSED] ORDER**
18
                                            [Filed Concurrently with the Declaration of
19                                          Shaun Setareh and [Proposed] Order]

20                                          Date:      September 29, 2020
                                            Time:      2:00 p.m.
21                                          Place:     Courtroom 1

22                                          Action Filed:            November 14, 2017
                                            Date of Removal:         December 21, 2017
23                                          First Amended Complaint:     March 14, 2018
                                            Second Amended Complaint:  August 16, 2018
24

25

26

27

28

---

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE
ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

1

2 TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3      PLEASE TAKE NOTICE that on September 29, 2020 at 2:00 p.m., or as soon thereafter as the

4 matter may be heard in Courtroom 1 of the United States District Court for the Northern District of

5 California, located at 1301 Clay Street, Oakland, California 94612, before the Honorable Yvonne

6 Gonzales Rogers, Plaintiff THEODORE EMETOH ("Plaintiff") will and does hereby move this Court

7 for entry of an order and judgment granting final approval of the class action settlement and all agreed

8 upon terms in the First Amended Joint Stipulation of Settlement and Release as well as an award of fees

9 to Class Counsel and an enhancement payment to Plaintiff.

10      This Motion is based on grounds that the Settlement, which was reached after arm's-length

11 negotiations by counsel for Plaintiff and the Class, and counsel for Defendant, is fair and reasonable, has

12 drawn an overwhelmingly favorable response from the Class, and should be given final approval by the

13 Court for all the reasons set forth in the memorandum in support of the motion.

14      This Motion is based upon this Notice of Motion and Motion; the accompanying Memorandum

15 of Points and Authorities; the declarations of Shaun Setareh and Theodore Emetoh, all accompanying

16 exhibits, as well as all other pleadings and papers on file with this Court and such further evidence and

17 arguments as may be presented at the hearing on the Motion.

18

19 DATED: August 25, 2020          SETAREH LAW GROUP

20

21                         */s/ Shaun Setareh*
                        SHAUN SETAREH

22                         WILLIAM M. PAO
                        Attorneys for Plaintiff

23                         THEODORE EMETOH

24

25

26

27

28

## MEMORANDUM IN SUPPORT OF JOINT MOTION

## I.    INTRODUCTION

The Parties' settlement of this wage-and-hour class action (the "Settlement") meets the criteria for final approval.  The Settlement fairly resolves Plaintiff's claims that Defendant violated California wage-and-hour laws by failing to pay them (and the settlement class) for all hours worked and at the correct rate of pay; provide them with compliant meal periods and rest breaks; provide them with compliant wage statements; and pay their final wages on time.  Plaintiff also alleged that Defendant violated statutes subjecting them to liability under the California Unfair Competition Law ("UCL"); and violated the California Labor Code Private Attorneys General Act of 2004, as amended ("PAGA") (Lab. Code §§ 2698 *et seq.*).  The Settlement is the product of arm's-length negotiations by experienced counsel after significant discovery, and recognition of the strengths and weaknesses of each side's positions.  The Settlement has received the overwhelming support of the Class; indeed, of the 2,980 individuals identified as Class Members, there were no objections to the settlement and only four requests for exclusion.

The Settlement, in the amount of **$3,250,000.00**, readily satisfies the Rule 23 standard of being "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Specifically:

- Class Counsel (who are highly experienced handling complex wage-and-hour class and collective actions) conducted sufficient discovery to enable them to adequately evaluate the claims and defenses in the action before agreeing to the Settlement. (Declaration of Shaun Setareh ("Setareh Decl."), ¶ 4-31.)

- The Settlement is consistent with the strengths and weaknesses of Plaintiffs' claims given the risk, expense, complexity, and likely duration of further litigation.  *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

- The Class responded overwhelmingly favorably to the Settlement.  (Declaration of Mary Butler ("Butler Decl."), ¶ 13-14.)  The Settlement Administrator only received 4 complete and timely opt-out requests out of the 2,956 Class Members who received notice of the Settlement (Butler Decl., ¶ 13), resulting in an opt-out rate of approximately 0.13%.

Class Counsel seeks a fair and reasonable percentage of the common fund and has agreed to request no more than **$812,500.00** in fees from the gross settlement amount or 25% of the total settlement amount and no more than **$14,269.58** in costs (and expects to incur an additional **$97.00** in Courtcall fees to attend the final approval hearing telephonically – **$14,366.58** – already exceeds that amount) pursuant to the terms of the Settlement. The lodestar figure is in line with the requested fee, requiring a multiplier of just 2.79. (Setareh Decl., ¶ 26.)

Thus, the Parties respectfully submit that final approval of the Settlement should be granted and judgment entered accordingly.

## II.    BACKGROUND

At all times relevant to this action, Defendant operates a national less-than-truckload (LTL) freight service that offers pallet-level tracking and multiple-pallet shipments. Defendant provides service throughout the U.S., Puerto Rico, Canada and Mexico. Defendant also provides freight service to more than 130 countries and territories.

Plaintiff, a former Road Driver of Defendant, brought this Action asserting the following violations: 1) Failure to Provide Meal Periods (Lab. Code §§ 204, 223, 226.7, 512 and 1198); 2) Failure to Provide Rest Periods (Lab. Code §§ 204, 223, 226.7 and 1198); 3) Failure to Pay Hourly Wages (Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1997.1 and 1198); 4) Failure to Indemnify (Lab. Code § 2802); 5) Failure to Provide Accurate Written Wage Statements (Lab. Code §§ 226(a)); 6) Failure to Timely Pay All Final Wages (Lab. Code §§ 201, 202 and 203); 7) Unfair Competition (Bus. & Prof. Code §§ 17200 *et seq.*); and 8) Civil Penalties (Lab. Code §§ 2698 *et seq.*). (Declaration of Shaun Setareh In Support of Motion for Preliminary Approval ("Setareh Preliminary Decl.", ¶ 5.)

In discovery, Defendant provided Class Counsel with nearly 2,000 pages of documents and video footage from trucks, including copies of all applicable versions of personnel and payroll policies, contact information for the putative class, and records reflecting Class Members' hours worked and wages paid, amongst numerous other documents, as well as payroll and time clock data for the putative class. Defendant also served written discovery, issued subpoenas and deposed Plaintiff. (*Id.*, ¶ 8.)

The Parties participated in two separate full-day mediations before Hon. Stephen Sundvold and Tripper Ortman, Esq. on January 15, 2019 and May 21, 2019, respectively. The Parties were able to

1 come to an agreement and signed a Memorandum of Understanding on May 21, 2019. (*Id.*, ¶ 9.)

2      This Agreement was reached after evaluating the Parties' theories of potential exposure for the

3 underlying claims. The Parties also assessed appropriate discounts to the potential liability based on

4 Defendant's contentions and defenses. (*Id.*, ¶ 10.)

5      The Parties agree that the above-described investigation and evaluation, as well as discovery and

6 information exchanged during the settlement negotiations, are more than sufficient to assess the merits

7 of the respective Parties' positions and to compromise the issues on a fair and equitable basis. (*Id.*, ¶ 11.)

8 **III.**   **THE SETTLEMENT**

9      The following is a summary of the material elements of the Settlement.

10     **A.**    **THE SETTLEMENT CLASS**

11      The Class to be conditionally certified is defined as:

12     All persons who have worked for Defendant as non-exempt, hourly-paid Road Drivers, City
Drivers, or Driver Apprentices in California at any time during the Class Period. (Agreement, ¶
13     1.4.)

14     The Class Period means from November 14, 2013 through the date of Preliminary Approval
(not earlier than December 1, 2019), except that for Road Drivers, the settlement class period for
15     all but the cell phone reimbursement claim begins on January 1, 2016.[1] (Agreement, ¶ 1.6.)

16     **B.**    **NOTICE PROCESS**

17      The Court directed that the proposed Class Notice be sent to Class Members in the manner

18 specified by the Settlement. (ECF 77.) The Parties implemented the Court's directions in this regard.

19      After obtaining quotes from no less than three settlement administrators (ECF 75, ¶ 31-33), the

20 Parties selected, and the Court approved, Simpluris, Inc. ("Simpluris"), to administer the Settlement.

21 Mary Butler with Simpluris was designated as Case Manager for the administration of the Settlement.

22 (Butler Decl., ¶ 1.)

23      On or about April 29, 2020, counsel for Defendants provided Simpluris with data files that

24 ————————————————

25 [1] Defendant entered into a class settlement with Road Drivers in a prior action styled *Roy D. Taylor*
*v. FedEx Freight*, Case No. 1:13-CV-01137-DAD-BAM, in which preliminary approval was
26 granted on April 20, 2016. Therefore, liability in this case begins for the Road Drivers on January 1,
2016 as to all *Taylor* related claims. The cell phone reimbursement claim was not released in
27 *Taylor*, and therefore that claim extends back to the beginning of the statutory period. (*See* Request
for Judicial Notice filed concurrently herewith.)
28

1  contained names, last known mailing addresses, Social Security Numbers, total weeks worked, and total

2  pay periods worked for each Class Member during the Class Period. (Butler Decl., ¶ 6.)

3          The mailing addresses contained in the Class Members' data were processed and updated by

4  Phoenix using the NOCA. (Butler Decl., ¶ 7.)  In the event that any individual had filed a U.S. Postal

5  Service change of address request, Simpluris used the address listed with the NCOA when mailing Class

6  Notices. (*Id.*)

7          On June 5, 2020, Simpluris mailed Class Notices to all Class Members via first-class mail.

8  (Butler Decl., ¶ 8.)

9          Of the 2,980 Class Notices mailed, 103 were returned as undeliverable. (Butler Decl., ¶ 9.)  For

10  those without a forwarding address, Simpluris performed an advanced address search (i.e. skip trace)

11  on all of these addresses by using Accurint, a reputable research tool owned by Lexis-Nexis.

12  Simpluris used the Class Member's name, previous address and Social Security number to locate a

13  more current address. (*Id.*)  Eighty-two (82) Notice Packets were re-mailed to either a newfound

14  address, with forwarding addresses provided by the United States Postal Service or at the request of

15  the Class Member. Ultimately, after additional searches, 24 Notice Packets were undeliverable

16  because Simpluris was unable to find a better address. (*Id.*)

17          **C.      TOTAL SETTLEMENT AMOUNT AND DISTRIBUTIONS**

18          Defendant will pay a maximum aggregate Gross Settlement Amount of **$3,250,000.00**.

19  (Agreement, ¶ 1.21.)  The Gross Settlement Amount covers: (1) the Class Representative payment of

20  **$7,500.00** to Plaintiff in compensation for having prosecuted the action and undertaken the risk of

21  payment of costs in the event this matter had not been successfully concluded (Agreement, ¶ 1.17.); (2)

22  Settlement Payment paid to Class Members for their class claims (Agreement, ¶ 1.38.); (3) PAGA

23  Payment in the amount of **$112,500.00** to be allocated to claims for civil penalties under PAGA, which

24  includes **$84,375.00** awarded to the State of California, subject to Court approval, and **$28,125.00**

25  awarded to Qualified Claimants, divided *pro-rata* based upon the Qualified Claimants' number of

26  Workweeks during the PAGA Period of November 9, 2016 through the date of Preliminary Approval

27  (Agreement, ¶ 1.25); (4) the Class Members' respective shares of any applicable payroll taxes

28  (including but not limited to Class Members' FICA and FUTA contributions and any other taxes)

attributable to any payments under the Settlement (Agreement, ¶¶ 6.10.4, 6.10.5); (7) the Class Counsel Award, consisting of attorneys' fees not to exceed **$812,500.00** (twenty-five percent (25%) of the Gross Settlement Amount), plus costs not to exceed **$20,000.00**, to compensate Class Counsel for all work performed thus far and all work remaining to be performed in connection with the Settlement, including without limitation documenting and administering the Settlement and securing Court approval (Agreement, ¶¶ 6.1, 6.2, 6.2.1.); and (8) the fees and expenses of the Settlement Administrator, not to exceed **$35,000.00** (Agreement, ¶ 1.36.).

After all Court-approved deductions from the Gross Settlement Amount of **$3.250,000.00**, the estimated Net Settlement Amount constitutes approximately **$2,290,625** Gross Settlement Amount for Class Members including related tax payments (excluding Defendant's tax portion of tax payments).  To fairly allocate settlement funds based on the Qualified Claimant's dates of employment as a Class Member (excluding weeks during which no driving duties were performed) and any entitlement to waiting time penalties, the distribution amount will be calculated as follows: The total Workweeks for all Class Members in the class period plus additional Workweeks allocated for separated employees shall be divided into the Net Settlement Amount to calculate the agreed upon payment per Workweek (the "Workweek Rate").  Each Qualified Claimant who separated from Defendant during the class period at least once will receive an allotment of six additional Workweeks.  Each Qualified Claimant will be paid the Workweek Rate for each Workweek. (Agreement, ¶ 6.10.)

The average estimated payment is $683.76 and the highest estimated payment is $1,368.83. (Butler Decl., ¶ 12.)

In the event that more than **$2,290,625.00** remains in the Net Settlement Amount after payment of the Class Counsel Award, Class Counsel Litigation Costs, Class Representative Enhancement, the PAGA Payment (both Class Member and LWDA shares), and Settlement Administration Costs, then the class Settlement Payment allocated to Qualified Claimants, will be increased on a pro-rata basis, in proportion to the amounts estimated above. (Agreement, ¶ 6.10.1.)

**D.    SCOPE OF THE CLASS MEMBER RELEASES**

The Parties agree that it is their intent that the terms set forth in this Agreement will release any further attempt, by lawsuit, administrative claim or action, arbitration, demand, or other action of any

kind by each and all of the Class Members who did not timely and properly opt out, to obtain a recovery based on each and all of the allegations in the Second Amended Complaint in this matter, including participating in any class or collective action, for harms arising during the Class Period. (Agreement, ¶ 6.12.)

It is also the Parties intent that the Class Representative and each Class Member, who did not timely and properly opt out of the Agreement, shall be deemed to have fully, finally, and forever released the Released Parties from all Released Claims, as defined in Sections 1.8, 1.34 and 1.35. Such release includes a California Civil Code Section 1542 ("Section 1542") waiver, which releases all claims, known or unknown, within the definition of Released Claims, irrespective of the factual or legal basis for such claims. The Class Notice sets forth the waiver and explains that it does not have the effect of waiving any and all claims a Class Member may have against Defendant.[2] It only waives claims encompassed within the allegations of the Second Amended Complaint, which shall be deemed to have been fully, finally, and forever released against the Release Parties, including the Class Representative.

## IV.     THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL

### A.     THE BEST PRACTICAL NOTICE OF SETTLEMENT HAS BEEN PROVIDED TO THE CLASS

The mailing of the Class Notice to Class Members, and the general administration of the notice process as described above, meets the requirements for the "best practicable" notice in this case as is necessary to protect the due process rights of Class Members. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best practicable" notice with description of litigation and explanation of opt-out rights satisfies due process). Indeed, individual Class Notice was served on each Class Member at his or her most recent address, after cross-referencing each address with U.S. Post Office records; Class Members also were directed to a dedicated website that included the Notice of Proposed Class Action Settlement and Final Approval Hearing and other Settlement-related information. Moreover, both the Class Notice and Notice of Proposed Class Action Settlement and

---

[2] For example, the Section 1542 waiver had no effect on the Class Representative's separately plead wrongful termination claim based on alleged disability discrimination.

1 Final Approval Hearing informed Class Members of the pendency of the action and their right not to

2 participate in the Settlement. *See Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314

3 (1950) (best practicable notice is notice that is "reasonably calculated, under all the circumstances, to

4 apprise interested parties of the pendency of the action and afford them an opportunity to present their

5 objections"). Therefore, the Court may proceed to determine the fairness and adequacy of the

6 Settlement and order its approval, secure in the knowledge that all absent Class Members have been

7 given the opportunity to participate fully in the opt-out, comment, and approval process.

8       This lack of governmental objection to the Settlement further supports final approval.

9     **B.**    **THE CAFA NOTICE REQUIREMENTS HAVE BEEN SATISFIED**

10       Notice pursuant to Section 1715(b) of the Class Action Fairness Act of 2005 ("CAFA") to the

11 appropriate federal and state officials is required in this action because this action is a class action and

12 was removed from state court pursuant to the CAFA removal provisions. 28 U.S.C. §§ 1332(d) and

13 1453(b). Defendant provided notice on November 20, 2019 to the appropriate governmental officials as

14 required by 28 U.S.C. § 1715(b). (Dkt. 70). As such, the final order will not be entered prior to 90

15 calendar days after notice as required pursuant to 28 U.S.C. § 1715(b).

16     **C.**    **FINAL APPROVAL STANDARDS UNDER RULE 23**

17       "[V]oluntary conciliation and settlement are the preferred means of dispute resolution,"

18 especially in complex class actions. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th

19 Cir. 1982). Class action lawsuits readily lend themselves to compromise because of the difficulties of

20 proof, the uncertainties of the outcome, and the typical length of the litigation. *Class Plaintiffs*, 955 F.2d

21 at 1276 (noting that "strong judicial policy [...] favors settlements, particularly where complex class

22 action litigation is concerned"). On a motion for final approval of a class action settlement under

23 Federal Rule of Civil Procedure 23(e), a court's inquiry is whether the settlement is "fair, adequate and

24 reasonable," recognizing that "'it is the settlement taken as a whole, rather than the individual

25 component parts, that must be examined for overall fairness.'" *Staton*, 327 F.3d at 952 (quoting *Hanlon*

26 *v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

27       When determining whether to grant final approval, "the court's intrusion upon what is otherwise

28 a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent

1  necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching

2  by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

3  reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. The court should

4  balance "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further

5  litigation; the risk of maintaining class action status throughout the trial; the amount offered in

6  settlement; the extent of discovery completed, and the stage of the proceedings; the experience and

7  views of counsel [...] and the reaction of the class members to the proposed settlement." *Id.*; *see also*

8  *Class Plaintiffs*, 955 F.2d at 1291 (quoting *Officers for Justice*, 688 F.2d at 625); *accord Torrisi v.*

9  *Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). "The recommendations of plaintiffs'

10 counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610,

11 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661

12 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the

13 settlement after hard-fought negotiations is entitled to considerable weight.").

14       **D.**    **THE SETTLEMENT IS PRESUMPTIVELY FAIR BECAUSE OF THE**

15              **POSITIVE RESPONSE TO THE SETTLEMENT BY CLASS MEMBERS, THE**

16              **SIGNIFICANT INVESTIGATION CONDUCTED, CLASS COUNSEL'S**

17              **EXPERIENCE, AND ARM'S-LENGTH NEGOTIATIONS**

18         The Court should begin its analysis of this Settlement with a presumption that it is fair and

19 should be approved, due to (1) the fact that out of 2,976 Class Members that received Class Notice, only

20 4 timely requested exclusion and there no objections to the Settlement; (2) the meaningful discovery

21 conducted; (3) Class Counsel's experience in this kind of litigation; and (4) the arm's-length

22 negotiations that took place before an experienced mediator. *See Ortiz v. Fibreboard Corp.*, 527 U.S.

23 815, 852 (1999) (holding that arm's-length negotiations conducted by competent counsel after

24 appropriate discovery are *prima facie* evidence that the settlement is fair and reasonable); *M. Berenson*

25 *Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where, as here, a

26 proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation,

27 conducted by capable counsel, it is presumptively fair."). These factors are well satisfied here.

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

1            **1.**      **Class Members' Response to the Settlement Is Positive**

2       Out of 2,976 Class Members, only 4 timely requested exclusion and there no objections to the

3 Settlement. (Butler Decl., ¶¶ 13-14.); *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D.

4 523, 529 (C.D. Cal. 2004) (holding that in "the absence of a large number of objections to a proposed

5 class action settlement raises a strong presumption that the terms of a proposed class settlement action[s]

6 are favorable to the class members."); *see also Mandujano v. Basic Vegetable Prods., Inc*., 541 F.2d

7 832, 837-38 (9th Cir. 1976).

8       Moreover, the 4 Class Members who opted out represents just 0.13% of the total Class.. (*Id.*)

9 This overwhelmingly positive reaction by the Class strongly supports final approval of the Settlement.

10 *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 850 (N.D. Cal. 2010) (finding opt-out rate

11 of 16 of 329 class members (approximately 4.8%) low, and explaining that where exclusions and opt-

12 outs are low, there is presumption of favorable class reaction).

13            **2.**      **The Settlement Was Reached Only After the Parties Engaged in Substantial**

14                     **Investigation and Analysis of the Legal Issues**

15       The Parties engaged in substantial investigation and analysis of the legal issues in reaching a

16 Settlement in this case. *Cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)

17 (emphasizing that touchstone of analysis is whether "the parties have sufficient information to make an

18 informed decision about settlement," including formal and informal discovery) (citation omitted).

19 Before any mediation, Class Counsel reviewed thousands of pages of documents, as well as payroll and

20 timekeeping data, produced by Defendant.  (Setareh Decl., ¶¶ 34-37.)  The Parties also spent significant

21 time preparing for, and taking part, in mediation.  Not to mention that the parties participated in not one,

22 but two full-day mediations presided over by highly regarded and well-respected mediators. (Setareh

23 Preliminary Decl., ¶¶ 13-21.)

24            **3.**      **Counsel's Endorsement of the Settlement Is Entitled to Great Weight**

25       The judgment of experienced counsel regarding the settlement is entitled to great weight.

26 *Hanlon*, 150 F.3d at 1026; *Boyd*, 485 F. Supp. at 622; *Ellis*, 87 F.R.D. at 18.  Reliance on such

27 recommendations is premised on the fact that "parties represented by competent counsel are better

28 positioned than courts to produce a settlement that fairly reflects each party's expected outcome in

9

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

litigation." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (*quoting In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Here, counsel for both Parties endorse the Settlement as fair, adequate, and reasonable. Plaintiff's Counsel and Defendants' Counsel each have extensive experience in prosecuting and litigating class action wage-and-hour suits like this one. (Setareh Decl., ¶¶ 4-31.) The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate heavily favors this Court's approval of the Settlement.

### 4.    The Settlement Is Presumed Fair Because the Parties Engaged in Arm's-Length Negotiations

As set forth above, a settlement is presumed fair if it was negotiated at arm's length by experienced, competent counsel equipped with enough information to act intelligently. *See Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 324 (N.D. Cal. 2013) (where settlement reached after parties participated in private mediation, settlement was appropriate for final approval); *Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 U.S. Dist. LEXIS 5976, at *20 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.") (citing *Manual for Complex Litigation (Third)* (Fed. Judicial Center 1995) § 30.42).

The Parties engaged in a full-day mediation. (Setareh Preliminary Decl., ¶ 13-21.) Before the mediation, the Parties submitted mediation briefing, including detailed data analyses and assessments, and substantial evidence. (*Id.*)

### 5.    The Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay, and Burden of Further Litigation

#### a.    *The Value of the Settlement Favors Final Approval*

The Settlement is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes [...] Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation[.]" *Officers for Justice*, 688 F.2d at 624 (citations omitted). Accordingly, the "settlement is not to be judged against a [...] speculative

10

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

measure of what *might* have been achieved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (emphasis in original, citation omitted).  In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.  In addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road.  *See generally City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Here, the value of the Settlement – **$3.250.000.00** – is a fair and reasonable result, especially in light of the defenses raised by Defendant, including its defenses that straight time was paid and that overtime was paid or not due and owing across the putative class.  Defendants also argue that they did not have a purported policy of *not* paying required compensation, but rather a policy of paying compensation and of requiring employees to report any unpaid compensable time, and that any failure to report by employees cannot be legally charged to Defendants.  Defendants also strongly dispute liability and assert that employees could have taken their meal periods and rest breaks at any time, and that they did not require employees to work through them.  If true, this would defeat liability, and the individualized inquires that may be necessary to determine liability would complicate certification.  With respect to the claim for waiting time and wage statement penalties pursuant to Labor Code sections 203 and 226, Defendants contend that they would present several good faith defenses that would preclude a finding of willfulness.

Moreover, there was a high risk that Class Members' meal and rest break claims may be retroactively preempted by a recent decision issued by the Federal Motor Carrier Safety Administration that is currently the subject of a legal challenge pending with the Ninth Circuit Court of Appeals, which if affirmed, would preclude Plaintiff and Class Members from seeking relief for violations of California meal and rest break requirements.  Defendant produced class-wide data and provided access to several hundred declarations to demonstrate the potential lack of a common practice or policy, in support of its assertion that individualized inquiries would be necessary.

The Settlement Share amount represents a reasonable, meaningful recovery for Class Members.

1    Accordingly, the **$3,250,000.00** Gross Settlement Amount is well within the range of reasonableness.

2        **b.**  ***Further Litigation Would Involve Risk, Expense, Delay, and Burden***

3           ***on Class Members***

4        When a party continues to deny liability, there is an inherent risk in continuing litigation.  In

5    *Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 WL 1522385, at *5 (N.D. Cal. Apr. 21, 2011), the

6    district court approved a settlement agreement in which the defendant specifically denied liability,

7    noting that such denial of liability illustrated the risk to continued litigation.  *See also Mora v. Harley-*

8    *Davidson Credit Corp.*, No. 1:08-CV-01453-BAM, 2014 WL 29743, at *4 (E.D. Cal. Jan. 3, 2014)

9    (granting final approval to settlement agreement where defendant denied any liability); *Cf. Greko v.*

10   *Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) ("[E]ven

11   with a strong case, further litigation would be time-consuming and expensive …").

12       Similarly here, Defendants continue to contest liability and the propriety of class certification.

13   Defendants' denial of liability, paired with its diligent opposition to class treatment, spotlight the risks of

14   continued litigation and favor granting final approval to the proposed Settlement.

15       Moreover, this class action involves intricate legal and factual questions.  Litigating these

16   complex claims would require substantial additional discovery and pre-trial motions (including motions

17   for certification and decertification), as well as the consideration, preparation, and presentation of

18   voluminous documentary and testimonial evidence.  Trial itself would require the use of expert

19   witnesses at the damages phase, and would involve numerous complex legal and factual issues.  Once

20   liability had been established on a class-wide basis, Class Members might be required to testify at

21   individual damages mini-trials.  As is typical with any case, but especially so with class actions, appeals

22   would probably follow, with the result that payments to Class Members, if any, would likely occur only

23   after several years of delay.  In contrast, the Settlement will yield a prompt, certain, and substantial

24   recovery for the Class Members.  Such a result benefits the Parties and the court system.

25   **V.**  **COMPARABLE SETTLEMENTS**

26       So that the Court can make a comparison between this settlement and settlements in other

27   wage and hour cases, below is a list compiled from Westlaw of some wage and hour settlements in

28   the Northern District of California.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

• ***Castro v. ABM Industries, Inc.***, No. 17-cv-03026-YGR (N.D. Cal. Sept. 3, 2019) Wage and hour class action alleging that the defendants failed to reimburse employees for work-related use of their personal cell phones, violation of the UCL and civil penalties under the Labor Code Private Attorneys' General Act of 2004 (Lab. Code §§ 2698, *et seq.*) ("PAGA").  Gross settlement fund of **$5,400,000.00**.

• ***Carter v. XPO Logistics, Inc.***, No. 16-cv-01231 (N.D. Cal. Jun. 27, 2019). 847 settlement class members. Wage and hour class action for (1) failure to pay FLSA overtime; (2) failure to pay FLSA minimum wage; (3) failure to pay California minimum wage; (4) failure to pay California overtime; (5) reimbursement of employment expenses; (6) unlawful deduction from wages; (7) failure to provide meal periods; (8) failure to authorize and permit rest periods; (9) failure to furnish accurate wage statements; (10) waiting time penalties; (11) Violations of California UCL.  Gross settlement fund of **$16,500,000.00** for an average gross settlement amount per class member of **$14,222.82** and the estimated highest payment ot any class member is **$138,700.00**.  This case involved drivers who were misclassified as independent contractors which resulted in numerous wage and hour violations that contributed to the substantial recovery.

• ***Van Kempen v. Matheson Tri-Gas, Inc.***, No. 15-cv-00660-HSG, 2017 WL 3670787 (N.D. Cal. Aug. 25, 2017)  Approximately 2,400 settlement class members.  Wage and hour class action for failure to properly include non-discretionary bonuses in calculating the regular rate of pay for overtime wages in violation of the Fair Labor Standards Act and California Labor Code section 510, illegal "use it or lose it" vacation time policy in violation of Labor Code section 227.3.[3]  Gross settlement fund of **$370,000.00** for an average gross settlement amount per class member of **$154.16**.  This case involved hourly, non-exempt delivery driver of industrial and medical gases.

• ***Raquedan v. Centerplate of Delaware, Inc***., No. 5:17-cv-03828-LHK (N.D. Cal. 2019). 10,193 settlement class members. Wage and hour class action for 1) failure to provide meal periods;

---

[3] The operative complaint includes other wage and hour claims but those claims were released in an earlier class action in *Ambriz v. Matheson Tri-Gas, Inc.*, No. 2:14-cv-04546 (C.D. Cal. Feb. 4, 2016).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

(2) failure to provide rest periods; (3) failure to pay hourly wages; (4) failure to indemnify/forced purchases; (5) failure to pay vacation wages; (6) failure to pay paid sick days; (7) failure to provide accurate written wage statements; (8) failure to timely pay all final wages; (9) unfair competition. Gross settlement fund of **$5,450,000.00** million for an average gross settlement amount per class member of **$329.26** and the estimated highest payment to any class member is **$9,019.77**. This case involved hourly, non-exempt food service employees who worked at various sport venues and arenas.

• ***Bellinghausen v. Tractor Supply Company***, No. 13-cv-02377-JSC, 306 F.R.D. 245 (N.D. Cal. Mar. 20, 2015) 1,315 settlement class members. Wage and hour class action for (1) failure to pay minimum wage for off-the-clock work and overtime wages; (2) failure to provide meal periods; (3) failure to provide rest breaks; (4) failure to provide accurate wage statements; (5) failure to timely pay all final wages; and (6) civil penalties. Gross settlement fund of **$800,000.00** for a gross settlement amount per class member of **$760.45**. This case involved hourly, non-exempt employees who worked in retail positions.

• ***Tijero v. Aaron Brothers, Inc.***, No. C 10-01089-SBA, 301 F.R.D. 314 (N.D. Cal. Dec. 19, 2013) Approximately, 6,500 settlement class members. Wage and hour class action for (1) failure to provide meal periods; (2) failure to provide rest periods; (3) failure to pay hourly and overtime wages; (4) failure to provide accurate wage statements; (5) failure to timely pay all final wages; and (6) civil penalties. Gross settlement fund of **$800,000.00** for a gross settlement amount per class member of **$123.07**. This case involved non-exempt, hourly managers and associates who worked at retail stores operated by Defendant.

(Setareh Decl., ¶ 38.)

## VI.     THIS COURT SHOULD GRANT CLASS COUNSEL'S REQUEST FOR FEES AND COSTS AS WELL AS THE CLASS ENHANCEMENT AWARD

### A.     THE LEGAL STANDARD FOR ATTORNEYS' FEE AWARDS

California and the Ninth Circuit, and all federal courts, for that matter, use similar criteria to assess a fee request attendant to a motion for final approval, including: (i) the results achieved on behalf of the class; (ii) class counsel's experience, reputation and ability; (iii) the time and labor

required by the litigation; (iv) whether class counsel was precluded from other work; (v) the complexity of the litigation; and (vii) the contingent nature of the litigation. *See Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977); *accord Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1048-50 (9th Cir. 2002) (identifying similar criteria); *see also* Herr, MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.71 at 524-27 (2008) (survey of federal criteria similar to California criteria).

## B. THE FEE AWARD IS REASONABLE AND SHOULD RECEIVE FINAL APPROVAL

When attorneys' fees are awarded out of a common fund preserved or recovered by means of litigation, the award is not *per se* unreasonable merely because it is calculated as a percentage of the common fund. *Laffitte v. Robert Half International Inc.* (2016) 1 Cal. 5th 480 ("We join the overwhelming majority of federal and state courts in holding that when class action litigation establishes a monetary fund for the benefit of the class members, and the trial court in its equitable powers awards class counsel a fee out of that fund, the court may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created.")

### 1. An Excellent Result Was Achieved on Behalf of the Class

The benefit achieved on behalf of class members defines a primary yardstick against which any fee motion is measured. *See Serrano*, 20 Cal. 3d at 49; *accord Vizcaino*, 290 F.3d at 1048. The Parties reached a Settlement in good faith after negotiating at arm's length with a professional mediator and receiving a mediator's proposal. (Setareh Decl., ¶ 39.) Settlement occurred only after investigation and discovery commenced. In the course of the litigation, the parties exchanged substantial information, including Defendant's policies and employee handbooks. (Setareh Decl., ¶¶ 34-37.) And, notably, approval of a class action settlement does not require that discovery be exhaustive. *See, e.g.*, *In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases). The fact that settlement results from arm's length negotiations following "relevant discovery" creates "a presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at *5 (N.D. Cal. 1997). With respect to the claims asserted on behalf of the settlement Class in this case, there are significant risks that

15

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

support the compromise amount.  While Plaintiffs are confident of a favorable outcome, there is substantial risk that legal developments could seriously diminish the value of their claims as discussed above.  When facing an uncertain resolution of the claims in this Action, settlement is all the more reasonable.  Indeed, the Gross Settlement Amount will provide Settlement Class members with real and timely payments as opposed to the largely speculative awards that may or may not otherwise be obtained based on the various litigation risks going forward should the proposed Settlement not be approved.  Continued litigation of this lawsuit presented Plaintiff and Defendant with substantial legal risks that were (and continue to be) very difficult to assess.  In light of the uncertainties of protracted litigation, the settlement amount reflects a fair and reasonable recovery for the settlement Class Members. (Setareh Decl. ¶¶ 32-37.) The settlement amount is, of course, a compromise figure.  By necessity it took into account risks related to liability, damages, and all the defenses asserted by the Defendant. (*Id*.) Moreover, each settlement Class Member will be given the opportunity to opt out of the Settlement, allowing those who feel they have claims that are greater than the benefits they can receive under this Settlement, to pursue their own claims. (*Id*.) The value of this amount reflects a fair compromise well within the range of reasonableness. Given the strong case that Defendant could bring to bear to challenge liability, this is not an inconsequential sum in these challenging economic times. After analyzing the claims in this matter, Plaintiff has concluded that the value of this Settlement is fair, adequate and reasonable. While Plaintiff would certainly have preferred to recover more (and Defendant would have preferred to pay less), this outcome is favorable considering the risks of further litigation. On that basis, it would be unwise to pass up this settlement opportunity.  How class members respond to a class action settlement is typically addressed in concert with courts' assessments of a settlement's overall benefit to class members. *See generally, Vizcaino*, supra.  State and federal courts alike take the measure of a settlement's "fairness" with reference to the class members' reaction, and specifically the extent to which class members object, and through their objections imply a settlement's unfairness. *See, e.g., 7-Eleven Owners for Fair Franchising v. Southland Corp*., 85 Cal. App. 4th 1135, 1152-53 (2000) (only nine objectors from a class of 5,454 was an "overwhelmingly positive" fact that supported approval of the settlement); *Reynolds v. National Football League*, 584 F.2d 280 (8th Cir. 1978) (16 objectors

out of 5,400 strongest evidence of no dissatisfaction with settlement among class members);

*American Eagle Ins. Co. v. King Resources Co.*, 556 F.2d 471, 478 (10th Cir. 1977) (only one

objector "of striking significance and import").

### 2.   The Experience, Reputation, and Ability of Class Counsel

California law also recognizes the "skill and experience of attorneys" as appropriate criteria

for evaluating a fee motion. *Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 647

(1995); *accord In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) ("skill and

efficiency of counsel" among fee motion criteria); *In re Heritage Bond Litig.*, 2005 U.S Dist.

LEXIS 13555 at *64 (C.D. Cal. June 10, 2005) (Considering "the quality of Class Counsel's effort,

experience and skill"). Class Counsel has had substantial experience with the causes of action here

and has regularly litigated wage and hour class actions. (Setareh Decl., ¶¶ 4-31).

### 3.   The Effort Required by the Litigation Justifies the Fee

California and federal law also look to the time and labor required in connection with the

litigation and settlement of a class action for which final approval is sought. *See Serrano*, 20 Cal. 3d

at 49, *accord Vizcaino*, 290 F.3d at 1048-50.  Compared to the reasonable value of the claims, Class

Counsel expended substantial effort to achieve the settlement result. (Setareh Decl. ¶¶ 32-37.)

Class counsel expended considerable time and resources in litigating this matter.  The work done by

the attorneys working on this case includes communicating with Plaintiff, interviewing the client in

order to determine the claims in the case, drafting pleadings, propounding written discovery,

reviewing documents produced by Defendant, analyzing the effect of a class action settlement,

working up and drafting a mediation brief, preparing for mediation and preparing and reviewing

documents for settlement, drafting the initial motion for preliminary approval, drafting a revised

motion for preliminary approval and drafting a final approval motion that includes seeking Class

Counsel fees and class enhancement award. (Setareh Decl., ¶¶ 22-24.) The "time and labor"

criterion weighs in favor of an award of the requested fees.

### 4.   The Complexity of the Legal and Factual Issues

California law recognizes that the litigation's general complexity and "difficulty of the

questions involved, and the skill in presenting them" are properly considered. *Serrano*, 30 Cal. 3d at

17

49, *accord Wershba v. Apple Computer*, 91 Cal. App. 4th 224, 245 (2001).  Complexity of legal issues was not extreme here, though the fee is reasonable, rendering this factor neutral. (*Id.*.)

### 5.     Class Counsel Assumed Substantial Risk

The novelty and challenges presented by a class action, as well as the corresponding risk that the class members and class counsel will be paid no recovery or fee, is properly evaluated in connection with a fee motion. *See Serrano*, 20 Cal. 3d at 49; *accord Vizcaino*, 290 F.3d at 1050-51 (multiplier applied to lodestar cross-check reflects risk of non-recovery).  Ninth Circuit and California state courts regard circumstances in which class counsel's work is wholly contingent as a factor weighing in favor of approving a negotiated fee award that approximates market rates. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-33 (2001). While Plaintiffs are confident of a favorable outcome, there is substantial risk that legal developments could seriously diminish the value of their claims as discussed above and especially so with respect to the recent actions taken by the Federal Motor Carrier Safety Administration.

### 6.     The Fee is Reasonable Under the Common Fund Doctrine

Courts in the Ninth Circuit and California generally use the "percentage method" rather than the lodestar approach when awarding attorneys' fees in a common fund settlement. *See* 7 Witkin, B.E., CALIFORNIA PROCEDURE (2007 Supp.) §§ 255-261 at 236-241 (describing prevalence of percentage method under California law); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989) (Patel, J.) (endorsing percentage method). *See generally*, *Serrano*, 20 Cal. 3d at 25; *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. *In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 306 (C.A.3 (Pa.) 2005).

#### (i)     *Plaintiffs' Counsel Is Requesting The 25% Of The Recovery*

According to a leading treatise on class actions, "No general rule can be articulated on what is a reasonable percentage of a common fund. Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a

1  disproportionate part of the recovery obtained for the class, although somewhat larger percentages

2  are not unprecedented." *See Conte & Newberg*, Newberg on Class Actions (3rd Ed.) § 14.03.

3  Attorneys' fees that are fifty percent of the fund are typically considered the upper limit, with thirty

4  to forty percent commonly awarded in cases where the settlement is relatively small. *See Id.*; *see*

5  *also*, *Van Vranken v. Atlantic Richfield Company*, 901 F. Supp. 294 (N.D. Cal. 1995) (stating that

6  most cases where 30-50 percent was awarded involved "smaller" settlement funds of under $10

7  million). Nevertheless, Class Counsel is seeking 25% fee award which is consistent with the

8  average fee award in class actions, even though awards of 33 percent or more are common in court-

9  approved class actions litigated and settled by Class Counsel and other firms across the state.

10  (Setareh Decl., ¶ 27.)

11              *(ii)*      ***Plaintiffs Seek 25% Of The Settlement Fund In Fees And Costs of***

12                         ***No More Than $20,000***

13          The compensation sought for Class Counsel is also fair and reasonable. Here, the gross

14  settlement fund obtained through the efforts of Class Counsel is **$3,250,000.00**.  Class Counsel has

15  agreed to request no more than **$812,500.00** in fees from the gross settlement amount, or 25% of the

16  gross settlement amount. Class Counsel has agreed to request no more than **$20,000.00** in costs,

17  which at this time amounts to **$14,269.58**. (Setareh Decl., ¶ 26.)  Compared to a lodestar based on

18  current hours and reasonably projected future hours of approximately **$290,561.25**, the total

19  compensation to Class Counsel is consistent with their lodestar. The multiplier necessary to reach

20  the total requested compensation is only 2.79, a multiplier below the multipliers of 3 or more that

21  are routinely approved in class settlements. Plaintiff has actually incurred costs of **$14,269.58** in this

22  matter (but subject to a cap of **$20,000.00** pursuant to the parties Settlement Agreement), including

23  mediation fees, incurred Westlaw charges, PACER charges, CourtCall fees, travel expenses,

24  postage charges and printing charges. Plaintiff estimates incurring costs of **$97.00** for a future

25  CourtCall expense to telephonically attend the Final Approval hearing.  Thus, Plaintiff request the

26  reimbursement of costs of **$14,366.58** actually incurred by Class Counsel. (Settlement, ¶ 6.7.)  But

27  perhaps most importantly, the proposed attorneys' fees and costs were disclosed to the Class

28  Members in the Notice issued to Class Members.

### 7.  <u>A Lodestar Analysis Supports The Requested Fee Despite The Widely</u>
### <u>Recognized Limitations Of The So-Called "Lodestar" Method</u>

California and federal courts recognize the utility of a lodestar "cross-check." *Lealao v. Beneficial California, Inc*., 82 Cal. App. 4th 19, 46 (2000). A lodestar "cross-check" analysis typically happens in three steps. *Cundiff v. Verizon California*, 167 Cal. App. 4th 718 (2008), *accord Vizcaino*, 290 F.3d at 1047.  First, a trial court must determine a baseline guide or "lodestar" figure based on the time spent and reasonable hourly compensation for each attorney involved in the case. *Serrano*, at 48.  Second, the court sets a reasonable hourly fee to apply to the time expended, with reference to the prevailing rates in the geographical area in which the action is pending. *Bihun v. AT&T Information System*, 13 Cal. App. 4th 976, 997 (1993) (16 years ago, affirming a $450 per hour rate for a Southern California litigation attorney).  Finally, a "multiplier" of the base lodestar is set with reference to the factors described in detail in this brief.  Courts often apply a positive multiplier to the lodestar to determine a reasonable fee. *E.g. Vizcaino, supra* at 1051 (positive multiplier of 3.65.)  Across all jurisdictions, multipliers of up to four are frequently awarded. NEWBERG, §14.03 at 14.  Often, multipliers of greater than four are warranted. Looking at the work of attorneys for Plaintiff in this matter (and excluding paralegals), the lodestar calculation for Setareh Law Group is **$290,561.25** calculated as follows:

| Attorney | Year Admitted | Hourly Rate | Time | Lodestar |
|---|---|---|---|---|
| Shaun Setareh | 1999 | $850.00 | 115.3 | $98,005.00 |
| H. Scott Leviant | 1999 | $800.00 | 75.0[4] | $60,000.00 |
| William M. Pao | 2002 | $750.00 | 130.80 | $98,100.00 |
| Ashley N. Batiste | 2017 | $375 | 23.75 | $8,906.25 |
| Lilit Ter-Astvatsatryan | 2018 | $350 | 71.0 | $24,850.00 |

---

[4] As Mr. Leviant is no longer with the firm, the hours allocated to him are based on a review of the file. (*See*, Declaration of Shaun Setareh in Support of Plaintiff's Motion for Final Approval of Class Action Settlement and Certification of Settlement Class, ¶ 17.)

| | | | | |
|---|---|---|---|---|
| Alexandra R. McIntosh | 2018 | $350 | 2.0 | $700.00 |
| | | | **TOTAL** | **$290,561.25** |

(Setareh Decl., ¶ 16.) The figures for estimated time above reflect the best estimates of Class Counsel, based on their experience and the settlement class size, for the time that will be expended by Class Counsel between the filing of this motion and the hearing of Plaintiffs' Motion for Final Approval. (*Id.*)

This lodestar figure is in line with the requested fee, requiring a multiplier of 2.79. (Setareh Decl., ¶ 17.) This is in the typical multiplier range typically applied by district courts. See, e.g., *Bellinghausen v. Tractor Supply Co*. 306 F.R.D. 245, 264 (N.D. Cal. 2014) (54 percent of lodestar multipliers fall within the 1.5 to 3.0 range, and 83 percent of multipliers fell within the 1.0 to 4.0 range); *Hopkins v. Stryker Sales Corp*., No. 11-CV-02786- LHK, 2013 WL 496358, at *5 (N.D. Cal. Feb. 6, 2013) (multiplier of 2.86); *Di Giacomo v. Plains All Am. Pipeline*, Nos. 99–4137 & 99–4212, 2001 WL 34633373, at *10–11 (S.D. Fla. Dec. 19, 2001) (5.3 multiplier); *Maley v. Del Global Techs. Corp*., 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (4.65 multiplier); *In re Aremissoft Corp. Sec. Litig*., 210 F.R.D. 109, 134–35 (D.N.J. 2002) (4.3 multiplier). The multiplier needed to align the negotiated fee award with the attorney hours expended here is below the multipliers of three or more routinely approved in class actions. (Setareh Decl., ¶¶ 18-20.) Accordingly, the lodestar cross-check affirms that the fee award that has been preliminarily approved does in fact fall easily within the range of reasonableness. (*Id.*)  The Ninth Circuit has similarly recognized that the lodestar method "creates incentives for counsel to spend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement." *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1050, n.5 (9th Cir. 2002).  As a corollary, a defendant willing to recognize a potential error and settle at an early stage would face the increased risk that an early settlement overture would be rejected.  That did not happen here, in part because a percentage of the fund award encourages efficient litigation. The Ninth Circuit has thus cautioned that, while a lodestar method can be used as a cross check on the reasonableness of fees based on a percentage of recovery method if a district court in its discretion chooses to do so, a

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

1  lodestar calculation is not required and it did "not mean to imply that class counsel should

2  necessarily receive a lesser fee for settling a case quickly." *Id*. The percentage of recovery method

3  "rests on the presumption that persons who obtain benefits of a lawsuit without contributing to its

4  cost are unjustly enriched at the successful litigant's expense." *Staton*, 327 F.3d 938, 967 (9th Cir.

5  2003). This rule, known as the "common fund doctrine," is designed to prevent unjust enrichment

6  by distributing the costs of litigation among those who benefit from the efforts of others. *Paul,*

7  *Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) It is only fair that every class

8  member who benefits from the opportunity to claim a share of the settlement pay his or her pro rata

9  share of attorney's fees, and Plaintiff's request for fees here means that Class Counsel seek an

10  amount of fees less than the amount Class Counsel would likely receive if they represented each

11  class member individually. Typical contingent fee contracts of plaintiffs' counsel provide for

12  attorney's fees of about 40% of any recovery obtained for a client. (Setareh Decl., ¶ 43.) It would be

13  unfair to compensate Class Counsel here at a substantially lesser rate because they obtained relief

14  for hundreds of class members.  To the contrary, equitable considerations dictate that Class Counsel

15  be rewarded for achieving a settlement that confers benefits among so many people, especially

16  without protracted litigation. The result achieved by Class Counsel merits an award of attorney's

17  fees equal to 25% of the total recovered value in this case.

18  ### C.    THE ENHANCEMENT AWARD IS REASONABLE

19       Enhancement awards serve to reward the named plaintiffs for the time and effort expended

20  on behalf of the class, and for exposing herself to the significant risks of litigation.  "Courts

21  routinely approve incentive awards to compensate named plaintiffs for the services they provided

22  and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-*

23  *Cola Co*., 200 F.R.D. 685, 694 (N.D. Ga. 2001); *In re Southern Ohio Correctional Facility*, 175

24  F.R.D. 270, 272 (S.D. Ohio 1997). In *CocaCola*, for example, the court approved enhancement

25  awards of $300,000 to each named plaintiff in recognition of the services they provided to the class

26  by responding to discovery, participating in the mediation process and taking the risk of stepping

27  forward on behalf of the class. *Coca-Cola*, 200 F.R.D. at 694; see *also Van Vranken v. Atl. Richfield*

28

*Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award). Here, Plaintiffs' counsel requests that the Court grant an enhancement award of **$7,500.00** to Plaintiff. The amount of the enhancement award requested for Plaintiff is reasonable given the risks undertaken by Plaintiff.  Taking the risk of filing a lawsuit against an employer deserves reward, especially in light of the settlement achieved by Plaintiff.  Additionally, Plaintiff was actively involved in the litigation and settlement negotiations of this Action. Plaintiff worked diligently with counsel to prepare the action, traveled to and attended the mediation and conferred with counsel regarding settlement negotiations. (Setareh Decl., ¶ 39; Declaration of Theodore Emetoh ("Emetoh Decl."), ¶ 7.) Plaintiff undertook to prosecute the case despite the risk of a cost judgment against him, and despite the potential risk that prospective employers would hold it against them. (Emetoh Decl., ¶¶ 8-9.)  The requested enhancement award is reasonable and should be approved.

### D.  THE SETTLEMENT ADMINISTRATOR'S EXPENSES SHOULD BE APPROVED

The charges for the Settlement Administrator Simpluris are capped at **$21,000.00**. (Butler Decl. ¶ 15.) Simpluris' costs to administer this settlement match the **$21,000.00** amount allocated in the Settlement Agreement are reasonable and should be approved. (Setareh Decl., ¶ 40.)

### VII.  <u>CONCLUSION</u>

This settlement is fair and reasonable, especially given the claims and the potential defenses to them and to class certification. Thus, the **$3,250,000.00** gross settlement is worthy of final approval. And because Plaintiff's counsel were required to expend considerable resources and take risks to obtain that result, fair compensation is also reasonable.  For the reasons set forth herein, Plaintiff request that the Court award Plaintiff's counsel **$812,500.00** in fees, which is 25% of the gross settlement and roughly 2.79 times the lodestar of Plaintiff's counsel and **$14,366.58** in costs and **$7,500.00** enhancement award to Plaintiff Emetoh.

DATED:  August 25, 2020                    SETAREH LAW GROUP

*/s/ Shaun Setareh*
SHAUN SETAREH
Attorneys for Plaintiff
THEODORE EMETOH

23